EXHIBIT D

Motion of Liquidating Trustee for Entry of an Order Enforcing the Plan Injunction

Hearing Date: August 15, 2013 at 11:00 a.m. (prevailing Eastern Time)
Response Deadline: August 8, 2013 at 5:00 p.m. (prevailing Eastern Time)

AKIN GUMP STRAUSS HAUER & FELD LLP
David H. Botter
Sarah Link Schultz (admitted *pro hac vice*)
Ashleigh L. Blaylock
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

*Counsel for the Liquidating Trustee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------- X

In re:

SAINT VINCENTS CATHOLIC MEDICAL
CENTERS OF NEW YORK, et al.,[1]

Debtors.

-------------------------------------------------------- X

Chapter 11

Case No. 10-11963 (CGM)

Jointly Administered

**NOTICE OF FILING MOTION**
**OF THE LIQUIDATING TRUSTEE FOR ENTRY**
**OF AN ORDER ENFORCING THE PLAN INJUNCTION**

PLEASE TAKE NOTICE that on July 29, 2013, Eugene I. Davis, as trustee (the

"**Liquidating Trustee**") of the Saint Vincents Catholic Medical Centers of New York

Liquidating Trust (the "**Liquidating Trust**"), filed the *Motion of the Liquidating Trustee for*

*Entry of an Order Enforcing the Plan Injunction* (the "**Motion**").[2]

---

[1] In addition to Saint Vincents Catholic Medical Centers of New York ("**SVCMC**"), the debtors in these cases were as follows: (i) 555 6th Avenue Apartment Operating Corporation; (ii) Bishop Francis J. Mugavero Center for Geriatric Care, Inc.; (iii) Chait Housing Development Corporation; (iv) Fort Place Housing Corporation; (v) Pax Christi Hospice, Inc.; (vi) Sisters of Charity Health Care System Nursing Home, Inc. d/b/a St. Elizabeth Ann's Health Care & Rehabilitation Center; (vii) St. Jerome's Health Services Corporation d/b/a Holy Family Home; and (viii) SVCMC Professional Registry, Inc (collectively with SVCMC, the "**Debtors**"). There are certain affiliates of SVCMC who were not Debtors.

[2] Capitalized termed used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

**PLEASE TAKE FURTHER NOTICE** that a hearing to consider the Motion shall be held before the Honorable Cecelia G. Morris, Chief United States Bankruptcy Judge, at the United States Bankruptcy Court of the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004, on August 15, 2013 at 11:00 a.m. (prevailing Eastern Time).

**PLEASE TAKE FURTHER NOTICE** that any responses to the Motion must be made in writing; shall conform to the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Local Rules of the Bankruptcy Court (the "**Local Rules**"), and the Bankruptcy Court's *Second Amended Final Administrative Order Establishing Case Management Procedures* [Docket No. 3325] (the "**Case Management Order**"); shall be filed with the Bankruptcy Court either (a) electronically in accordance with General Order M-399 (which can be found at http://www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, or (b) on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with a hard copy delivered directly to Chambers), in accordance with General Order M-182 (which can be found at http://www.nysb.uscourts.gov); and shall be served in accordance with General Order M-399 on and served so as to be actually received by (i) Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036, Attn: David Botter, Esq. and Akin Gump Strauss Hauer & Feld LLP, 1700 Pacific Avenue, Suite 4100, Dallas, Texas 75201, Attn: Sarah Link Schultz, Esq., counsel for the Liquidating Trustee and counsel for the Post-Effective Date Committee and (ii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn: Serene Nakano, Esq.,

no later than **August 8, 2013 at 5:00 p.m. (prevailing Eastern Time)** (the "<u>Response</u> <u>Deadline</u>").

**PLEASE TAKE FURTHER NOTICE** that if no responses with respect to the Motion are timely filed and served in accordance with the Case Management Order, the Liquidating Trustee may, on or after the Response Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Motion, which may be entered with no further notice or opportunity to be heard offered to any party.

Dated:   July 29, 2013
        New York, New York

AKIN GUMP STRAUSS HAUER & FELD LLP

*/s/ David H. Botter*
David H. Botter
Sarah Link Schultz (admitted *pro hac vice*)
Ashleigh L. Blaylock
One Bryant Park
New York, New York 10036
Telephone:  (212) 872-1000
Facsimile:   (212) 872-1002

*Counsel for the Liquidating Trustee*

104927108 v1

AKIN GUMP STRAUSS HAUER & FELD LLP
David H. Botter
Sarah Link Schultz (*admitted pro hac vice*)
Ashleigh L. Blaylock
One Bryant Park
New York, New York 10036
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)

*Counsel to the Liquidating Trustee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------- x
                                                              :
In re:                                                        :      Chapter 11
                                                              :
SAINT VINCENTS CATHOLIC MEDICAL    :      Case No. 10-11963 (CGM)
CENTERS OF NEW YORK, et al.,[1]                :
                                                              :
                              Debtors.              :      Jointly Administered
                                                              :
------------------------------------------------------------- x

**MOTION OF THE LIQUIDATING TRUSTEE FOR ENTRY OF**
**AN ORDER ENFORCING THE PLAN INJUNCTION**

Pursuant to Bankruptcy Code sections 105(a) and 362 and sections 11.3, 11.4, 11.5, and

11.6 of the *Debtors' Second Amended Joint Chapter 11 Plan* [Docket No. 3035] (the "**Plan**"),

Eugene I. Davis, as trustee (the "**Liquidating Trustee**") of Saint Vincents Catholic Medical

Centers of New York Liquidating Trust (the "**Liquidating Trust**"), seeks entry of an order

substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**") (i) enjoining

Elaine Garvey (the "**Plaintiff**"), administratrix of the Estate of Ronald Brophy (the "**Decedent**")

---

[1] In addition to Saint Vincents Catholic Medical Centers of New York ("**SVCMC**"), the debtors in these cases were as follows: (i) 555 6th Avenue Apartment Operating Corporation; (ii) Bishop Francis J. Mugavero Center for Geriatric Care, Inc.; (iii) Chait Housing Development Corporation; (iv) Fort Place Housing Corporation; (v) Pax Christi Hospice, Inc.; (vi) Sisters of Charity Health Care System Nursing Home, Inc. d/b/a St. Elizabeth Ann's Health Care & Rehabilitation Center; (vii) St. Jerome's Health Services Corporation d/b/a Holy Family Home ("**Holy Family Home**"); and (viii) SVCMC Professional Registry, Inc (collectively with SVCMC, the "**Debtors**"). There are certain affiliates of SVCMC who were not Debtors.

from prosecuting the action pending in the Supreme Court of the State of New York, Kings

County, styled as *Elaine Garvey, administratrix of the Estate of Ronald Brophy, deceased v.*

*Lutheran Medical Center, et al.* Index No.: 218/2013 (the "**State Court Action**") as against any

Debtor that is a defendant therein, including SVCMC and Holy Family Home (collectively, the

"**Debtor Defendants**"); (ii) declaring the State Court Action void *ab initio* as against the Debtor

Defendants, and (iii) awarding the Liquidating Trustee his costs and attorneys' fees incurred in

connection with the foregoing. In support of this motion, the Liquidating Trustee respectfully

states as follows:

## PRELIMINARY STATEMENT[2]

1.     In mid April 2013, counsel to the Liquidating Trustee learned that the Debtor

Defendants were named in the State Court Action. On April 30, 2013, counsel to the Liquidating

Trustee sent a letter to Plaintiff's counsel, Sheryl R. Menkes, informing her that prosecution of

the State Court Action violated the automatic stay and plan injunction and requested that the

State Court Action be discontinued as to the Debtor Defendants. No response to that letter was

received.

2.     On June 4, 2013, Ms. Menkes called the Liquidating Trustee's counsel insisting

that the Liquidating Trustee lift the automatic stay because the Plaintiff only wished to recover

against insurance in the State Court Action. On June 5, 2013, counsel for the Liquidating

Trustee informed Ms. Menkes via email that insurance was not available to cover the claims

asserted in the State Court Action. On June 6, 2013, Ms. Menkes requested a formal letter

confirming that no insurance coverage was available. On June 7, 2013, counsel to the

Liquidating Trustee sent a second letter providing the requested information and requesting that

---

[2] Capitalized terms used but not defined in the Preliminary Statement shall have the meaning ascribed to
them in the body of the Motion.

the State Court Action be withdrawn no later than June 12, 2013.  Specifically, attached to the

June 7 letter were the following: a draft of this Motion; a declaration from Timothy J. Lenane,

Post-Effective Date SVCMC's corporate director of claims, attesting to the lack of insurance

coverage[3] (the "**Lenane Declaration**") attached hereto as **Exhibit B**; and affidavits of service

evidencing notice of the various bar dates served at the Decedent's last known address.

    3.    Even after receiving the above-described evidence, Ms. Menkes refused to

withdraw the State Court Action claiming that she had to discuss the matter with the Plaintiff,

who would be out of town for two weeks, before discontinuing the State Court Action against the

Debtor Defendants.  As a professional courtesy, the Liquidating Trustee's counsel agreed to

delay filing this Motion until the Plaintiff returned on the understanding that Ms. Menkes would

recommend that the Plaintiff discontinue the State Court Action against the Debtor Defendants.

    4.    Ms. Menkes represented that she would make such a recommendation to the

Plaintiff.  Ms. Menkes, however, instead used the extension granted as a professional courtesy to

subvert this Court's jurisdiction by hauling the Liquidating Trustee into New York state court.

On or about June 19, 2013, unbeknownst to the Liquidating Trustee's counsel, Ms. Menkes filed

an application for order to show cause against the Liquidating Trustee in the State Court Action.

The order to show cause was entered by the state court on June 19, 2013.  While counsel to the

Liquidating Trustee contacted Ms. Menkes on at least two occasions after this date to inquire as

to whether the Plaintiff would discontinue the State Court Action against the Debtor Defendants,

Ms. Menkes continued to plead for additional time to speak with the Plaintiff and stated that it

would be unethical for counsel to the Liquidating Trustee to file the Motion before she could

speak with the Plaintiff.  Ms. Menkes, however, never informed counsel to the Liquidating

_____
[3] Any insurance claims for the claims asserted in the State Court Action had to be made no later than
March 20, 2012. Given Ms. Menkes was retained on July 12, 2010 (*see* Show Cause Affirmation (defined below) at
¶ 8), she had 616 days between her retention date and the last day to file an insurance claim, but failed to do so.

3

104810352

Case 1:13-cv-06902-PKC    Document 16-7    Filed 05/16/14    Page 8 of 23

Trustee that she had filed an application for a show cause order. On July 18, 2013, one month after the state court entered the show cause order and the date of the omnibus hearing before this Court that counsel for the Liquidating Trustee originally intended to present this Motion, Ms. Menkes served the show cause order on counsel to the Liquidating Trustee. The Liquidating Trustee must now appear before the New York state court on July 31, 2013 to show cause why the Plaintiff should not be allowed to proceed against the Debtor Defendants.

5.    Despite the substantial evidence provided by the Liquidating Trustee and despite Ms. Menkes' knowledge that the proper forum to seek relief is before this Court, Ms. Menkes' determination to prosecute the State Court Action against the Debtor Defendants continues unabated. Given Ms. Menkes' dilatory tactics to delay of the filing of this Motion, her utter disregard for this Court's jurisdiction and the substantial resources expended by the Liquidating Trust in responding to Ms. Menkes' actions, the Liquidating Trustee requests that this Court enjoin the Plaintiff from continuing the State Court Action with respect to the Debtor Defendants and award the Liquidating Trustee his costs and attorneys' fees incurred in connection with the foregoing.

## JURISDICTION

6.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

7.    On April 14, 2010 (the "**Petition Date**"), each Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The cases are being jointly administered pursuant to Bankruptcy Rule 1015(b). During the course of their chapter 11 cases, the Debtors operated their businesses as debtors in possession. On June

4

104810352

29, 2012, the Bankruptcy Court entered an order [Docket No. 3060] (the "**Confirmation Order**")

approving the Plan.  The Plan effective date (the "**Effective Date**") occurred on June 29, 2012.

The Liquidating Trustee was appointed pursuant to the Plan as of the Effective Date.  On January

24, 2013, the chapter 11 cases for 555 6th Avenue Apartment Operating Corporation, Chait

Housing Development Corporation, Fort Place Housing Corporation, and SVCMC Professional

Registry, Inc. were closed.

### A.    The Bar Dates

8.    On August 20, 2010, the Court entered an order [Docket No. 773] (the "**General**

**Bar Date Order**") fixing October 12, 2010 as the deadline for all creditors to file proofs of claim

against the Debtors for pre-petition liabilities (the "**General Bar Date**").  On or about August 27,

2010, the Debtors served, by and through Epiq Systems (the "**Claims Agent**"), notice of the

General Bar Date to more than 70,000 creditors and potential creditors in accordance with the

General Bar Date Order.  In addition, on September 10, 2010, notice of the General Bar Date

was published in *The New York Times* and *The New York Post* [Docket Nos. 1277 & 1278].  In

response to the General Bar Date noticing, the Debtors received approximately 4,300 timely

proofs of claim asserting liquidated claims of $6.6 billion, plus unliquidated amounts.

9.    On July 1, 2011, the Court entered an order [Docket No. 1775] (the "**First**

**Administrative Bar Date Order**") fixing August 2, 2011 as the deadline to file proofs of claim

for all claims that arose, accrued, or otherwise became due and payable between April 14, 2010

and May 31, 2011  (the "**First Administrative Bar Date**").  On or about July 7 and 8, 2011, the

Debtors served, by and through their Claims Agent, notice of the First Administrative Bar Date

to known and potential creditors in accordance with the First Administrative Bar Date Order

[Docket No. 1815].  In addition, notice of the First Administrative Bar Date was published in

*The New York Times* and *The New York Post* [Docket Nos. 1891 & 1892]. In response to the

5

First Administrative Bar Date noticing, the Debtors received approximately 144 claims asserting liquidated claims of approximately $1.8 million, plus unliquidated amounts.

10.    On April 27, 2012, the Court entered an order fixing May 21, 2012 (the "**Second Administrative Bar Date**") as the deadline to file proofs of claim for all claims that arose, accrued, or otherwise became due and payable between June 1, 2011 and April 30, 2012 [Docket No. 2860]. The Debtors served notice of the Second Administrative Bar Date to known and potential creditors and published notice of the Second Administrative Bar Date in *The New York Times* and *The New York Post* [Docket Nos. 1968 & 2969]. In response to the Second Administrative Bar Date noticing, the Debtors received approximately 75 claims asserting liquidated claims of approximately $131.3 million, plus unliquidated amounts.

11.    On June 29, 2012, the Bankruptcy Court entered the Confirmation Order confirming the Plan. The Plan became effective by its terms on June 29, 2012. As part of the Plan confirmation process, the Court established July 30, 2012 (the "**Third Administrative Bar Date**" and, collectively with the First Administrative Bar Date and the Second Administrative Bar Date, the "**Administrative Bar Dates**") as the deadline to file proofs of claim for all claims that arose, accrued or otherwise became due and payable between May 1, 2012 and the Effective Date. *See* Plan at § 2.1; Confirmation Order at ¶ 6(a). In response to the Third Administrative Bar Date noticing, the Debtors received approximately 68 claims asserted liquidated claims of approximately $970,000, plus unliquidated amounts.

12.    The Debtors served the Decedent at his last known address with, among other things, notice of (i) the First Administrative Bar Date, (ii) the Second Administrative Bar Date, (iii) the Third Administrative Bar Date and (iv) occurrence of the Effective Date. *See* Affidavits of Service attached hereto as **Exhibit F**.

104810352

### B.   The Automatic Stay and Plan Injunction

13.     With specific exceptions detailed in the Plan not applicable here, on the Effective

Date, the Plan discharged and released all claims against the Debtors, their estates, and their

successors that arose before the Effective Date. In addition, again subject to specific exceptions

detailed in the Plan not applicable here, the Plan extended the automatic stay in effect as of the

Effective Date pursuant to Bankruptcy Code section 362(d)(1), and enjoined any person from

taking any action in furtherance of prosecuting a claim against the Debtors (the "**Plan**

**Injunction**"). *See* Plan §§ 11.3–11.6. Specifically, section 11.3 of the Plan provides that all

injunctions or stays arising under Bankruptcy Code sections 105 or 362 and any order entered

during the chapter 11 cases under sections 105 or 362 and in existence on the Effective Date

would remain "in full force and effect" until the chapter 11 cases were closed. *See* Plan § 11.3.

In addition, Plan section 11.4 provides as follows:

> the distributions, rights and treatment provide in the Plan shall be in
> complete satisfaction, discharge and release, effective as of the Effective
> Date, of Claims and Causes of Action of any nature whatsoever, whether
> known or unknown, against, liabilities of, liens on, obligations of the
> Debtors . . . including demands, liabilities, and Causes of Action that arose
> before the Effective Date . . . in each case whether or not: (i) a Proof of
> Claim based upon such debt or right is filed or deemed filed pursuant to
> Section 501 of the Bankruptcy Code; (ii) a Claim based upon such debt or
> right is Allowed; or (iii) the holder of such a Claim has accepted the Plan
> or is entitled to receive a distribution hereunder.

Plan § 11.4. Section 11.5 of the Plan permanently enjoins all persons who may have held or held

a claim against the Debtors "on or after the Effective Date from taking any action in furtherance

of such Claim or any other Cause of Action released and discharged under the Plan." Plan § 11.5.

### C.   The State Court Action

14.     On or about January 4, 2013, the Plaintiff commenced the State Court Action

against, among other parties, the Debtor Defendants by summoning them to serve a notice of

7

104810352

appearance on Plaintiff's counsel. *See Summons with Notice* attached hereto as **Exhibit C**. Upon information and belief, Post-Effective Date SVCMC was served with the summons on or about April 18, 2013. Notably, the summons did not attach a copy of a complaint, nor did it specify the dates of alleged claims, nor did it indicate that the Plaintiff was pursuing the State Court Action against the Debtor Defendants solely for the purpose of obtaining a judgment to establish liability and recover from available insurance proceeds.

15.    In response to receipt of the summons, on April 30, 2013, Akin Gump Strauss Hauer & Feld LLP ("**Akin Gump**"), counsel for the Liquidating Trustee, sent a letter (the "**April 30 Letter**") to Sheryl R. Menkes, counsel for the Plaintiff, informing Ms. Menkes that the State Court Action violates the Automatic Stay and the Plan Injunction. The April 30 Letter requested that the Plaintiff withdraw the State Court Action as against the Debtor Defendants. The April 30 Letter further cautioned Ms. Menkes that failure to withdraw could result in an award of monetary damages, including costs and attorneys' fees, in favor of the Liquidating Trustee. A copy of the April 30 Letter is attached hereto as **Exhibit E**. Akin Gump received no response from Ms. Menkes or the Plaintiff.

### (i)    Ms. Menkes Contacts Counsel to the Liquidating Trustee

16.    On or about June 4, 2013, Ms. Menkes telephoned Sarah Link Schultz, counsel for the Liquidating Trustee. In summary, Ms. Menkes demanded that the Liquidating Trustee immediately lift the Automatic Stay and Plan Injunction because the Plaintiff was pursuing the State Court Action solely for the purpose of obtaining a judgment to establish liability and recover from available insurance proceeds.[4] Ms. Menkes insisted that time was of the essence

---

[4] *See also* Email Correspondence at 6. (Ms. Menkes: "The recovery is still limited to the insurance policy(ies) in effect during the relevant time period which case law states is not property of the estate and does not require a notice of claim.").

8

104810352

because of a rapidly approaching deadline to serve the complaint in the State Court Action.[5] Ms.
Schultz responded that she would begin researching whether insurance was available.

17.    On or about June 5, 2013, counsel for the Plaintiff sent counsel for the
Liquidating Trustee a copy of a verified complaint dated May 14, 2013 alleging, among other
things, deprivation of rights pursuant to New York Public Health Law sections 2801-d and
2803-c; negligence and gross negligence injuring Decedent during two time periods: March 25,
2010 through May 24, 2010 and May 27, 2010 through June 6, 2010; negligent administration by
SVCMC; and wrongful death. *See Verified Complaint* attached hereto as **Exhibit D**. The State
Court Action seeks unliquidated monetary and punitive damages against the Debtor Defendants,
among others.

18.    Upon receipt of the complaint, counsel for the Liquidating Trustee immediately
began to research whether insurance coverage was available. The same day, Ms. Schultz
informed Ms. Menkes via email that no insurance coverage is available to cover the claims
asserted in the State Court Action. *See* email (the "**Email Correspondence**") at 6, attached
hereto as **Exhibit H**. Following several additional phone calls and email communications with
Ms. Menkes, it became clear that Plaintiff would not voluntarily withdraw the State Court Action.
As a result, on June 7, 2013, Ms. Schultz sent a second letter to Ms. Menkes (the "**June 7
Letter**") again requesting that the State Court Action be discontinued against the Debtor
Defendants and requesting that the Plaintiff provide evidence of such discontinuance no later
than June 12, 2013. Enclosed with the June 7 Letter was a draft of this Motion, which included
copies of the Lenane Declaration evidencing the unavailability of insurance and the Affidavits of

---

[5] Ms. Menkes expressed the same sentiment via email. *See* Email Correspondence at 3.

104810352

Service evidencing that notice of each of the Administrative Bar Dates was served at the Decedent's last known address. A copy of the June 7 Letter is attached hereto as **Exhibit G**.[6]

### (ii)    Ms. Menkes' Delay Tactics Begin

19.    On June 8, Ms. Menkes responded to the June 7 Letter via email stating that she needed to contact the Plaintiff, who was on vacation and would not return for two weeks. Email Correspondence at 12. On June 10, Ms. Schultz responded to Ms. Menkes' June 8 email and requested an update regarding Ms. Menkes' intentions regarding discontinuance of the State Court Action. Email Correspondence at 11. Ms. Menkes responded on June 10, indicating that she was unable to withdraw the action before the Plaintiff returned from vacation. Email Correspondence at 10. Ms. Schultz responded on June 11, stating that, if Ms. Menkes intended to recommend to the Plaintiff that she discontinue the State Court Action as to the Debtor Defendants, the Liquidating Trustee would delay the filing of the Motion for two weeks to provide Ms. Menkes the time to discuss the discontinuance with the Plaintiff. Email Correspondence at 10. Later on June 11, Ms. Menkes responded, indicating that she would advise the Plaintiff to withdraw the State Court Action against the Debtor Defendants. Email Correspondence at 10. ("Yes [sic] I will advise her to withdraw. I need to speak with her in person so I can explain it to her."). Based on this representation and as a professional courtesy, the Liquidating Trustee delayed filing this Motion.

20.    Approximately two weeks later, on June 24, Ms. Schultz followed-up with Ms. Menkes regarding the Plaintiff's position. Ms. Menkes responded later that day indicating that the Plaintiff was still on vacation and would not return until the following week or, at the latest, July 4. Further, Ms. Menkes stated: "I am certain she will not have objections [to discontinue the

---

[6] The June 7 Letter's enclosures are omitted because they duplicate the exhibits attached to this Motion. A copy of the June 7 Letter with its enclosures is available upon request.

10

104810352

State Court Action] but I cannot do this without her knowledge and consent." Email Correspondence at 9. Notably, Ms. Menkes made no mention of her filing an application for the order to show cause (the "**Order to Show Cause**"), a copy of which is attached hereto as **Exhibit I**, even though the New York state court entered the Order to Show Cause on June 19.

21.     On July 3, Ms. Schultz sent a follow-up email to Ms. Menkes, noting that the Liquidating Trustee would need to file the Motion on July 3 for it to be heard at the July 18 omnibus hearing. Email Correspondence at 8. Ms. Menkes responded that she had an appointment scheduled with the Plaintiff for July 21. Email Correspondence at 8. Ms. Menkes further stated, "I dont [sic] understand why you need a 7/18 hearing. I dont [sic] believe it is eithical [sic] to file the motion with me being able to obtain my client's consent." Email Correspondence at 8. Six minutes later, Ms. Menkes followed-up her prior email with the following: "I am certain I will have no problem from my client. There was never service of the complaint within 120 days of purchasing index [sic] number thus that complaint is a nullity." Email Correspondence at 8. Again, Ms. Menkes did not inform Ms. Schultz of the Order to Show Cause, nor did she inform Ms. Schultz that Plaintiff had commenced another action against the Debtor Defendants in New York state court on June 5, 2013. Based upon Ms. Menkes' representations and as a professional courtesy, the Liquidating Trustee decided to delay the filing of the Motion to provide Ms. Menkes with an opportunity to meet with the Plaintiff. Ms. Menkes' true intentions, however, became apparent when the July 18 hearing date arrived and Akin Gump was served with the Order to Show Cause.

### (iii)    The Order to Show Cause

22.     It appears that to avoid missing her deadline to serve the summons on the Liquidating Trustee, Ms. Menkes withdrew the original State Court Action and filed a new complaint. *See* Show Cause Affirmation (defined below) at ¶ 18. In addition, on or about June

11

19, Ms. Menkes filed an application for the Order to Show Cause with the New York state court. Although Ms. Menkes was in regular communications with counsel for the Liquidating Trustee, and although Ms. Menkes was aware that the Liquidating Trustee was delaying filing this Motion based on Ms. Menkes' representations, Ms. Menkes did not advise the Liquidating Trustee's counsel that she was actively prosecuting the State Court Action against the Debtor Defendants.    The only reasonable inference from this conduct is that Ms. Menkes was intentionally deceiving counsel for the Liquidating Trustee for the purpose of delaying the filing of this Motion and continuing to prosecute the State Court Action without the Liquidating Trustee's knowledge.  Ms. Menkes' intentional deception continues in the affirmation she filed with the New York state court in support of her application for the Order to Show Cause (the "**Show Cause Affirmation**"), attached hereto as **Exhibit J**.  In the Show Cause Affirmation, Ms. Menkes represented under penalty of perjury that the Debtors failed to "give plaintiff formal notice of the bankruptcy and Bar Date so plaintiff could participate in the bankruptcy proceeding."  Show Cause Affirmation at ¶ 4.  Ms. Menkes made that statement fully aware that the Decedent was served with several notices as evidenced by the Affidavits of Service attached to the June 7 Letter.  Although Ms. Menkes attached as exhibits to the Show Cause Affirmation copies of the April 30 Letter and the June 7 Letter, along with the draft Motion, she omitted the Lenane Declaration, which attested to the unavailability of insurance, and the Affidavits of Service, which demonstrated that the Decedent was served with multiple bar date notices and the Plan.  The fact that Ms. Menkes both explicitly stated in her affirmation that the Debtors failed to give the Plaintiff notice of the bar date—a fact she knew to be false—and that she failed to attach the Lenane Declaration to the Show Cause Affirmation strongly suggest that she did so intentionally.

12

23.    As a result of Ms. Menkes' actions, counsel for the Liquidating Trustee must now appear in New York state court on July 31, 2013. Pursuant to the Order to Show Cause, the Liquidating Trustee must appear and show why the state court should not enter an order compelling the Liquidating Trustee to "lift the stay on plaintiff's personal injury claim" for the Debtor Defendants. Order to Show Cause at 2.

24.    In spite of the April 30 Letter, the June 7 Letter, the Lenane Declaration, the Affidavits of Service and numerous emails and telephone calls to Ms. Menkes informing her that prosecution of the State Court Action violates the Plan Injunction, the Plaintiff has not withdrawn the State Court Action. Ms. Menkes' failures to (i) inquire as to whether insurance coverage was available anytime during the 616 days between her retention on July 12, 2010 and the expiration of insurance coverage on March 20, 2012 and (ii) file a proof of claim by any of the Bar Dates, must not be allowed to continue to deplete the Liquidating Trust's assets by compelling the Liquidating Trustee to appear in New York state court and to seek this Court's enforcement of its prior orders. Accordingly, the Liquidating Trustee is left with no alternative but to seek the relief requested in this Motion to enforce the Plan Injunction.

## REQUESTED RELIEF

25.    The Liquidating Trustee seeks entry of an order (i) enjoining the Plaintiff from taking any action to prosecute the State Court Action against the Debtor Defendants; (ii) declaring the State Court Action void *ab initio* as against the Debtor Defendants; and (iii) awarding the Liquidating Trustee his costs and attorneys' fees incurred in connection with this Motion and other efforts to enforce the Plan Injunction with respect to the State Court Action, including, without limitation, attorneys' fees incurred during communications with the Plaintiff's counsel in preparing this Motion, and in attending the Show Cause Hearing.

13

## BASIS FOR RELIEF

A.      **This Court Has Jurisdiction to Enjoin the Plaintiff from Prosecuting the State Court Action as Against the Debtor Defendants**

26.      Section 1334 of title 28 of the United States Code grants federal district courts exclusive jurisdiction over "all cases under title 11," including, by extension, "controversies, adversary proceedings, contested matters, suits, actions or disputes that will occur as the case under the Bankruptcy Code unfolds [and] all of the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." *See* Collier on Bankruptcy ¶ 3.01 (Alan N. Resnick & Henry J. Sommer, eds., 16th ed.). The United States District Court for the Southern District of New York has referred such matters to the United States Bankruptcy Courts for the Southern District of New York. *See Standing Order M-431 Referring to the Bankruptcy Judges for the Southern District of New York and or All Proceedings Arising Under Title 11*, dated January 31, 2012 (Preska, Acting C.J.).

27.      Moreover, this Court explicitly retained broad jurisdiction over all matters arising in, arising under, or related to these chapter 11 cases, including to "issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation or enforcement of [the] Plan, the Confirmation Order or any other order of the Bankruptcy Court. *See* Plan, at § 12; Confirmation Order at ¶ 15; *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 138 ("the Bankruptcy Court plainly [has] jurisdiction to interpret and enforce its own prior orders . . . "). Accordingly, this Court has jurisdiction to enjoin the Plaintiff from prosecuting the State Court Action.

B.      **The Plaintiff Is Violating the Plan Injunction**

28.      As discussed in detail above, the Plan includes at least one provision that precludes the Plaintiff from prosecuting the State Court Action. Specifically, the Plan Injunction

14

104810352

extends all stays, including the Automatic Stay, and any order entered during the chapter 11 cases under Bankruptcy Code sections 105 or 362 that remained in existence on the Effective Date and provides that such stays and orders will remain in full force and effect until these chapter 11 cases are closed. *See* Plan § 11.3.

29.     By filing the State Court Action and refusing to withdraw the same when notified of the Plan Injunction, the Plaintiff has repeatedly violated the Plan Injunction. The State Court Action clearly involves enjoined claims against the Debtor Defendants. Despite the Liquidating Trustee's best efforts to inform Plaintiff's counsel of the ongoing violations of orders of this Court, the Plaintiff and its counsel have refused to act to withdraw the State Court Action as against the Debtor Defendants.

30.     Continued prosecution of the State Court Action would irreparably harm the Liquidating Trust, which would be forced to expend time and financial resources defending the State Court Action outside of this Court.  Additionally, unsecured creditors, the intended beneficiaries of the Liquidating Trust, would be prejudiced both by the delays that such litigation would cause and by the expenses that the Liquidating Trust would incur in that distributions to unsecured creditors could be delayed and reduced. The Liquidating Trust and its beneficiaries have already suffered actual harm from prosecution of the State Court Action in that counsel for the Liquidating Trustee was compelled to appear at the Show Cause Hearing to defend the Liquidating Trustee's position and to protect its rights, incurring significant attorneys fees in the process.

15

104810352

31.    Further, the Plan Injunction was designed to prevent claimants from interfering with the Liquidating Trust's claims administration process so that the Liquidating Trustee can efficiently resolve claims against the Debtors' estates and make distributions pursuant to the Plan. These mechanisms, which were critically important to the negotiation of the Plan, carefully balance the interests of all parties in interest. These procedures were designed to eliminate costly litigation, including attorneys' fees and expenses on each side, and delays inherent in redressing disputes outside of the Bankruptcy Court. Failure to enforce the Plan Injunction would frustrate Liquidating Trustee's efforts and increase costs associated with claims resolution.

32.    Accordingly, the Liquidating Trustee respectfully requests that this Court enter and order enjoining the Plaintiff from taking any action whatsoever to prosecute the State Court Action as against the Debtor Defendants.

### C.    Bankruptcy Code Section 524(e) Does Not Except the State Court Action from the Automatic Stay and Plan Injunction

33.    Plaintiff has not filed any proof of claim against the Debtors' estates. [7] Notwithstanding Plaintiff's failure to file a timely proof of claim, upon information and belief, Plaintiff argues that the State Court Action is not subject to the Automatic Stay and Plan Injunction because it falls within an exception pursuant to Bankruptcy Code section 524(e). In support of its position, Plaintiff cited the Liquidating Trustee to *Minafri v. United Artists*

---

[7] Plaintiff seems to argue that the Bar Dates do not bar her claims against the Debtors because Plaintiff did not receive actual notice of the Bar Dates. As set forth above, the Debtors served Decedent at his last known address with, among other things, notice of (i) the First Administrative Bar Date, (ii) the Second Administrative Bar Date, (iii) the Third Administrative Bar Date, and (iv) occurrence of the Effective Date. In addition, Decedent was a resident at Holy Family Home on and after the Petition Date. Therefore, any assertion that Plaintiff or Ms. Menkes was unaware of the bankruptcy strains credibility.

Notwithstanding the issue of whether Plaintiff received actual notice of the Bar Dates, it is well-established law that notice by publication is appropriate where notice by mail is impracticable or it is desirable to supplement the bar date notice. *See* Fed. R. Bankr. P. 2002(l); *Mullane v. C. Hanover Bank & Trust Co.*, 339 U.S. 306, 317 (1950) (publication is acceptable "where it is not reasonably possible or practicable to give more adequate warning," whereas when names and addresses are available, notice must be mailed); *In re Enron Corp.*, No. 01-16034 (AJG), 2006 WL 898031, at *4 (Bankr. S.D.N.Y. Mar. 29, 2006) ("A debtor must send actual notice of the bar date to any known creditor, while constructive notice is generally sufficient with an unknown creditor.").

104810352

*Theatres, Inc.*, 782 N.Y.S.2d 177 (N.Y. Sup. Ct. 2004) (holding that bankruptcy injunction was not a barrier to suit against debtor for purpose of establishing tort liability to recover against debtor's insurer); *Shakir v. U.S. Leasing Int'l, Inc.*, 831 N.Y.S.2d 362 (N.Y. Sup. Ct. 2006) (holding that a claim asserted for the sole purpose of establishing the liability of a party's insurer is not barred by that party's discharge in bankruptcy); *Lumbermens Mut. Cas. Co. v. Morse Shoe Co.*, 630 N.Y.S.2d 1003 (N.Y. App. Div. 1995) (holding that a suit could proceed against discharged debtor for the sole purpose of recovering against insurer).

34.    However, as Ms. Menkes was informed in writing on June 5, 2013, no insurance coverage is available to satisfy the claims asserted in the State Court Action. As set forth in the Lenane Declaration, SVCMC sold Holy Family Home to KFG Operating Two, LLC during the Debtors' chapter 11 cases. The sale closed on January 20, 2012. Upon closing the sale, SVCMC terminated the insurance coverage it maintained for Holy Family Home for claims arising from, among other things, medical malpractice and actions arising under New York Public Health Code section 2801-d (the "**HFH Policy**"). The HFH Policy was issued by Queeksbrook Insurance Limited, and it expired on January 20, 2012. The HFH Policy was a "claims made" policy, which covers claims that are made during the HFH Policy's term. The HFH Policy, however, did provide a grace period for claims that arose during the HFH Policy's term and were made within sixty (60) days of the HFH Policy's termination date of January 20, 2012. Accordingly, for claims to be paid under the HFH Policy, they must have been noticed no later than March 20, 2012. SVCMC did not purchase an additional tail policy for Holy Family Home.

35.    Also as set forth in the Lenane Declaration, the Debtors' books and records reflect Holy Family Home did not put its carrier on notice of any claim having been made or asserted, or any event having been identified, relating to the Decedent and the allegations in the State

17

104810352

Court Action. Because SVCMC did not maintain coverage that would be available to cover

claims asserted in the State Court Action, no insurance coverage is available under any policy

held by Post-Effective Date SVCMC or any of the Debtors. For these reasons, Bankruptcy Code

section 524(e) does not except the State Court Action, and the cases cited by Plaintiff are

unavailing.

    **D.**  **The Liquidating Trustee Is Entitled to Reimbursement of Attorneys' Fees
and Costs**

  36.  There can be no dispute that the Plaintiff been aware of the Court's orders,

including the Confirmation Order (and the Plan Injunction contained therein) since at least April

30, 2013. Multiple efforts were made by counsel to the Liquidating Trustee to avoid the

continued prosecution of the State Court Action by the Plaintiff. *See e.g.*, April 30 Letter, June 7

Letter, and the Email Correspondence. In spite of receiving multiple notices of both the

existence of Plan Injunction and the fact that the Plaintiff could be ordered to pay the Liquidating

Trust's costs and attorneys' fees associated with the enforcement of the Court's orders, the

Plaintiff chose to ignore such warnings and has failed to discontinue the State Court Action.

Moreover, Ms. Menkes appears to have deliberately misrepresented her intentions to counsel for

the Liquidating Trustee by representing that she would recommend that Plaintiff discontinue the

State Court Action against the Debtor Defendants, while her real intention was to delay the filing

of the Motion so she could haul the Liquidating Trustee into New York state court.

  37.  Under the circumstances, and given the blatant disregard for this Court's orders,

the Plaintiff should be accountable to the Liquidating Trust and should be compelled to

reimburse it for the costs incurred relating to this Motion and other efforts to enforce the terms of

the Plan Injunction. *See Baker v. Latham Sparrowbush Assocs. (In re Cohoes Indus. Terminal,
Inc.)*, 931 F.2d 222, 230 (2d Cir. 1991) ("A bankruptcy court may impose sanctions pursuant to

18

28 U.S.C. § 1927 if it finds that '[an] attorney's actions are so completely without merit as to require the conclusion that they must have been taken for some improper purpose such as delay.'") (citing *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986)); *In re Gorshtein*, 285 B.R. 118, 124 (Bankr. S.D.N.Y. 2002) (granting sanctions pursuant to Bankruptcy Code section 105(a)). Neither the Liquidating Trust nor its beneficiaries should be penalized by bearing the costs of reacting to a willful disregard for the orders of this Court. For these reasons, the Liquidating Trustee respectfully requests that the Plaintiff be ordered to reimburse the Liquidating Trust for the expenses incurred to enforce the Plan Injunction.

## RESERVATION OF RIGHTS

38.     Nothing contained herein is intended to or should be construed as a limitation on—or waiver of—the Liquidating Trustee's right to object to any proof of claim filed by the Plaintiff on any basis (including failure to comply with any order establishing a deadline to file a proof of claim against the Debtors' estates), and shall not be deemed to be an admission or waiver of the Liquidating Trustee's rights with respect to, among other things, the allowability, priority, and/or amount of such claims.

## NOTICE

39.     The Liquidating Trustee has served notice of this Motion upon the parties identified on the Special Service List in these cases, established under the *Second Amended Final Administrative Order Establishing Case Management and Scheduling Procedures* [Docket No. 3325] (as it may be further amended, the "**Case Management Order**"), the parties on the General Service List in these cases, established under the Case Management Order, and the Plaintiff. The method of service conformed to the requirements set forth in the Case Management Order. The Liquidating Trustee submits that no other or further notice need be provided.

19

104810352