plaintiff/decedent RONALD BROPHY'S medical condition and the care the he required, and they represented that they could adequately care for the needs of RONALD BROPHY and persuaded the plaintiff to admit her to LUTHERAN AUGUSTANA CENTER FOR EXTENDED CARE AND REHABILITATION, INC.

50. Plaintiff/decedent was a resident of defendants' facility LUTHERAN AUGUSTANA CENTER FOR EXTENDED CARE AND REHABILITATION, INC., located at 5434 Second Avenue, Brooklyn, New York 11208 from 11/20/09-12/16/09, 3/6/10-3/25/10.

51. At the aforementioned times and location, plaintiff/decedent RONALD BROPHY was under the exclusive care, custody, control and management of the above mentioned defendants.

52. At all times relevant to this complaint, defendant had a statutorily mandated responsibility to provide plaintiff/decedent RONALD TROPHY with the rights granted to nursing home residents by New York Public Health Law Section 2801-d and enumerated in Public Health Law Section 2803-C.

53. At the aforementioned times and location, during Plaintiff/Decedent RONALD BROPHY'S residency at the aforementioned Nursing Home, Defendant LUTHERAN AUGUSTANA CENTER FOR EXTENDED CARE AND REHABILITATION, INC., failed to provide Plaintiff/Decedent RONALD TROPHY ordinary care.

54. At the aforementioned times and location, during Plaintiff/Decedent RONALD BROPHY'S residency at the aforementioned Nursing Home, Defendant LUTHERAN AUGUSTANA CENTER FOR EXTENDED CARE AND REHABILITATION, INC., provided plaintiff/decedent RONALD TROPHY care below acceptable standards.

55. Prior to and at all times relevant to this complaint defendants. their employees, agents, consultants, and independent contractors deprived RONALD TROPHY of his rights pursuant to Public Health Law Section 2801-d and as enumerated in Public Health Law Section 2803-c.

56. The acts and omissions committed by employees and agents of defendants were pervasive events that occurred and continued throughout plaintiff/decedent RONALD BROPHY'S residency at defendants' facility, and were such that supervisors , administrators and managing agents of defendants were aware, or should have been aware of them.

57. At the aforementioned times and location, as a direct and proximate cause of Defendants' failure, negligent acts, omissions and statutory violations, Plaintiff/Decedent RONALD BROPPHY suffered numerous injuries and losses including, mental and physical deterioration secondary to inappropriate psychotropic medication; disability and disfigurement; pain and suffering; medical expenses; mental anguish and as a result plaintiff's decedent died on 6/13/10.

58. At the aforementioned times and location, defendants, all or any of them, wholly failed to discharge their obligations of care to plaintiff/decedent as required by statute and also as set forth herein. As a consequence thereof, plaintiff/decedent RONALD TROPHY suffered catastrophic injuries, extreme pain, suffering and mental anguish, the scope and severity of the recurrent statutory violations inflicted upon Plaintiff/Decedent RONALD TROPHY while he was under the care of the facility accelerated the deterioration of her health and physical condition beyond that caused by the normal aging process of a person in her state of health; resulted in her physical and

-12-

Case 1:13-cv-06902-PKC   Document 16-9   Filed 05/16/14   Page 3 of 26
10-11963-cgm   Doc 3626-4   Filed 07/29/13   Entered 07/29/13 14:57:27   Exhibit D -
part 1   Pg 14 of 28

emotional trauma described herein and hastened her death. More specifically,

plaintiff's/decedent's gruesome and agonizing death was precipitated by the following

injuries:

    (a) Severe Dehydration;

    (b) Severe weight loss;

    (c) Pressure Ulcers and deterioration thereto;.

    (e) Contracture Deformities

    (f) Severe infections

    (g) Sepsis

59. All of the above identified injuries as well as the conduct specified caused

decedent RONALD TROPHY to lose his personal dignity, cause him great shame and

humiliation, and caused his death to be preceded by extreme and unnecessary pain,

degradation and an emotional trauma that further greatly hastened her death.

60. At all times relevant to this complaint, plaintiff's/decedent RONALD

BROPHY'S injuries and death were substantially contributed to by the acts and/or

omissions of the defendant set forth above.

61. At all times relevant to this complaint, defendants had a duty to

plaintiff's/decedent RONALD TROPHY to ensure that their staff consisted of an adequate

number of employees and independent contractors, both licensed and unlicensed, so that

such employees and independent contractors delivered care and services to decedent

RONALD TROPHY in a reasonably safe and beneficial manner.

62. At all times relevant to this complaint, defendants' responsibilities and

obligations to decedent RONALD TROPHY as outlined in Public Health Law Section

Case 1:13-cv-06902-PKC   Document 16-9   Filed 05/16/14   Page 4 of 26
10-11963-cgm   Doc 3626-4   Filed 07/29/13   Entered 07/29/13 14:57:27   Exhibit D -
part 1   Pg 15 of 28

2803-c are non-delegable and defendants have direct or vicarious liability for violations,
deprivations and infringements of such responsibilities and obligations by any person or
entity under defendants' control, direct or indirect including its employees, agents,
consultants and independent contractors, whether in-house or outside entities, individuals,
agencies, or pools, or caused by defendants' policies whether written or unwritten, or
common practices.

63. At all times relevant to this complaint, defendants their employees, agents,
consultants and independent contractors deprived plaintiff'S/decedent RONALD
BROPHY of his rights pursuant to Public Health Law Section 2801-d and as enumerated
in Public Health Law Section 2803-c.

64. At all times relevant to this complaint, defendants had a statutorily mandated
responsibility to provide plaintiff's/decedent RONALD TROPHY with the rights granted
to nursing home residents pursuant to New York Public Health Law Sections 2801-d and
enumerated in Public Health Law Section 2803-c.

65. At all times relevant to this complaint plaintiff's/decedent RONALD
BROPHY'S injuries were caused wholly and solely by the negligent acts and/or omissions
of the defendants, as well as the violation of the RONALD BROPHY'S rights pursuant to
New York Public Health Law Section 2801-d and enumerated in New York Public Health
Law Section 2803-c.

66. At all times relevant to this complaint, the acts and omissions committed by
employees and agents of defendants were pervasive events that occurred and continued
throughout RONALD BROPHY'S residency at defendants' facility, and were such that
supervisors, administrators, and managing agents of defendants should have been aware of

-14-

Case 1:13-cv-06902-PKC  Document 16-9  Filed 05/16/14  Page 5 of 26
10-11963-cgm   Doc 3626-4   Filed 07/29/13   Entered 07/29/13 14:57:27   Exhibit D -
part 1   Pg 16 of 28

them.

67. In addition to the damages suffered by plaintiff's/decedent RONALD

TROPHY as the result of defendants' deprivation of her rights as a nursing home resident,

justice requires that plaintiff is entitled to recovery of attorneys' fees pursuant to Public

Health Law Section 2801-d(6), punitive damages pursuant to Public Health Law Section

2801-d(2), and costs.

68. As a result of the foregoing acts and/or omissions, plaintiff was denied his

rights under Public Health Law Section 2801-d as enumerated in Public Health Law

Section 2803-c, and such denial caused injury and death. Consequently plaintiff/decedent

RONALD TROPHY was forced to undergo medical treatment, incurred medical expense,

suffered disfigurement, disability and pain and suffering, mental anguish, loss of

enjoyment of life, and death.

## ST. VINCENT'S CATHOLIC MEDICAL CENTERS OF NEW YORK a/k/a SAINT VINCENT CATHOLIC MEDICAL CENTERS a/k/a SVCMC-ST VINCENTS MANHATTAN, HOLY FAMILY HOME

69. Prior to and at all times hereinafter mentioned defendant ST. VINCENT'S

CATHOLIC MEDICAL CENTERS OF NEW YORK a/k/a SAINT VINCENT

CATHOLIC MEDICAL CENTERS a/k/a SVCMC-ST VINCENTS MANHATTAN, was

authorized to do business as and to operate a nursing home facility at known as Holy

Family Home located at 1740 84th Street, Brooklyn, New York 11214.

70. Prior to and at all times hereinafter mentioned defendant ST. VINCENT'S

CATHOLIC MEDICAL CENTERS OF NEW YORK a/k/a SAINT VINCENT

CATHOLIC MEDICAL CENTERS a/k/a SVCMC-ST VINCENTS MANHATTAN, was

doing business as a nursing home  known as HOLY FAMILY HOME located at 1740 84th

-15-

Street, Brooklyn, New York 11214.

71. Prior to and at all times hereinafter mentioned, defendant ST. VINCENT'S

CATHOLIC MEDICAL CENTERS OF NEW YORK a/k/a SAINT VINCENT

CATHOLIC MEDICAL CENTERS a/k/a SVCMC-ST VINCENTS MANHATTAN,

owned a nursing home facility known as HOLY FAMILY HOME located at 1740 84th

Street, Brooklyn, New York 11214.

72. Prior to and at all times hereinafter mentioned, defendant ST. VINCENT'S

CATHOLIC MEDICAL CENTERS OF NEW YORK a/k/a SAINT VINCENT

CATHOLIC MEDICAL CENTERS a/k/a SVCMC-ST VINCENTS MANHATTAN, ,

operated a nursing home facility known as HOLY FAMILY HOME located at 1740 84th

Street, Brooklyn, New York 11214.

73. Prior to and at all times hereinafter mentioned, defendant ST. VINCENT'S

CATHOLIC MEDICAL CENTERS OF NEW YORK a/k/a SAINT VINCENT

CATHOLIC MEDICAL CENTERS a/k/a SVCMC-ST VINCENTS MANHATTAN, was

the lessor of a nursing home facility located at 1740 84th Street, Brooklyn, New York

11214.

74. Prior to and at all times hereinafter mentioned, defendant ST. VINCENT'S

CATHOLIC MEDICAL CENTERS OF NEW YORK a/k/a SAINT VINCENT

CATHOLIC MEDICAL CENTERS a/k/a SVCMC-ST VINCENTS MANHATTAN,

maintained a nursing home facility located at 1740 84th Street, Brooklyn, New York

11214.

75. Prior to and at all times hereinafter mentioned, defendant ST. VINCENT'S

CATHOLIC MEDICAL CENTERS OF NEW YORK a/k/a SAINT VINCENT

CATHOLIC MEDICAL CENTERS a/k/a SVCMC-ST VINCENTS MANHATTAN,

managed a nursing home facility located at 1740 84th Street Brooklyn, New York 11214..

76. Prior to and at all times hereinafter mentioned, defendant ST. VINCENT'S
CATHOLIC MEDICAL CENTERS OF NEW YORK a/k/a SAINT VINCENT
CATHOLIC MEDICAL CENTERS a/k/a SVCMC-ST VINCENTS MANHATTAN, ,
supervised a nursing home facility located at 1740 84th Street, Brooklyn, New York 11214.

77. Prior to and at all times hereinafter mentioned, defendant ST. VINCENT'S
CATHOLIC MEDICAL CENTERS OF NEW YORK a/k/a SAINT VINCENT
CATHOLIC MEDICAL CENTERS a/k/a SVCMC-ST VINCENTS MANHATTAN,
inspected a nursing home facility located at 1740 84th Street Brooklyn, New York 11214..

78. Prior to and at all times hereinafter mentioned, defendant ST. VINCENT'S
CATHOLIC MEDICAL CENTERS OF NEW YORK a/k/a SAINT VINCENT
CATHOLIC MEDICAL CENTERS a/k/a SVCMC-ST VINCENTS MANHATTAN,
controlled a nursing home facility located at 1740 84th Street, Brooklyn, New York
11214.

79. Prior to and at all times hereinafter mentioned defendant ST. VINCENT'S
CATHOLIC MEDICAL CENTERS OF NEW YORK a/k/a SAINT VINCENT
CATHOLIC MEDICAL CENTERS a/k/a SVCMC-ST VINCENT'S MANHATTAN, ,
had possession and/or control of the building located at 1740 84th Street, Brooklyn, New
York 11214. the building where the nursing home is located.

80. Prior to and at all times hereinafter mentioned, defendant HOLY FAMILY
HOME conducted business as a nursing home facility located at 1740 84th Street Brooklyn,
New York 11214, licensed to do so by the State of New York and defined under New

York Public Health Law Section 28102(2).

81. Prior to and at all times hereinafter mentioned, defendant HOLY FAMILY HOME operated a nursing home facility located at 1740 84th Street, Brooklyn, New York 11214.

82. Prior to and at all times hereinafter mentioned, defendant HOLY FAMILY HOME, was the lessee of a nursing home facility located at 1740 84th Street, Brooklyn, New York 11214.

83. Prior to and at all times hereinafter mentioned, defendant HOLY FAMILY HOME, maintained a nursing home facility located at 1740 84th Street, Brooklyn, New York 11214.

84. Prior to and at all times hereinafter mentioned, defendant HOLY FAMILY HOME, managed a nursing home facility located at 1740 84th Street, Brooklyn, New York 11214.

85. Prior to and at all times hereinafter mentioned, defendant HOLY FAMILY HOME, supervised a nursing home facility located at 1740 84th Street, Brooklyn, New York 11214.

86. Prior to and at all times hereinafter mentioned, defendant HOLY FAMILY HOME, inspected a nursing home facility located at 1740 84th Street, Brooklyn, New York 11214.

87. Prior to and at all times hereinafter mentioned, defendant HOLY FAMILY HOME, controlled a nursing home facility located at 1740 84th Street, Brooklyn, New York 11214.

89. Prior to and at all times hereinafter mentioned, defendant HOLY FAMILY

-18-

HOME, conducted business as a nursing home facility at 1740 84th Street, Brooklyn, New York 11214, licensed to do so by the State of New York and defined under New York Public Health Law Section 2801(2).

90. Prior to and at all times hereinafter mentioned, defendant HOLY FAMILY HOME, conducted business as a residential health care facility at 1740 84th Street, Brooklyn, New York 11208, licensed by the State of New York and defined under New York Public Health Law Section 2801(3).

91. Prior to and at all times hereinafter mentioned, defendant HOLY FAMILY HOME, had possession and/or control of the building located at 1740 84th Street, Brooklyn, New York 11214.

92. Prior to and at all times herein after mentioned, defendant HOLY FAMILY HOME, was a facility providing therein nursing care to sick, invalid, infirm disabled or convalescent persons in addition to lodging and board or health related services pursuant to New York Public Health Law Section 2801(2).

93. Prior to and at all times hereinafter mentioned, defendant HOLY FAMILY HOME, was a nursing home as within the meaning of Public Health Law Section 2801(2).

94. Prior to and at all times hereinafter mentioned, defendant HOLY FAMILY HOME was a residential health care facility within the meaning of Public Health Law Section 2801(3).

95. Prior to and at all times hereinafter mentioned, defendants' nursing home was a facility subject to provisions of Public Health Law Sections 2801-d; 2803-c; as well as the rules and regulations set forth in 42 U.S.C. Section 1395(I) et seq., 1396( r ) (1990) et. seq.

as amended by the Omnibus Budget Reconciliation Act of 1987 (OBRA Regulations) 42
Code of Federal Regulations Parts 483, setting Medicare and Medicaid Requirements for
long term facilities ("OBRA" regulations) as effective October 1, 1990 and 10 N.Y.C.R.R.
Part 415.

96. Prior to and at all times hereinafter mentioned, the nursing home operated by
defendants and/or corporate defendants was a "nursing facility" as defined by 42 U.S.C.A
Section 1396( r) (1990).

97. Prior to and at all times hereinafter mentioned, defendants' nursing home was
a licensed nursing home as such term is understood in law, and it filed its licensure
application and renewals thereto with the State of New York Department of Health.

98. Prior to and at all times hereinafter mentioned, defendants' nursing home is
certified for participation in the Medicaid Program as an intermediate skilled care facility.

99. Prior to and at all times hereinafter mentioned, by reason of selection to
participate as a long term care provider, defendants were able to enjoy substantial revenues
paid for by tax fare funded government programs.

100. Prior to and at all times hereinafter mentioned, the aforementioned
government programs provided defendants with a guaranteed source of income and a
continual flow of residents whose care was paid for by the Medicaid Program or some
other tax payer funded program.

101. Prior to and at all times hereinafter mentioned, defendant HOLY FAMILY
HOME , actively sought patients with similar medical needs as plaintiff/decedent
RONALD TROPHY in order to fill its empty beds, increase its rate of occupancy and
overall revenues.

-20-

102. Prior to and at all times hereinafter mentioned plaintiff/decedent RONALD TROPHY was the kind of resident whose care paid for by the government, defendants actively sought in order to fill their empty beds and to increase their rate of occupancy.

103. At all times hereinafter mentioned, defendant ST. VINCENT'S CATHOLIC MEDICAL CENTERS OF NEW YORK a/k/a SAINT VINCENT CATHOLIC MEDICAL CENTERS a/k/a SVCMC-ST VINCENT'S MANHATTAN, was a proprietary corporation engaged in the for profit operation of a nursing home, HOLY FAMILY HOME which claimed to "specialize" in the care of helpless individuals who are chronically infirm, mentally dysfunctional and/or in need of nursing care and treatment.

104. At all times hereinafter mentioned, defendant ST. VINCENT'S CATHOLIC MEDICAL CENTERS OF NEW YORK a/k/a SAINT VINCENT CATHOLIC MEDICAL CENTERS a/k/a SVCMC-ST VINCENT'S MANHATTAN, was a proprietary corporation engaged in the not for profit operation of a nursing home, HOLY FAMILY HOME which claimed to "specialize" in the care of helpless individuals who are chronically infirm, mentally dysfunctional and/or in need of nursing care and treatment.

105. Prior to and at all times hereinafter mentioned, in an effort to ensure that RONALD TROPHY and other patients whose care was funded by the government were placed at Defendant Nursing Home, defendants held themselves out to the New York Department of Health, the New York Dept. Of Social Services, and the public at large as being:

(a)     Skilled in the performance of nursing, and other medical support services;
(b)     Properly staffed, supervised and equipped to meet the total needs of its nursing home resident;
(c)     Able to specifically meet the total nursing, medical and physical therapy needs of Plaintiff/Decedent and other residents like her.

-21-

106. Additionally, in the case of plaintiff/decedent RONALD TROPHY, said defendants made specific representations to plaintiff regarding the quality and quantity of professional medical and nursing care upon which the family of plaintiff/decedent RONALD TROPHY placed their trust in said defendants.

107. At all times relevant to this complaint, defendants their principals, supervisors, agents, offices, employees, independent medical personnel, independent contractors, and/or JOHN/ JANE DOE Administrator; JOHN/JANE DOE Assistant Administrator; JOHN/JANE DOE Director of Nursing; JOHN JANE DOE Assistant Director of Nursing; JOHN/JANE DOE Medical Director; JOHN/JANE DOE Assistant Medical Director, or any or all of the corporate defendants stockholders, employees independent medical personnel or independent contractors of Defendant Nursing Home, all well aware of plaintiff/decedent RONALD BROPHY'S medical condition and the care the he required, and they represented that they could adequately care for the needs of RONALD TROPHY and persuaded the plaintiff to admit him to HOLY FAMILY HOME.

108. Plaintiff/decedent was a resident of defendants' facility HOLY FAMILY HOME, located at 1740 84th Street,  Brooklyn, New York 11214. from 3/25/10-5/24/10, 5/27/10-6/6/10.

109. At the aforementioned times and location, plaintiff/decedent RONALD TROPHY was under the exclusive care, custody, control and management of the above mentioned defendants.

110. At all times relevant to this complaint, defendants had a statutorily mandated responsibility to provide plaintiff/decedent RONALD TROPHY with the rights granted to nursing home residents by New York Public Health Law Section 2801-d and enumerated

-22-

in Public Health Law Section 2803-C.

111. At the aforementioned times and location, during Plaintiff/Decedent RONALD BROPHY'S residency at the aforementioned Nursing Home, Defendant HOLY FAMILY HOME, failed to provide Plaintiff/Decedent RONALD TROPHY ordinary care.

112. At the aforementioned times and location, during Plaintiff/Decedent RONALD BROPHY'S residency at the aforementioned Nursing Home, Defendant HOLY FAMILY HOME provided plaintiff/decedent RONALD TROPHY care below acceptable standards.

113. Prior to and at all times relevant to this complaint defendants. their employees, agents, consultants, and independent contractors deprived RONALD TROPHY of his rights pursuant to Public Health Law Section 2801-d and as enumerated in Public Health Law Section 2803-c.

114. The acts and omissions committed by employees and agents of defendants were pervasive events that occurred and continued throughout plaintiff/decedent RONALD BROPHY'S residency at defendants' facility, and were such that supervisors , administrators and managing agents of defendants were aware, or should have been aware of them.

115. At the aforementioned times and location, as a direct and proximate cause of Defendants' failure, negligent acts, omissions and statutory violations, Plaintiff/Decedent RONALD BROPPHY suffered numerous injuries and losses including, mental and physical deterioration secondary to inappropriate psychotropic medication; disability and disfigurement; pain and suffering; medical expenses; mental anguish and as a result plaintiff's decedent died on 6/13/10.

116. At the aforementioned times and location, defendants, all or any of them,
wholly failed to discharge their obligations of care to plaintiff/decedent as required by
statute and also as set forth herein. As a consequence thereof, plaintiff/decedent
RONALD TROPHY suffered catastrophic injuries, extreme pain, suffering and mental
anguish, the scope and severity of the recurrent statutory violations inflicted upon
Plaintiff/Decedent RONALD TROPHY while he was under the care of the facility
accelerated the deterioration of her health and physical condition beyond that caused by
the normal aging process of a person in her state of health; resulted in her physical and
emotional trauma described herein and hastened her death. More specifically,
plaintiff's/decedent's gruesome and agonizing death was precipitated by the following
injuries:

    (a) Severe Dehydration;

    (b) Severe weight loss;

    (c) Pressure Ulcers and deterioration thereto;.

    (e) Contracture Deformities

    (f) Severe infections

    (g) Sepsis

117. All of the above identified injuries as well as the conduct specified caused
decedent RONALD TROPHY to lose her personal dignity, cause her great shame and
humiliation, and caused her death to be preceded by extreme and unnecessary pain,
degradation and an emotional trauma that further greatly hastened her death.

118. At all times relevant to this complaint, plaintiff's/decedent RONALD
BROPHY'S injuries and death were substantially contributed to by the acts and/or

-24-

Case 1:13-cv-06902-PKC   Document 16-9   Filed 05/16/14   Page 15 of 26
10-11963-cgm    Doc 3626-4   Filed 07/29/13   Entered 07/29/13 14:57:27   Exhibit D -
part 1    Pg 26 of 28

omissions of the defendant set forth above.

119. At all times relevant to this complaint, defendants had a duty to plaintiff's/decedent RONALD TROPHY to ensure that their staff consisted of an adequate number of employees and independent contractors, both licensed and unlicensed, so that such employees and independent contractors delivered care and services to decedent RONALD TROPHY in a reasonably safe and beneficial manner.

120. At all times relevant to this complaint, defendants' responsibilities and obligations to decedent RONALD TROPHY as outlined in Public Health Law Section 2803-c are non-delegable and defendants have direct or vicarious liability for violations, deprivations and infringements of such responsibilities and obligations by any person or entity under defendants' control, direct or indirect including its employees, agents, consultants and independent contractors, whether in-house or outside entities, individuals, agencies, or pools, or caused by defendants' policies whether written or unwritten, or common practices.

121. At all times relevant to this complaint, defendants their employees, agents, consultants and independent contractors deprived plaintiff'S/decedent RONALD TROPHY of his rights pursuant to Public Health Law Section 2801-d and as enumerated in Public Health Law Section 2803-c.

122. At all times relevant to this complaint, defendants had a statutorily mandated responsibility to provide plaintiff's/decedent RONALD TROPHY with the rights granted to nursing home residents pursuant to New York Public Health Law Sections 2801-d and enumerated in Public Health Law Section 2803-c.

123. At all times relevant to this complaint plaintiff's/decedent RONALD

-25-

BROPHY'S injuries were caused wholly and solely by the negligent acts and/or omissions of the defendants, as well as the violation of the RONALD BROPHY'S rights pursuant to New York Public Health Law Section 2801-d and enumerated in New York Public Health Law Section 2803-c.

124. At all times relevant to this complaint, the acts and omissions committed by employees and agents of defendants were pervasive events that occurred and continued throughout RONALD BROPHY'S residency at defendants' facility, and were such that supervisors, administrators, and managing agents of defendants should have been aware of them.

125. In addition to the damages suffered by plaintiff's/decedent RONALD TROPHY as the result of defendants' deprivation of her rights as a nursing home resident, justice requires that plaintiff is entitled to recovery of attorneys' fees pursuant to Public Health Law Section 2801-d(6), punitive damages pursuant to Public Health Law Section 2801-d(2), and costs.

126. As a result of the foregoing acts and/or omissions, plaintiff was denied his rights under Public Health Law Section 2801-d as enumerated in Public Health Law Section 2803-c, and such denial caused injury and death. Consequently plaintiff/decedent RONALD TROPHY was forced to undergo medical treatment, incurred medical expense, suffered disfigurement, disability and pain and suffering, mental anguish, loss of enjoyment of life, and death.

127. As a result of the foregoing plaintiff/decedent RONALD BROPHY was damaged in the sum greater than the jurisdictional limits of any lower courts. plus attorneys' fees pursuant to Public Health Law Section 2801-d(6) punitive damages

-26-

Case 1:13-cv-06902-PKC   Document 16-9   Filed 05/16/14   Page 17 of 26
10-11963-cgm   Doc 3626-4   Filed 07/29/13   Entered 07/29/13 14:57:27   Exhibit D -
part 1   Pg 28 of 28

pursuant to Public Health Law Section 2801-d(2) and costs.

## AS AND FOR A SECOND CAUSE
## OF ACTION FOR NEGLIGENCE

*NURSING HOMES*

128. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the paragraphs of this Complaint herein, as though more fully set forth herein at length.

129. Prior to and at all times hereinafter mentioned, defendants owed a duty to residents of its nursing home facility, including plaintiff's/decedent RONALD TROPHY to protect his nursing home resident's rights pursuant to Public Health Law Section 2801-d and as enumerated in Public Health Law section 2803-c and pursuant to common-law.

130. Prior to and at all times hereinafter mentioned, defendants, any and all of them, as well as their officers, principals, employees, agents, supervisors, staff, independent medical personnel, and independent contractors, had a duty to provide ordinary care and to exercise the degree of care and sill exercised by nursing homes in the community and consistent with the expertise which defendants publicized to the community,

131. Prior to and at all times hereinafter mentioned, defendants owed a duty to plaintiff's/decedent RONALD TROPHY to hire, train, and supervise employees and independent contractors both licensed and unlicensed, so that such employees and independent contractors delivered care and services to RONALD TROPHY in a reasonably safe and beneficial manners.

132. Prior to and at all times hereinafter mentioned, during the period of plaintiff's/decedent RONALD BROPHY'S residency at Defendant Nursing Homes,

-27-

Hospitals, and care by Home Health Care Agency, said defendants breached their duty to
exercise ordinary care.

133. Prior to and at all times herein after mentioned, defendants negligently
breached its duties owed to RONALD TROPHY by statute and common-law.

134. Prior to and at all times hereinafter mentioned, as a result of the foregoing acts
and/or omissions, plaintiff's/decedent RONALD TROPHY was subject to defendants'
negligence, causing plaintiff's/decedent RONALD TROPHY to be forced to undergo
medical treatment, incur medical expenses, suffer disfigurement, disability, disfigurement,
pain and suffering, injuries as set forth above, mental anguish and loss of enjoyment of
life, mental and physical deterioration secondary to inappropriate psychotropic medication
administration; and death. Plaintiff also alleges Res Ipsa Loquitor.

135. As a result of the foregoing, plaintiff's/decent plaintiff RONALD TROPHY
was damaged in the sum greater than the jurisdictional limits of any lower courts.

## AS AND FOR A THIRD CAUSE OF ACTION FOR GROSS NEGLIGENCE

### *NURSING HOMES AND OPERATORS*

136. Plaintiff repeats reiterates and re-alleges each and very allegation contained in
the paragraphs of this Complaint herein with the same force and effect as if the same were
set more fully and at length herein.

137. Prior to and at all times hereinafter mentioned, the defendants acted in so
careless a manner as to show complete disregard for the rights and safety of
plaintiff's/decedent RONALD TROPHY.

138. Prior to and at all times hereinafter mentioned, the defendants in acted or

Case 1:13-cv-06902-PKC   Document 16-9   Filed 05/16/14   Page 19 of 26
10-11963-cgm   Doc 3626-5   Filed 07/29/13   Entered 07/29/13 14:57:27   Exhibit D -
part 2   Pg 2 of 16

failed to act knowing that its conduct would probably result in injury or damage, including knowing that its conduct would probably result in injury or damage to plaintiff/decedent RONALD TROPHY..

139. Prior to and at all times hereinafter mentioned, the defendant acted in so reckless a manner or failed to act in circumstances where an act was clearly required, so as to indicated disregard of the consequences of its action or inaction.

140. Prior to and at all times hereinafter mentioned, the defendants' conduct as outlined above, was in reckless disregard.

141. Prior to and at all times hereinafter mentioned, the defendants' conduct was willful.

142. Prior to and at all times hereinafter mentioned, the actions of the defendants were willful and wanton acts and in total disregard of plaintiff's/decedent RONALD BROPHY'S well being and/or committed with actual malice, thereby constituting gross negligence and/or thereby constituting a willful and wanton acts.

143. As a result of the foregoing, plaintiff is entitled to punitive damages pursuant to Public Health Law Section 2801-d(2) and common-law, and costs.

144. Solely as a result of the foregoing the decedent RONALD TROPHY has been damaged in the sum greater than the jurisdictional limits of the lower courts.

145. Solely as a result of the foregoing plaintiff is entitled to punitive damages in an amount greater than the jurisdictional limits of the lower courts.

## AS AND FOR A FOURTH CAUSE OF ACTION
## CORPORATE NEGLIGENCE/NEGLIGENT ADMINISTRATION

## NURSING HOMES AND OPERATORS

146. Plaintiff repeats reiterates and re-alleges each and very allegation contained in the paragraphs of this Complaint herein with the same force and effect as if the same were set more fully and at length herein.

147. As the licensee, manager, or owner of LUTHERAN AUGUSTANA CENTER FOR EXTENDED CARE AND REHABILITATION, INC., LUTHERAN AUGUSTANA CENTER FOR EXTENDED CARE AND REHABILITATION, INC , owed a non-delegable duty to operate and provide services in compliance with all applicable federal, state, and local laws, regulations, and codes with accepted professional standards and principles that apply to professionals providing services in a nursing home.

148. LUTHERAN AUGUSTANA CENTER FOR EXTENDED CARE AND REHABILITATION, INC., controlled, and had the right to control, direct and/or authorize the day to day operation of LUTHERAN AUGUSTANA CENTER FOR EXTENDED CARE AND REHABILITATION, INC., including services related to decedent's residency at LUTHERAN AUGUSTANA CENTER FOR EXTENDED CARE AND REHABILITATION, INC.

149. LUTHERAN AUGUSTANA CENTER FOR EXTENDED CARE AND REHABILITATION, INC., negligently failed to administer LUTHERAN AUGUSTANA CENTER FOR EXTENDED CARE AND REHABILITATION, INC., in a manner that enabled it to use its resources effectively and efficiently to attaint or maintain the highest practicable physical, mental, and psycho social well being of each resident including decedent herein.

-30-

Case 1:13-cv-06902-PKC   Document 16-9   Filed 05/16/14   Page 21 of 26
10-11963-cgm   Doc 3626-5   Filed 07/29/13   Entered 07/29/13 14:57:27   Exhibit D -
part 2   Pg 4 of 16

151. LUTHERAN AUGUSTANA CENTER FOR EXTENDED CARE AND
REHABILITATION, INC., negligently failed to have sufficient and/or competent staff at
LUTHERAN AUGUSTANA CENTER FOR EXTENDED CARE AND
REHABILITATION, INC., to provide services to meet decedent's care needs.

152. LUTHERAN AUGUSTANA CENTER FOR EXTENDED CARE AND
REHABILITATION, INC.,, negligently failed to supervise resident services, failed to
enforce resident care guidelines, and failed to ensure that LUTHERAN AUGUSTANA
CENTER FOR EXTENDED CARE AND REHABILITATION, INC., professional and
non-professional staff exercised reasonable care to protect decedent from harm that was
reasonable foreseeable.

153. LUTHERAN AUGUSTANA CENTER FOR EXTENDED CARE AND
REHABILITATION, INC.,s corporate negligence resulted in dangerous delivery of
services and health care to the resident's of LUTHERAN AUGUSTANA CENTER FOR
EXTENDED CARE AND REHABILITATION, INC.,including decedent herein.

154. As a direct and proximate cause of LUTHERAN AUGUSTANA CENTER
FOR EXTENDED CARE AND REHABILITATION, INC's corporate negligence,
plaintiff's decedent died on 6/13/10.

155. As the licensee, manager, or owner of HOLY FAMILY HOME, ST.
VINCENT'S CATHOLIC MEDICAL CENTERS OF NEW YORK a/k/a SAINT
VINCENT CATHOLIC MEDICAL CENTERS a/k/a SVCMC-ST VINCENT'S
MANHATTAN,   owed a non-delegable duty to operate and provide services in
compliance with all applicable federal, state, and local laws, regulations, and codes with
accepted professional standards and principles that apply to professionals providing

-31-

services in a nursing home.

156. ST. VINCENT'S CATHOLIC MEDICAL CENTERS OF NEW YORK a/k/a
SAINT VINCENT CATHOLIC MEDICAL CENTERS a/k/a SVCMC-ST VINCENT'S
MANHATTAN, controlled, and had the right to control, direct and/or authorize the day to
day operation of HOLY FAMILY HOME, including services related to decedent's
residency at HOLY FAMILY HOME., negligently controlled and participated in the day to
day administrative and standard making functions, operations, planning, management, and
quality control of HOLY FAMILY HOME.

157. ST. VINCENT'S CATHOLIC MEDICAL CENTERS OF NEW YORK a/k/a
SAINT VINCENT CATHOLIC MEDICAL CENTERS a/k/a SVCMC-ST VINCENT'S
MANHATTAN,  negligently failed to administer HOLY FAMILY HOME., in a manner
that enabled it to use its resources effectively and efficiently to attaint or maintain the
highest practicable physical, mental, and psycho social well being of each resident
including decedent herein.

158. ST. VINCENT'S CATHOLIC MEDICAL CENTERS OF NEW YORK a/k/a
SAINT VINCENT CATHOLIC MEDICAL CENTERS a/k/a SVCMC-ST VINCENT'S
MANHATTAN,, negligently failed to have sufficient and/or competent staff at HOLY
FAMILY HOME., to provide services to meet decedent's care needs.

159. ST. VINCENT'S CATHOLIC MEDICAL CENTERS OF NEW YORK a/k/a
SAINT VINCENT CATHOLIC MEDICAL CENTERS a/k/a SVCMC-ST VINCENT'S
MANHATTAN, negligently failed to supervise resident services, failed to enforce resident
care guidelines, and failed to ensure that HOLY FAMILY HOME's, professional and non-
professional staff exercised reasonable care to protect decedent from harm that was

-32-

Case 1:13-cv-06902-PKC Document 16-9 Filed 05/16/14 Page 23 of 26
10-11963-cgm Doc 3626-5 Filed 07/29/13 Entered 07/29/13 14:57:27 Exhibit D -
part 2 Pg 6 of 16

reasonable foreseeable.

160. ST. VINCENT'S CATHOLIC MEDICAL CENTERS OF NEW YORK a/k/a

SAINT VINCENT CATHOLIC MEDICAL CENTERS a/k/a SVCMC-ST VINCENT'S

MANHATTAN'S corporate negligence resulted in dangerous delivery of services and

health care to the resident's of HOLY FAMILY HOME, including decedent herein.

161. As a direct and proximate cause of ST. VINCENT'S CATHOLIC MEDICAL

CENTERS OF NEW YORK a/k/a SAINT VINCENT CATHOLIC MEDICAL CENTERS

a/k/a SVCMC-ST VINCENT'S MANHATTAN's corporate negligence, plaintiff's

decedent died on 6/13/10.

162. As a result of the aforementioned plaintiff was injured in an amount greater

that the jurisdictional limits of the lower courts.

### AS AND FOR A FIFTH CAUSE OF
### ACTION FOR GROSS NEGLIGENCE

#### *NURSING HOMES AND OPERATORS*

163. Plaintiff repeats reiterates and re-alleges each and very allegation contained in

the paragraphs of this Complaint herein with the same force and effect as if the same were

set more fully and at length herein.

164. Prior to and at all times hereinafter mentioned, the defendants acted in so

careless a manner as to show complete disregard for the rights and safety of

plaintiff's/decedent RONALD TROPHY.

165. Prior to and at all times hereinafter mentioned, the defendants in acted or

-33-

Case 1:13-cv-06902-PKC   Document 16-9   Filed 05/16/14   Page 24 of 26
10-11963-cgm   Doc 3626-5   Filed 07/29/13   Entered 07/29/13 14:57:27   Exhibit D -
part 2   Pg 7 of 16

failed to act knowing that its conduct would probably result in injury or damage, including knowing that its conduct would probably result in injury or damage to plaintiff/decedent RONALD TROPHY.

166. Prior to and at all times hereinafter mentioned, the defendant acted in so reckless a manner or failed to act in circumstances where an act was clearly required, so as to indicated disregard of the consequences of its action or inaction.

167. Prior to and at all times hereinafter mentioned, the defendants' conduct as outlined above, was in reckless disregard.

168. Prior to and at all times hereinafter mentioned, the defendants' conduct was willful.

169. Prior to and at all times hereinafter mentioned, the actions of the defendants were willful and wanton acts and in total disregard of plaintiff's/decedent RONALD BROPHY'S well being and, thereby constituting gross negligence and/or thereby constituting a willful and wanton acts.

170. Defendants' aforementioned conduct was committed with knowing, conscious and deliberate disregard for the rights and safety of RONALD TROPHY.

171. As a result of the foregoing, plaintiff is entitled to punitive damages pursuant to Public Health Law Section 2801-d(2) and common-law, and costs.

172. Solely as a result of the foregoing the decedent RONALD TROPHY has been damaged in the sum greater than the jurisdictional limits of the lower courts.

173. Solely as a result of the foregoing plaintiff is entitled to punitive damages in an amount greater than the jurisdictional limits of the lower courts.

-34-

## AS AND FOR A SIXTH CAUSE OF ACTION AGAINST KINGSBROOK JEWISH MEDICAL CENTER and METROPOLITAN JEWISH HOME HEALTH

That at all times hereinafter mentioned defendant, LUTHERAN MEDICAL CENTER was a domestic corporation duly organized and existing under and by the virtue of the laws of the State of New York.

174. That at all times hereinafter mentioned, defendant LUTHERAN MEDICAL CENTER , owned, operated, managed and controlled a certain hospital known as LUTHERAN MEDICAL CENTER for the treatment of the sick and ailing in the County of Kings, City and State of New York, and as such held itself out as duly qualified to render proper and adequate medical, hospital and surgical services to members of the general public, including plaintiff/decedent.

175. That at all times hereinafter mentioned, defendant LUTHERAN MEDICAL CENTER, owned, operated, managed and controlled a certain hospital known as LUTHERAN MEDICAL CENTER for the treatment of the sick and ailing in the County of Kings, City and State of New York, and as such held itself out as duly qualified to render proper and adequate medical, hospital and surgical services to members of the general public, including plaintiff herein.

176. That on or about 11/5/09-11/20/09-2/1/10-3/6/10 plaintiff/decedent came under the care and treatment of defendant herein at LUTHERAN MEDICAL CENTER.

177. That the defendants, their agents, servants and/or employees failed in their care and treatment of plaintiff to treat and care for him in accordance with the standards of care and treatment of plaintiff , approved methods in general and to use reasonable care and skill and to use their best judgment in the care and treatment of this plaintiff.

-35-

178. That defendants by their agents servants and/or employees were negligent, reckless and careless in causing and permitting harm to be done to the plaintiff; in their failure to perform the appropriate and necessary treatment for the illness for which plaintiff was suffering; that said treatment and services provided to plaintiff was not in accordance with the proper practice that is generally recognized in this community; in that there was a departure from the generally accepted community standards of nursing; in that the defendants committed malpractice; in failing to hire competent personnel; in failing to properly train its personnel; in failing to properly supervise said personnel; in failing in defendants' duty of reasonable care; in failing to abide by custom and practice in a manner so as to prevent the contingency and/or complications which herein occurred; in failing to treat and care for the plaintiff in a careful and skillful manner; in negligently failing to monitor plaintiff ;in abandoning plaintiff; and the defendants , its agents servants and/or employees were in other ways negligent reckless and careless in permitting plaintiff/defendant to suffer disintegration of pressure ulcers, formation of pressure ulcers, formation of contracture deformities, in inappropriately releasing plaintiff/decedent.

179. As a direct and proximate breach of the Defendant LUTHERAN MEDICAL CENTER as aforesaid, plaintiff/decedent has suffered personal injuries including, but not limited to, physical and emotional injuries, costs for treatment of such injuries, pain and suffering, and other consequential damages. Defendant LUTHERAN MEDICAL CENTER KINGS CENTER is liable to the plaintiff/decedent for damages.

180. That the plaintiff/decedent was caused, permitted and allowed to suffer extensive and severe personal injuries, conscious pain and suffering, medical and hospital expenses as a result of the carelessness and negligence of the defendant LUTHERAN