<u>EXHIBIT F</u>

Court Transcript, August 15, 2013

```
1                    UNITED STATES BANKRUPTCY COURT
                     SOUTHERN DISTRICT OF NEW YORK
2
                                   . Chapter 11
3    IN RE:                        .
                                   . Case No. 10-11963 (CGM)
4    SAINT VINCENT'S CATHOLIC      .
     MEDICAL CENTERS OF NEW YORK,  . (Jointly Administered)
5    d/b/a SAINT VINCENT CATHOLIC  .
     MEDICAL CENTERS, et al,       . New York, New York
6                                  . Thursday, August 15, 2013
                                   . 11:02 a.m.
7                    Debtors.      .

     . . . . . . . . . . . . . . . .
8
     TRANSCRIPT OF THIRD SUPPLEMENTAL FIFTY-FOURTH OMNIBUS OBJECTION
9       OF THE LIQUIDATING TRUSTEE SOLELY WITH RESPECT TO CLAIM NO.
     3034 (TIER II - CLAIM THAT HAS NO BASIS IN THE DEBTORS' BOOKS
10       AND RECORDS AND FOR WHICH THE DEBTORS ARE NOT LIABLE)
     FOURTH SUPPLEMENTAL FIFTY-FOURTH OMNIBUS OBJECTION OF THE LIQUIDATING
11   TRUSTEE SOLELY WITH RESPECT TO CLAIM NO. 3215 (TIER II - CLAIM
     THAT WAS PREVIOUSLY DISCHARGED; OR, ALTERNATIVELY, IS SUBJECT
12       TO DISALLOWANCE PURSUANT TO BANKRUPTCY CODE SECTION
                          502(e)(1)(B))
13      MOTION FOR OBJECTION TO CLAIM(S) NUMBER 3565 OF MELANIE
                             MARTINEZ
14   FIFTY-FOURTH OMNIBUS OBJECTION OF THE LIQUIDATING TRUSTEE TO
     CERTAIN CLAIMS (TIER I - (A) IMPROPERLY CLASSIFIED CLAIMS; (B)
15   CLAIM AMOUNTS THAT ARE INCONSISTENT WITH THE DEBTORS' BOOKS AND
        RECORDS; (C) CLAIMS THAT LACK SUFFICIENT DOCUMENTATION)
16   MOTION TO APPROVE/MOTION OF THE LIQUIDATING TRUSTEE FOR ENTRY
            OF AN ORDER ENFORCING THE PLAN INJUNCTION
17                          (Continued)
             BEFORE THE HONORABLE CECELIA G. MORRIS
18           CHIEF UNITED STATES BANKRUPTCY JUDGE

19

20   Audio Operator:              Electronically Recorded
                                  By Chris B., ECRO
21
                     AudioEdge Transcription, LLC
22              425 Eagle Rock Avenue - Suite 201
                   Roseland, New Jersey 07068
23                       (973) 618-2310
                  www.audioedgetranscription.com
24
     Proceedings recorded by electronic sound recording, transcript
25   produced by certified transcription service.
```

```
1                           TRANSCRIPT OF (Continued)
             STATUS CONFERENCE: MOTION FOR RELIEF FROM STAY OF JEFFREY
2             PENAFIEL, A/K/A JEFFREY ENCALADA, AN INFANT, AND MERIE
             PENAFIEL, A/K/A MERIE ENCALADA, INDIVIDUALLY SEEKING RELIEF
3            FROM THE AUTOMATIC STAY PURSUANT TO BANKRUPTCY CODE SECTION
                                      362(d)

4
    APPEARANCES:

5
    For the Post-Effective-
6   Date SVCMC:                       Anupoma Yerramalli, Esq.
                                      KRAMER, LEVIN, NAFTALIS
7                                      & FRANKEL, LLP
                                      1177 Avenue of the Americas
8                                     New York, New York 10036

9   For the Liquidating
    Trustee:                          Sarah Link Schultz, Esq.
10                                    AKIN, GUMP, STRAUSS, HAUER
                                       & FELD, LLP
11                                    1700 Pacific Avenue, Suite 4109
                                      Dallas, Texas 75201

12
                                      Angeline L. Koo, Esq.
13                                    AKIN, GUMP, STRAUSS, HAUER
                                       & FELD, LLP
14                                    One Bryant Park
                                      New York, New York 10036

15
                                      David M. Smith, Esq.
16                                    TOGUT, SEGAL & SEGAL, LLP
                                      One Penn Plaza
17                                    New York, New York 10110

18  For Tact Medical Staffing:        Wayne M. Greenwald, Esq.
                                      WAYNE GREENWALD, PC
19                                    476 Park Avenue South
                                      New York, New York 10016

20
    For Elaine Garvey:                Sheryl R. Menkes, Esq.
21                                    MENKES LAW FIRM
                                      325 Broadway, Suite 504
22                                    New York, New York 10007

23  (Appearances Continued)

24

25
```

```
 1   APPEARANCES:   (Continued)

 2   For the AIU/AIG Companies:   Mary G. McCarthy, Esq.
                                  ZEICHNER, ELLMAN & KRAUSE, LLP
 3                                575 Lexington Avenue
                                  New York, New York 10022
 4
     For Jeffrey Penafiel,
 5   et al:                       Arthur O. Tisi, Esq.
                                  ROSENBERG, MINC, FALKOFF
 6                                & WOLFF, LLP
                                  122 East 42nd Street
 7                                New York, New York 10168

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                                    INDEX

2                                                                    Page

3
   THIRTY-FIRST OMNIBUS OBJECTION                               6
4
   FIFTY-FOURTH OMNIBUS OBJECTION                               7
5
   OBJECTION TO CLAIM NO. 3565                                  8
6
   THIRD SUPPLEMENTAL FIFTY-FOURTH OMNIBUS OBJECTION            9
7
   FOURTH SUPPLEMENTAL FIFTY-FOURTH OMNIBUS OBJECTION          11
8
   STATUS CONFERENCE:   PENAFIEL LIFT-STAY MOTION             12
9
   STATUS CONFERENCE:   AIU/AIG COMPANIES                     14
10
   STATUS CONFERENCE:   PREFERENCE ACTIONS                    18
11
   MOTION TO ENFORCE PLAN INJUNCTION                          23
12
        Court Decision                                        51
13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1          (Proceedings commence 11:02 a.m.)

 2              THE COURT:  Am I early for Saint Vincents, or I'm on

 3    time?  Saint Vincents Medical Centers of New York, Case 10-

 4    11963.

 5          Good morning.  State your name and affiliation.

 6              MS. SCHULTZ:  Good morning, Your Honor.  Sarah

 7    Schultz, Akin, Gump, Strauss, Hauer & Feld.  I'm joined today

 8    by Angeline Koo and my colleague Jason Sharp, who's on the

 9    phone, on behalf of the liquidating trustee.

10              THE COURT:  Very good.  He's listen only.  Is that

11    correct?

12              MS. SCHULTZ:  That's correct, Your Honor.

13              THE COURT:  Very good.

14              MR. SMITH:  Your Honor, David Smith from Togut, Segal

15    & Segal, co-counsel to the liquidating trustee.

16              MS. YERRAMALLI:  Good morning, Your Honor.  Anu

17    Yerramalli of Kramer Levin on behalf of the post-effective-date

18    SVMC.

19              THE COURT:  Thank you.

20              MS. MENKES:  My name is Sheryl Menkes, I'm attorney

21    for Creditor Elaine Garvey.  And I was told I was up second, so

22    I don't believe this is --

23              THE COURT:  That's right.  You -- just remember to say

24    your name again when you come to the microphone.

25              MS. MENKES:  Thank you.
```

```
 1           THE COURT:  And you don't have to go all the way back.

 2   Just take a seat right behind you.

 3           MR. TISI:  Good morning, Your Honor.  For the Infant

 4   Plaintiff Jeffrey Penafiel, the firm of Rosenberg, Minc,

 5   Falkoff & Wolff, by Arthur Tisi, T-i-s-i.

 6           THE COURT:  Thank you.

 7           MS. MCCARTHY:  Mary McCarthy of Zeichner, Ellman &

 8   Krause, representing National Union Fire Insurance Company.

 9           THE COURT:  Very good.  Good morning.

10           MS. SCHULTZ:  Good morning, Your Honor.  Again, for

11   the record --

12           THE COURT:  Thank you.

13           MS. SCHULTZ:  -- Sarah Schultz, Akin, Gump, Strauss,

14   Hauer & Feld on behalf of the liquidating trustee.

15           Your Honor, we've got a fairly lengthy agenda today,

16   and I thought if I might, I would just take it in order, as it

17   was listed.

18           THE COURT:  Exactly.  Don't we have some omnibus

19   claims objections and other things first?

20           MS. SCHULTZ:  We do, Your Honor.

21           THE COURT:  Okay.  I'm going to go through the agenda.

22   The first one is the thirty-first omnibus objection.

23           MS. SCHULTZ:  Your Honor, with respect to the thirty-

24   first omnibus objection, Claim No. 4608, we've reached a

25   settlement in principle --
```

```
 1              THE COURT:  Okay.

 2              MS. SCHULTZ:  -- with Julian Sosner; we're just in the

 3  process of documenting it.

 4              THE COURT:  Okay.  So we adjourn that to September the

 5  19th.

 6              MS. SCHULTZ:  September the 19th at 11 p.m., yeah --

 7              THE COURT:  Okay.

 8              MS. SCHULTZ:  -- or 11 a.m.

 9              THE COURT:  Very good.  Thank you.

10              The fifty-fourth omnibus objection.

11              MS. SCHULTZ:  Your Honor, with respect to the fifty-

12  fourth omnibus objection, we continue to have approximately

13  fifty-four employee claims.  The employee claims relate to the

14  KFG litigation --

15              THE COURT:  Okay.

16              MS. SCHULTZ:  -- and the resolution of those, as well

17  as twenty regular general unsecured claims.  All of these

18  claims are being adjourned to the September 19th hearing at 11

19  a.m.

20              THE COURT:  How many claims are we talking about?

21              MS. SCHULTZ:  A total of seventy-four claims, I

22  believe.  Fifty-four relate to the KFG litigation, and twenty

23  are regular general unsecured claims.

24              THE COURT:  Okay.  And we have none of those resolved,

25  or is this going to be resolved in one lump?
```

1          MS. SCHULTZ:  We've been resolving the -- the employee

2   claims should be resolved in a single lump.

3          THE COURT:  Okay.

4          MS. SCHULTZ:  The remaining twenty claims, we've been

5   resolving them one at a time.  For example, under the

6   uncontested matters, Claim No. 3565 was a claim that came from

7   the fifty-fourth omnibus, as well as the third supplemental

8   fifty-fourth omnibus, which is Claim No. 3034 --

9          THE COURT:  Excellent.  Okay.

10          MS. SCHULTZ:  -- which we're about to have -- cover.

11          THE COURT:  Thank you.

12          Then we have an uncontested claims objection, and

13   that's Claim Objection 3565?

14          MS. SCHULTZ:  That's correct, Your Honor.  With

15   respect to Claim Objection No. 3565, this is an SV-I claim.

16   The liquidating trustee has served -- filed and served the

17   claim objection on the claimant.  No response was received.  We

18   filed a certificate of no objection, which is located at Docket

19   No. 3642.  And we'd respectfully request that Your Honor grant

20   our objection with respect to Claim No. 3565, expunging the

21   claim.

22          THE COURT:  Do we know the name of the claimant?  I've

23   only got 3565 on my documents.

24          MS. SCHULTZ:  Yes, Your Honor.

25          THE COURT:  Please.  Because we need to ask if they're

```
 1    in the courtroom.

 2              MS. SCHULTZ:  It's Melanie Martinez.

 3              THE COURT:  Is Melanie Martinez in the courtroom?

 4    Melanie Martinez.  Anyone representing Melanie Martinez in the

 5    courtroom?

 6        (No verbal response.)

 7              THE COURT:  Having heard no objection, I will grant

 8    your -- having heard no response to your objection, I grant

 9    your objection.

10              MS. SCHULTZ:  Thank you, Your Honor.

11              The next matter on the agenda is the third

12    supplemental fifty-fourth omnibus objection.

13              THE COURT:  Uh-huh.

14              MS. SCHULTZ:  This is Docket No. 3586.

15              THE COURT:  Okay.

16              MS. SCHULTZ:  Your Honor, this is a claim that was

17    filed -- let me get you the name.

18              THE COURT:  Yeah, again, it's 3034.

19              MS. SCHULTZ:  Thirty --

20              THE COURT:  Claim No. 3034?

21              MS. SCHULTZ:  Correct, Your Honor.  This is a

22    supplement to the thirty-fourth omnibus -- or, sorry, the

23    fifty-fourth omnibus.  This was filed by an employee who

24    asserted -- a former resident who asserted discrimination?

25              THE COURT:  A former resident or a resident -- doctor-
```

```
 1    resident?

 2              MS. SCHULTZ:  A doctor-resident.

 3              THE COURT:  Okay.

 4              MS. SCHULTZ:  Who asserted two different types of

 5    discrimination against Saint Vincents:  The first was racial

 6    discrimination; the second was that he was discriminated based

 7    on loose joints in the wrist.

 8              THE COURT:  Okay.  Loose joints in the wrist?

 9              MS. SCHULTZ:  Yes, Your Honor.

10              THE COURT:  Okay.  That's sort of new for me, but

11    okay.

12              MS. SCHULTZ:  Yeah.

13              THE COURT:  And the name?

14              MS. SCHULTZ:  I'm looking for that, for the name in

15    the objection.  I apologize, Your Honor.

16              THE COURT:  That's fine.

17              MS. SCHULTZ:  I just have the claim number.

18              THE COURT:  I do appreciate that because we need to

19    ask.

20         (Pause in proceedings.)

21              MS. SCHULTZ:  It's Mateo Taerri.  T-a --

22              THE COURT:  Spell that for us.

23              MS. SCHULTZ:  T-a-e-r-r-i.

24              THE COURT:  T-a-e-r-r-i?

25              MS. SCHULTZ:  Yes, Your Honor.
```

1          THE COURT:  Is Mateo Taerri, or T-a-e-r-r-i, in the

2   courtroom?

3     (No verbal response.)

4          THE COURT:  Anyone representing Mateo Taerri in the

5   courtroom?

6     (No verbal response.)

7          THE COURT:  Having heard no response to your

8   objection, I will grant it.

9          MS. SCHULTZ:  Thank you.

10         THE COURT:  Now the fourth supplemental fifty-fourth

11  objection.

12         MS. SCHULTZ:  The fourth --

13         THE COURT:  Claim No. 3215.

14         MS. SCHULTZ:  Yes, Your Honor.  This was a straight

15  52(e) claim, where a contingent claim was filed against the

16  debtors.  No response was received.  And I'm looking for the --

17         THE COURT:  I'm going to need the name.

18         MS. SCHULTZ:  -- the name of the claimant, yeah.

19    (Pause in proceedings.)

20         MS. SCHULTZ:  This is Grand Street Medicine and

21  Rehabilitation, PC.

22         THE COURT:  Grand Street Rehabilitation and --

23         MS. SCHULTZ:  Grand Street Medicine and

24  Rehabilitation, PC.

25         THE COURT:  Grand Street Medicine and Rehabilitation,

1  PC.  Is there anyone in the courtroom representing Grand Street

2  Medicine and Rehabilitation, PC?

3     (No verbal response.)

4        THE COURT:  Having heard no response to your

5  objection, I will grant your objection.  Very good.

6        MS. SCHULTZ:  Thank you, Your Honor.

7        THE COURT:  We're on the Penafiel lift-stay.

8        MS. SCHULTZ:  Yes.  For that, I'll cede the podium to

9  Ms. Yerramalli.

10        THE COURT:  Thank you.  Good morning, Ms. Yerramalli.

11  How are you today?

12        MS. YERRAMALLI:  Good morning, Your Honor.  For the

13  record, Anu Yerramalli, for the post-effective-date SVMC.

14        THE COURT:  And were you not representing Penafiel?

15        MR. TISI:  Yes, Your Honor.

16        THE COURT:  State your name and affiliation again.

17        MR. TISI:  Yes, Your Honor.  For Infant Plaintiff

18  Jeffrey Penafiel, Arthur Tisi, T-i-s-i, for the offices of

19  Rosenberg, Minc, Falkoff & Wolff.

20        THE COURT:  Very good.

21        MS. YERRAMALLI:  Your Honor --

22        THE COURT:  You may be seated.

23        MR. TISI:  Thank you.

24        MS. YERRAMALLI:  Your Honor, again, Anu Yerramalli for

25  the record.

1          This motion was filed before the Court approximately

2    two years ago, and the parties, which include the plaintiff,

3    the med-mal trust monitor, the liquidating trustee, and the

4    post-effective-date SVMC, have reached a settlement in

5    principle of the underlying claim that was asserted in the

6    first bankruptcy case.

7          We are currently negotiation documentation, and we

8    hope to have a stipulation to lift the stay on file with the

9    Court in the next week or so.  So we would respectfully request

10   that the Court carry the motion for another month and schedule

11   a status conference for the next omnibus hearing date, in the

12   hopes that the stipulation will actually already be on file in

13   advance of that, and obviate the need for the parties to

14   return.

15         THE COURT:  Excellent.  Congratulations.  I know it

16   was hard-fought.

17         MR. TISI:  Thank you, Your Honor.

18         THE COURT:  Very good.

19         MS. YERRAMALLI:  Thank you, Your Honor.

20         THE COURT:  If we can just get it papered now.

21      (Laughter.)

22         THE COURT:  So ...

23         MS. YERRAMALLI:  We're working diligently to do so,

24   Your Honor.

25         THE COURT:  9/19, at eleven o'clock.

1          MS. YERRAMALLI:  Great.  Thank you so much.

2          THE COURT:  Very good.  Thank you very much.

3          MR. TISI:  Thank you.

4          THE COURT:  Objection to claims filed by AIU Insurance

5   Company and National Union Fire Insurance Company of

6   Pittsburgh.  State your name and affiliation.

7          MR. SMITH:  Good morning again, Your Honor.  David

8   Smith of Togut, Segal & Segal, counsel to the liquidating

9   trust.

10         MS. MCCARTHY:  Mary McCarthy from the firm of

11  Zeichner, Ellman & Krause on behalf of AIU and National Union.

12         THE COURT:  Very good.

13         MR. SMITH:  Your Honor, for the record, also AIU and

14  National Union Fire, if I just refer to them as the "AIG

15  Companies," I believe there was a brief discussion by Mr. Davis

16  --

17         THE COURT:  That always refreshes my recollection when

18  you say that.

19         MR. SMITH:  Right.  Your Honor, as you might remember,

20  there was --

21         THE COURT:  You may be seated --

22         MR. SMITH:  -- extensive discussions --

23         THE COURT:  -- while he's --

24         MR. SMITH:  I apologize, Your Honor.  There were

25  extensive discussions about the claims objections to the AIG

1    claims last month.  My colleague Mr. Oswald was here, as well.

2    Pursuant to Your Honor's direction, we entered into an agreed

3    scheduling order, which was entered by the Court on July 19th.

4    I'm just here to report that the parties have complied with the

5    scheduling order.

6            On July 26th, the liquidating trust provided AIG with

7    their position letter regarding a -- what's called -- what we

8    refer to as the "security issue" --

9            THE COURT:  Okay.

10           MR. SMITH:  -- which has to do with whether or not

11   certain losses and expenses related to workers' compensation

12   are subject to various letters of credit and other collateral

13   for the Queensbrook Insurance Limited -- "the QIL" is what it's

14   called, Q-I-L.

15           THE COURT:  Right.

16           MR. SMITH:  Pursuant to the same scheduling order, on

17   August 8th, AIG did provide the liquidating trust with a

18   breakdown of its -- the liquidated damages sought in the claim.

19   Unsurprisingly, there was some disagreement, but at least we

20   now know the methodology, and we're trying to work back and

21   forth with AIG's counsel about trying to come up to at least

22   see where we can agree --

23           THE COURT:  So it sounds like --

24           MR. SMITH:  -- and disagree on the numbers.

25           THE COURT:  -- at least that's where we are, which

1    sounds good.  You --

2            MR. SMITH:  Yes.  Your Honor, we're --

3            THE COURT:  Where you agree, and where you agree to

4    disagree.

5            MR. SMITH:  Exactly.  At least we're moving along,

6    which is certainly better than where we were last month.

7            THE COURT:  Right.  That's excellent.

8            MR. SMITH:  Your Honor, finally, as Your Honor may

9    have noticed, AIG did file a motion to compel arbitration

10   regarding the security issue.

11           THE COURT:  Yeah.

12           MR. SMITH:  We have --

13           THE COURT:  Do we need that briefed?

14           MR. SMITH:  Yeah, Your Honor.  We will file our

15   response to it timely, which, pursuant to the scheduling order,

16   the deadline is August 26th.

17           THE COURT:  Okay.

18           MR. SMITH:  We do not view a need to extend that time.

19   We've already begun preparing our response.

20           THE COURT:  Well, will 9/19 be the -- a good time to

21   hear that?

22           MR. SMITH:  Yes, Your Honor.

23           THE COURT:  Will that be sufficient?

24           MR. SMITH:  Your Honor, I do believe so.  And the

25   scheduling order also references September 10th as a response

1    date for AIG to our response.

2              THE COURT:  Right, right.

3              MR. SMITH:  So, assuming there aren't any massive

4    issues that are raised in that motion, which I, obviously,

5    don't want to speak for AIG -- if there are, we might ask for

6    an adjournment of time, only in -- only in the case that we

7    don't believe we'll have the time sufficient to understand and

8    respond to their arguments.

9              THE COURT:  Well --

10             MR. SMITH:  However, it's a little premature at that

11   point.

12             THE COURT:  That is premature.  I'll put it on for

13   9/19 at eleven o'clock, and that will give us a chance -- you

14   know, yeah, you may ask for more time.  I may not give it to

15   you, but you may ask for more time.

16             MR. SMITH:  Right.

17             THE COURT:  I reserve my right.

18             MR. SMITH:  Right, exactly.  But again, at least we

19   are moving along on these.  We at least know what their actual

20   claim damages are, that they're seeking are.

21             THE COURT:  Well, you also --

22             MR. SMITH:  So we at least have some basis to go on.

23             THE COURT:  -- know the standard that they're asking

24   for arbitration on, so we --

25             MR. SMITH:  I do.

1          THE COURT:  -- we have a much better look at this case

2    right now.

3          MR. SMITH:  Right.  And we will also, in our response,

4    put forth our arguments on it.  And hopefully, we're in a good

5    position next month, if we're not resolved --

6          THE COURT:  Very good.

7          MR. SMITH:  -- to move forward on the 19th.

8          And Your Honor, I'll have nothing else, and I'll cede

9    --

10         THE COURT:  Ms. McCarthy, do you have anything you

11   wish to add?

12         MS. MCCARTHY:  I have nothing to add.

13         THE COURT:  Very good.  Thank you.  I'll see you all

14   again on September 19th, unless you resolve it before then.

15         MR. SMITH:  Yes.

16      (Laughter.)

17         THE COURT:  Keep talking, keep talking.

18         MR. SMITH:  That would be nice.

19         Your Honor, on the next matter on the agenda, again, I

20   will be very brief.

21         THE COURT:  It's Adversary Proceeding 12-01419, Tact

22   Medical Staffing.

23         MR. SMITH:  And I believe Mr. Greenwald is here, as

24   well, who represents Tact, and will --

25         THE COURT:  Come on, Mr. Greenwald.  Join us at

 1   counsel table.  How are you this morning?

 2           MR. GREENWALD:  Well, Your Honor.  How are you?

 3           THE COURT:  Fine.  Thank you.  As everyone knows, I

 4   have to always comment for the record that Mr. Greenwald is

 5   definitely dressed as a southerner today again.

 6           MR. GREENWALD:  Well, Your Honor, thank you.  I was in

 7   Atlanta last week.  But as I say, it's my way of dealing with

 8   the heat.  As I say, I'm from a place where it gets snow 365

 9   days a year.

10      (Laughter.)

11           THE COURT:  Very good.  Thank you.

12           What have we got here?

13           MR. SMITH:  Your Honor, just to briefly update on the

14   status of preferences overall, we are all done with all of our

15   preferences, with the exception of Mr. Greenwald's client --

16           THE COURT:  Okay.

17           MR. SMITH:  -- which has pretty much been the only

18   pending action for just about a month now.  At the last omnibus

19   hearing, I discussed six matters that were open, but as I said

20   at the last hearing, only one of them, Mr. Greenwald's action,

21   has not really moved anywhere and has not been resolved.  So I

22   just want to put forth for the record --

23           THE COURT:  Every one -- excuse me.

24           MR. SMITH:  Every single --

25           THE COURT:  Of all, this is it?

```
 1              MR. SMITH:  This is the one.  And --

 2              THE COURT:  Congratulations.

 3              MR. SMITH:  Yes.

 4              THE COURT:  That's awesome.

 5              MR. SMITH:  The aggregate amount -- and we'll file a

 6    status report shortly, or before the next omnibus hearing.  The

 7    total settlements to date are approximately $5.77 million in

 8    just over one year.

 9              THE COURT:  One.

10              MR. SMITH:  Yes, Your Honor.

11              THE COURT:  Congratulations.

12              MR. SMITH:  We're happy that the turnaround happened

13    so quickly.  Not to get --

14              THE COURT:  It doesn't always happen that way.

15              MR. SMITH:  Not to get as contentious -- we'd

16    obviously like to be done with all 250 of them, but --

17              MR. GREENWALD:  As would I.

18              MR. SMITH:  But --

19              THE COURT:  Arm wrestle here.

20              MR. SMITH:  Right.  So -- I'm just going to state for

21    the record, obviously, we are ready to settle all these

22    actions, ready to go what we can to get this resolved.

23              A scheduling order for this matter has gone into

24    effect.

25              THE COURT:  Okay.  So we do have a scheduling order.
```

```
1               MR. SMITH:  Discovery -- we do, Your Honor.

2               THE COURT:  So we know how we're headed.

3               MR. SMITH:  Discovery has been -- discovery requests

4   have been exchanged.  A request for a deposition of a 30(b)(6)

5   was --

6               THE COURT:  Okay.

7               MR. SMITH:  -- was previously sent to Mr. Greenwald,

8   which is not -- they're not -- has not been responded to yet.

9   Hopefully, we can actually get a 30(b)(6), so we have a

10  deposition.  Again, we hope to avoid all of that.  We don't

11  want discovery, we don't want depositions.  We want to settle.

12              THE COURT:  I know.

13              MR. SMITH:  Right.

14              THE COURT:  But at least we're going to know who to --

15  you're going to put someone out there pretty quickly, right?

16              MR. GREENWALD:  Yes, I do, Your Honor.

17              THE COURT:  And you know that already?

18              MR. GREENWALD:  It is -- I believe -- yes, Your Honor,

19  I believe I do.  I believe it would be the defendant's

20  principal, Mr. Abrams.

21              THE COURT:  Okay.  Good.  Maybe you all can talk at

22  the end of this hearing and -- talk.

23              MR. GREENWALD:  I'm hoping -- I'm --

24              THE COURT:  Well --

25              MR. GREENWALD:  Your Honor, I --
```

1           THE COURT:  No, I mean Mr. Abrams, so that you know

2    Mr. Abrams, and then we can sit down and start having

3    depositions.  Let's move it.

4           MR. GREENWALD:  Right.  Okay.

5           THE COURT:  Sounds good.

6           MR. SMITH:  That sounds good to me, too, Your Honor.

7    And Your Honor, I have nothing further.

8           THE COURT:  You -- excuse me?

9           MR. SMITH:  I have nothing further for the Court.

10          THE COURT:  Anything else, Mr. Greenwald, you wish to

11   add?

12          MR. GREENWALD:  No, Your Honor, I don't.  I just -- I

13   found out about this hearing -- the status conference,

14   yesterday, when there was an amended --

15          THE COURT:  9/19 at eleven o'clock.  You now know

16   about the next one.

17      (Laughter.)

18          MR. GREENWALD:  Thank you.

19          THE COURT:  So it was on the agenda.  But I'm telling

20   you right now, y'all will check in with me every month, until

21   we get this resolved.  And I'll want to know --

22          MR. GREENWALD:  Hopefully --

23          THE COURT:  And by then, I'm going to want to know,

24   hopefully -- if you need to go to depositions, you got them

25   between now and then.

1           MR. GREENWALD:  Oh, yeah, that's --

2           THE COURT:  Excuse me.  I take that back.  I know,

3    between now and then, are two major Jewish holidays, so ...

4           MR. GREENWALD:  Your Honor, the scheduling order

5    actually provides for the discovery complete to be around -- to

6    be completed around that time, so --

7           THE COURT:  Perfect.  Then you can tell me what's

8    going on then.

9           MR. GREENWALD:  Yes, we will do that.

10          THE COURT:  Good.  Thank you, Mr. Smith.  Thank you,

11   Mr. Greenwald.

12          MR. SMITH:  Thank you, Your Honor.

13          MR. GREENWALD:  Thank you.

14          THE COURT:  Thank you.  Now we have a contested

15   matter.  And Ms. Menkens [sic], you can move forward.  I hope I

16   said that right.

17          MS. MENKES:  Menkes.

18          THE COURT:  This is a -- your -- Ms. Schultz, this is

19   your motion to enforce a plan injunction, correct?

20          MS. SCHULTZ:  Thank you, Your Honor.

21          THE COURT:  State your name and affiliation.

22          MS. SCHULTZ:  Again for the record, Sarah Schultz,

23   Akin, Gump, Strauss, Hauer & Feld, on behalf of the liquidating

24   trustee.

25          THE COURT:  And you will now state your name for the

24

1    record.

2         MS. MENKES:  Sheryl Menkes.  I'm attorney for Elaine

3    Garvey, Administratrix of the Estate of Ronald Brophy.

4         THE COURT:  Very good.  You may be seated.  Thank you.

5         MS. SCHULTZ:  Thank you, Your Honor.

6         We're here today on the liquidating trustee's motion

7    to enforce the injunction that was set forth in Section 11.3 of

8    the plan, and approved by Your Honor's June 29th, 2012

9    confirmation order.  As always, I know Your Honor has read our

10   papers.

11        In addition, I'm sure you've seen the three

12   declarations that we filed in support of our motion, which

13   include my declaration for the purpose of authenticating

14   various documents and communications located at Docket No.

15   3646.

16        THE COURT:  Right.

17        MS. SCHULTZ:  The Lenane declaration for purpose of

18   establishing that no claim was reported to the debtors'

19   insurance carrier regarding Mr. Brophy, and that no insurance

20   is available to cover Ms. Garvey's claim, which is located at

21   Docket No. 3626, Exhibit B.

22        And the Korf declaration for the purpose of

23   establishing Saint Vincents' and Holy Family's policy with

24   respect to mail for deceased residents, which is located at

25   Docket No. 3645.

1    With the Court's permission, I think the most

2    efficient way to proceed is for me to provide our argument;

3    and, at the conclusion, I'll move to admit the declarations

4    that I just referenced.  Each of the declarants is here in the

5    courtroom today and would be available at that time for cross-

6    examination --

7              THE COURT:  Okay.  We --

8              MS. SCHULTZ:  -- questions.

9              THE COURT:  Okay.  I will say that -- but under local

10   rules, you don't have an evidentiary hearing on the first -- on

11   the first time out, 1014.  You can put in the declarations, you

12   can put in any of your written, but no cross-examination.

13   That's not what we're -- we have Local Rule 9014-2:

14              "The first scheduled hearing in a contested matter

15              will not be an evidentiary hearing at which witnesses

16              may testify."

17              Unless there was an exception, and we don't have an

18   exception here.

19              MS. SCHULTZ:  I think that our standing scheduling

20   hearing provides that all we need to do for an evidentiary

21   hearing is to designate it on the agenda.  But we're --

22              THE COURT:  Okay.  I'm not prepared --

23              MS. SCHULTZ:  Okay.

24              THE COURT:  -- to have an evidentiary hearing.  I am

25   prepared to hear you.  I have seen your declarations,

 1  obviously.  I'm a lot -- I'm really interested in the noticing,

 2  which is I take judicial notice of the noticing.

 3          MS. SCHULTZ:  Yep.  I understand, Your Honor.

 4          THE COURT:  And there is a lot of notice that is

 5  simply judicial notice.

 6          MS. SCHULTZ:  Yes.

 7          THE COURT:  And that I want -- is what I want to hear.

 8          MS. SCHULTZ:  I understand, Your Honor.

 9          THE COURT:  Because I honestly don't see where we need

10  an evidentiary hearing when what you're laying out is on the

11  docket.

12          MS. SCHULTZ:  I understand, Your Honor.

13          THE COURT:  Thank you.  It may be, but not right this

14  moment.

15          MS. SCHULTZ:  Okay.  I think in this case, probably

16  the -- it would be helpful for the Court if I gave a brief

17  narrative; not a step-by-step walk-through --

18          THE COURT:  Okay.

19          MS. SCHULTZ:  -- but a brief narrative of the events

20  that brought us here today, just to sort of set the stage.

21          THE COURT:  Thank you.

22          MS. SCHULTZ:  Ms. Menkes represents Ms. Elaine Garvey

23  in her capacity as administrator to the estate of her father

24  Mr. Ronald Brophy.

25          Mr. Brophy was a resident of Holy Family Homes.  He

1    passed away on June 13th of 2010, so shortly after these cases

2    were initiated.  Within thirty days of Mr. Brophy's passing,

3    Ms. Garvey retained Ms. Menkes.

4         In connection with her retention, Ms. Menkes states

5    that, in 2010, she sought copies of Mr. Brophy's medical

6    records to investigate claims of nursing home abuse and

7    neglect.  More than two years after requesting copies of the

8    records, in January of 2013, Ms. Garvey initiated an action

9    against numerous entities, including debtor Holy Family Homes

10   and Debtor Saint Vincents.

11        In April, that summons was served on Saint Vincents,

12   and the liquidating trustee responded with a letter advising of

13   the Chapter 11 proceedings, and requesting that the actions be

14   dismissed.  We received no response.

15        In June, I received a call, along with several others

16   in my office, from Ms. Menkes, in which she requested that the

17   liquidating trustee agree to lift the stay to allow her to

18   proceed against insurance.  During the three days immediately

19   following that initial call, I advised Ms. Menkes, both orally,

20   by email, and by delivering a declaration, that no insurance

21   coverage was available for her client's claim.

22        I also sent a second written request, requesting that

23   she dismiss the -- the state court action.  Attached to that

24   request was a copy -- was a draft of the motion that's before

25   Your Honor today.  And importantly, attached to that motion was

1   the Lenane declaration evidencing that there was no insurance

2   and the certificates of service evidencing that Mr. Brophy was

3   provided with notice of the applicable bar dates.

4        Thereafter, from June 7th until late July, I had

5   numerous conversations with Ms. Menkes, during which she

6   represented -- and we have no reason to dispute -- that her

7   client was out of town on summer vacation; and that, while she

8   didn't believe there would be a problem with dismissing the

9   action, she wanted to have a face-to-face conversation with her

10  client, in which she said she intended to recommend the

11  dismissal of the state court action.  Based on that

12  representation, we delayed filing the motion to enforce the

13  injunction, to give her time to speak to her client.

14       While these discussions were occurring, in mid-June,

15  Ms. Menkes requested and obtained a show-cause order from the

16  state court, requiring the liquidating trustee to appear in

17  state court and explain why he should not be compelled to lift

18  the stay to allow Ms. Garvey to proceed against the debtors'

19  insurance.

20       THE COURT:  Okay.  And that was clear, that it was a

21  request for a state court to lift a federal injunction?

22       MS. SCHULTZ:  Ms. Garvey's position is that -- as we

23  understand it, is that proceeding against the insurance alone

24  is an "exception" -- and that's her word -- to the automatic

25  stay; and therefore, she can go to the state court and compel

29

1    us to lift the stay.

2            THE COURT:  Okay.

3            MS. SCHULTZ:  Curiously, in the affidavit that was

4    submitted by Ms. Menkes in support of this request, she didn't

5    advise the state court that she had been advised by us that

6    there was no insurance available.  And while her affidavit

7    attached my June letter, which, as I just said, included

8    evidence of the notice -- that the notice had been served on

9    Mr. Brophy, the copy of the June letter and the motion that she

10   provided to the state court didn't include these exhibits.  To

11   the contrary, the affidavit submitted to the state court

12   specifically states that no actual notice of the bar date

13   occurred.

14           Not once during the various communications that Ms.

15   Menkes and I had, beginning June 19th through July, did she

16   ever tell me that she had been before the state court and

17   sought and received a show-cause order against my client.

18   Instead, she continued to ask for additional time to speak to

19   her client, representing as late as early July that she

20   intended to advise her client to withdraw the state court

21   litigation.  Nearly a month after obtaining this order, she had

22   the show-cause order served on my client through my New York

23   office.

24           In response to the show-cause order on July 31st, the

25   liquidating trustee was required to appear in New York State

1  Court.   After a lengthy discussion at the state court hearing,

2  the parties agreed to continue the hearing on the show-cause

3  order until October, to allow Your Honor to hear the instant

4  motion.

5         To the extent that today's hearing does not resolve

6  the question of whether the Court's confirmation order

7  precludes Ms. Garvey from moving forward with the underlying

8  state court action, the liquidating trustee is going to be

9  required to go back to state court in October.

10        THE COURT:   Okay.

11        MS. MENKES:   May I speak, Your Honor?

12        THE COURT:   Not yet.

13        MS. MENKES:   Okay.  I thought she was done.

14        MS. SCHULTZ:   Your Honor, with that as a backdrop,

15  late Tuesday evening, Ms. Menkes filed a response to the

16  liquidating trustee's motion.  Ms. Menkes claims that the

17  response was late because she didn't receive a copy of the

18  Court's order denying our motion to continue the hearing until

19  Tuesday.

20        Without going into the details, I do want to note for

21  the Court that I personally provided Ms. Menkes with an email

22  copy of each of our motion, the supporting affidavits, and this

23  Court's order denying the request to adjourn within sixty

24  minutes of each document hitting the docket.  We did that as a

25  professional courtesy, because we didn't believe that she had

1    access to the Court's ECF system at the time.

2         Based on the papers that were filed on Tuesday and

3    those filed in the state court, the position advanced by Ms.

4    Menkes as to why Ms. Garvey is not prohibited from proceeding

5    can be summed up as follows:

6         First, she appears to assert that, neither the plan

7    injunction, nor the automatic stay prohibit her client from

8    proceeding against the debtors to pursue insurance proceeds.

9         Second, she asserts the debtors failed to provide

10   Brophy with notice of the applicable bar dates; and therefore,

11   that the bar dates do not apply to Brophy.  I'd like to address

12   each of these points in order.

13        THE COURT:  Thank you.

14        MS. SCHULTZ:  In support of her assertion that she's

15   entitled to proceed against Holy Family Home's insurance

16   policy, Ms. Menkes cites to case law that provides, where

17   insurance is available, a third party may proceed against such

18   insurance.  Those cases are simply not applicable to the

19   instant case, where there is no insurance available.

20        The liquidating trustee has advised Ms. Menkes in

21   writing on not less than three occasions that there is no

22   insurance available for her client to proceed against.

23   Specifically, following the court-approved sale of the Holy

24   Family Home to KFG, the debtors terminated the Holy Family

25   claims-made insurance policy.

Case 1:13-cv-06902-PKC   Document 16-17   Filed 05/16/14   Page 33 of 35
10-11963-cgm   Doc 3663   Filed 08/20/13   Entered 08/20/13 15:56:28   Main Document
Pg 32 of 65

32

1    Although no tail was purchased, the policy did provide

2  for a sixty-day post-termination period to report claims.  This

3  period expired March 20th of 2012, a full 616 days after the

4  date upon which Ms. Menkes was retained to represent Ms.

5  Garvey.

6    Despite being provided with the sworn declaration to

7  this effect, on July 4th -- I'm sorry -- on June 5th, fourteen

8  days later, on June 19th, Ms. Menkes provided the state court

9  with a sworn declaration that her client was seeking to proceed

10  against the debtors' insurance.

11    Ms. Menkes attached again, as I said, a copy of the

12  liquidating trustee's June 7th letter, which included the draft

13  motion to enforce the plan injunction in her declaration.  As I

14  stated earlier, she failed to attach the exhibits to the

15  motion, which included both the Lenane declaration at Exhibit A

16  to the draft, and the certificates of service indicating that

17  Mr. Brophy had been served with each of the applicable bar date

18  notices at Exhibit F.

19    At the state court hearing, Ms. Menkes alleged that

20  she never received the exhibits in question.  However, those

21  documents were clearly referenced in the text of the document.

22  If they were missing -- which, according to my review of Akin

23  Gump's electronic records, they were not -- we find it curious

24  at best that she did not reach out and ask for a copy of these

25  exhibits that were plainly described in the pleading that she

1   received.

2          In light of the fact that no insurance exists, the

3   liquidating trustee contends that Ms. Garvey's assertion that

4   she can proceed against the insurance is simply incorrect.  She

5   is not -- and that she is prohibited proceeding -- from

6   proceeding with the state court action against any debtor

7   entities.

8          Second, with respect to her allegation that the

9   debtors failed to provide notice, Ms. Menkes contends that Mr.

10  Brophy did not receive notice of the applicable bar date; and

11  therefore, Ms. Garvey is not proceeding -- is not barred from

12  proceeding with her state court action.  In support of her

13  argument, Ms. Menkes points the Court to Bankruptcy Code

14  Section 523, Bankruptcy Rule 407, and several bankruptcy cases.

15         As a preliminary matter, Your Honor, as set forth in

16  the opening lines of Section 523, and as affirmed by numerous

17  courts in this jurisdiction, Section 523 is only applicable to

18  individuals.  As the debtors are not individuals, Ms. Menkes

19  may not rely on 523 for relief.

20         Moving on to the larger notice issue.  The Supreme

21  Court has provided us with clear guidance on this issue.  In

22  Mullane v. Centennial Hanover Bank & Trust Company, which is

23  located at 339 U.S. 306 (1905), the Court held that:

24             "To satisfy due process requirements, notice must be

25             reasonably calculated under all circumstances to

1         apprise interested parties of the pendency of the

2         action and afford them an opportunity to present their

3         objections."

4     That's at Page 314.

5     In the context of a Chapter 11 case, courts in this

6  jurisdiction have held that this requires creditors to receive

7  reasonable notice of the initial filing and subsequent bar

8  dates.   To achieve this, courts generally find that a debtor

9  must send actual notice of a bar date to a known creditor,

10 while constructive notice is generally sufficient with respect

11 to an unknown creditor.

12     Whether a creditor is known or unknown is guided by

13 several principles.   Specifically, according to the Court in XO

14 Communications, which is located at 301 B.R. 793 (Bankr.

15 S.D.N.Y. 2003):

16         "A known creditor is one whose identity is actually

17         known by the debtor, and any claimant whose identify

18         is reasonably ascertainable.   In contrast, an unknown

19         creditor is one whose claim is merely conceivable,

20         conjecture, or speculative."

21     Applying this standard, the liquidating trustee does

22 not believe that Mr. Brophy was a known creditor of Holy Family

23 at the time the applicable notice was mailed.   Ms. Menkes

24 asserts that, because she issued requests for Mr. Brophy's

25 medical records, wherein she advised that she had been retained