EXHIBIT L

Court Transcript, September 19, 2013

1                  UNITED STATES BANKRUPTCY COURT
                  SOUTHERN DISTRICT OF NEW YORK

2

                        . Chapter 11

3  IN RE:                    .
                        . Case No. 10-11963 (CGM)

4  SAINT VINCENT'S CATHOLIC    .
  MEDICAL CENTERS OF NEW YORK,  . (Jointly Administered)

5  d/b/a SAINT VINCENT CATHOLIC  .
  MEDICAL CENTERS, et al,     . New York, New York

6                    . Thursday, September 19, 2013
                    . 11:11 a.m.

7              Debtors.     .

  . . . . . . . . . . . . . . . . .

8

   TRANSCRIPT OF AGREED SCHEDULING ORDER FOR DISCOVERY AND MOTION

9    PRACTICE REGARDING THE LIQUIDATING TRUSTEE'S OBJECTIONS TO
      PROOFS OF CLAIM NO. 4041 TO 4049 AND NO. 4780

10  FIFTY-FOURTH OMNIBUS OBJECTION OF THE LIQUIDATING TRUSTEE TO
  CERTAIN CLAIMS (TIER I - (A) IMPROPERLY CLASSIFIED CLAIMS; (B)

11  CLAIM AMOUNTS THAT ARE INCONSISTENT WITH THE DEBTORS' BOOKS AND
    RECORDS; (C) CLAIMS THAT LACK SUFFICIENT DOCUMENTATION)

12  HEARING TO CONSIDER THE ORDER ENFORCING THE PLAN INJUNCTION
              SIGNED ON 8/19/2013

13  MOTION FOR STAY PENDING APPEAL/MOTION FOR STAYED PROCEEDINGS
               PENDING APPEAL

14  REQUEST FOR RECONSIDERATION REGARDING THE ORDER ENFORCING THE
             PLAN INJUNCTION

15  OMNIBUS OPPOSITION REPLY TO SANCTIONS ASSESSED ON SHERYL R.
        MENKES AND STAY PENDING APPEAL

16      **BEFORE THE HONORABLE CECELIA G. MORRIS**
      **CHIEF UNITED STATES BANKRUPTCY JUDGE**

17

18

19

20  Audio Operator:            Electronically Recorded
                      By Matthew, ECRO

21

             AudioEdge Transcription, LLC

22         425 Eagle Rock Avenue - Suite 201
          Roseland, New Jersey 07068

23             (973) 618-2310
         www.audioedgetranscription.com

24

  Proceedings recorded by electronic sound recording, transcript
25  produced by certified transcription service.

```
 1   APPEARANCES:

 2   For the Liquidating
     Trustee:                     Sarah Link Schultz, Esq.
 3                                AKIN, GUMP, STRAUSS, HAUER
                                   & FELD, LLP
 4                                1700 Pacific Avenue, Suite 4109
                                 Dallas, Texas 75201
 5
                                 Frank A. Oswald, Esq.
 6                               David M. Smith, Esq.
                                 Lara R. Sheikh, Esq.
 7                               TOGUT, SEGAL & SEGAL, LLP
                                 One Penn Plaza
 8                               New York, New York 10110

 9   For Tact Medical Staffing:  Wayne M. Greenwald, Esq.
                                 WAYNE GREENWALD, PC
10                               476 Park Avenue South
                                 New York, New York 10016
11
     For Elaine Garvey:          Sheryl R. Menkes, Esq.
12                               MENKES LAW FIRM
                                 325 Broadway, Suite 504
13                               New York, New York 10007

14
     For the AIU/AIG Companies:  Michael S. Davis, Esq.
15                               ZEICHNER, ELLMAN & KRAUSE, LLP
                                 575 Lexington Avenue
16                               New York, New York 10022

17   For the Med-Mal Trust
     Administrator:              Alex R. Velinsky, Esq.
18                               COOLEY, LLP
                                 1114 Avenue of the Americas
19                               New York, New York 10036

20

21

22

23

24

25
```

INDEX

Page

THIRTY-FIRST OMNIBUS OBJECTION                               5

FIFTY-FOURTH OMNIBUS OBJECTION                              7

STATUS CONFERENCE:   PREFERENCE ACTIONS                    18

MOTION FOR RECONSIDERATION RE:   GARVEY MATTER             18
     Court Decision                                        32

MOTION FOR STAY PENDING APPEAL RE:   GARVEY MATTER         51
     Court Decision                                        61

STATUS CONFERENCE:   AIU/AIG COMPANIES                     68

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

4

1      (Proceedings commence at 11:11 a.m.)

2      (Call to order of the Court.)

3           THE COURT:  Good morning.

4           COUNSEL:  Good morning.  Good morning.

5           THE COURT:  You may be seated.

6           This is Case No. 10-11936 [sic], in the matter of

7    Saint Vincents Catholic Medical Centers of New York.

8           Your name and affiliation, please.

9           MS. SCHULTZ:  Good morning, Your Honor.  Sarah

10   Schultz, Akin, Gump, Strauss, Hauer & Feld, on behalf of the

11   liquidating trust.

12          THE COURT:  Very good.

13          MR. SMITH:  Good morning, Your Honor.  David Smith,

14   Togut, Segal & Segal, also counsel to the liquidating trust.

15          MR. OSWALD:  Good morning, Your Honor.  Frank Oswald,

16   also from Togut Segal, on the second matter regarding --

17          THE COURT:  Okay.  I'll let you address it when we get

18   to the second matter.

19          MR. OSWALD:  That's fine.

20          THE COURT:  We're going to stay on the first matter

21   right now and then you can --

22          MR. OSWALD:  Yep.

23          THE COURT:  -- give your name then.

24          Okay.  Very good.  I've got an agenda right here.  Can

25   you tell me what we've got going, Ms. Schultz?

5

1          MS. SCHULTZ:  Yes, Your Honor.  Good morning.  Again,

2    for the record, Sarah Schultz on behalf of the liquidating

3    trust.

4          Your Honor, the first item on the agenda is a resolved

5    matter.

6          THE COURT:  Okay.

7          MS. SCHULTZ:  At long last, I'm pleased to report that

8    we have resolved the final claim on the thirty-first omnibus

9    objection, which was Claim No. 4608, Julian Sosner.  That claim

10   has already been listed on a filed notice of resolvable claims.

11         THE COURT:  Okay.  Let me catch up with you.  Okay.

12   I'm looking at -- I have -- oh.  I'm sorry.  You did both

13   sides.  I'm -- okay.  I'm with you.

14         MS. SCHULTZ:  Sorry.

15         THE COURT:  Okay.  That's all right.  I was just --

16   okay.  Tell me again.  The thirty-first objection, omnibus

17   objection?

18         MS. SCHULTZ:  Yes, Your Honor.  I'm pleased to report

19   that Claim No. 4608 of claimant Julian Sosner has been

20   resolved.

21         THE COURT:  Okay.

22         MS. SCHULTZ:  We've included it on an already filed

23   notice of resolved claims.

24         THE COURT:  Okay.  So that one is -- does that mean

25   thirty-one -- the thirty-first omnibus objection is complete?

1        MS. SCHULTZ:  It does, Your Honor.

2        THE COURT:  Excellent.  Okay.  The fifty-fourth?

3        MS. SCHULTZ:  The next matter on the agenda, Your

4   Honor, is adjourned.  The fifty-fourth omnibus objection, we

5   have two exhibits to this notice of adjournment.  The first is

6   Exhibit A, and those are the fifty-two employee claims that

7   we've been talking about, that we're still in the process of

8   resolving.

9        THE COURT:  Okay.

10        MS. SCHULTZ:  Those are being adjourned to October

11   10th at 5 p.m. -- that's the objection deadline, I'm sorry.

12        THE COURT:  Yeah, that's --

13        MS. SCHULTZ:  That's being adjourned.

14        And then the second relates to sort of the other

15   general claims that are on that exhibit.  And I'm pleased to

16   report to Your Honor there are eighteen claims left.

17        THE COURT:  Okay.

18        MS. SCHULTZ:  These are the claims that were filed in

19   liquidated amounts that we're still working through.  And I

20   actually think yesterday we resolved another one of them.

21        THE COURT:  So we're possibly down to seventeen?

22        MS. SCHULTZ:  Potentially down to seventeen, Your

23   Honor, yes.

24        THE COURT:  And when is that adjourned to?

25        MS. SCHULTZ:  That is adjourned to November 14th.

1           THE COURT:  14th.  Okay.

2           MS. SCHULTZ:  Uh-huh.

3           THE COURT:  I've got that correct then.  I'm in the

4     same place you are.  Okay.

5           MS. SCHULTZ:  Okay.  Your Honor, the next matter on

6     the agenda is a status conference with respect to one of the

7     preference actions; and for that, I'll yield the podium to Mr.

8     Smith.

9           THE COURT:  Which is Adversary Proceeding No. 12-

10    01418, the Tact Medical Staffing?

11          MS. SCHULTZ:  Yes, Your Honor.

12          THE COURT:  Yes, Mr. Smith.  Yes, sir.  State your

13    name again for the record.  Mister --

14          MR. SMITH:  Oh, I'm sorry.  Yes, Your Honor.  David

15    Smith of Togut, Segal & Segal, counsel to the liquidating

16    trust.

17          MR. GREENWALD:  Good morning, Your Honor.  Wayne

18    Greenwald of Wayne Greenwald, PC, attorneys for Tact Medical.

19          THE COURT:  Okay.

20          MR. SMITH:  Your Honor, this is, for the record,

21    again, our last adversary proceeding that remains open, and it

22    has remained the only adversary proceeding that has not

23    settled, defaulted, or resolved -- or otherwise resolved, for

24    approximately seventy days now.

25          Your Honor, a brief history.  In April, we filed our

Case 1:13-cv-06902-PKC   Document 16-24   Filed 05/16/14   Page 9 of 32
10-11963-cgm   Doc 3720   Filed 09/23/13   Entered 09/23/13 15:38:09   Main Document
Pg 8 of 132

8

1  250 actions, and again, all of them are now resolved with the

2  exception of this one.

3        In January, on January 18th, we issued a series of

4  discovery demands to multiple defendants, including Tact, who,

5  for lack of a better explanation, just we couldn't quite get

6  very far with, and we wanted to get some traction.  So we

7  issued discovery demands, as well as notices of a deposition,

8  pursuant to Bankruptcy Rule 7030(b)(6).

9        THE COURT:  Okay.

10        MR. SMITH:  Your Honor, as of -- and I'll get this to

11  you in a second -- we still have not received responses to

12  these discovery demands.  As the --

13        THE COURT:  Do we have a scheduling order in this?

14        MR. SMITH:  We do, Your Honor.  And we had a

15  scheduling order for approximately five -- or for -- excuse me,

16  for four defendants, and all of the other three defendants

17  quickly resolved.  Yet, we have not resolved this one.

18        I will note for the record that, among other things,

19  the scheduling order held that, by August 30th, responses to

20  discovery demands were to be -- the responses, either in the

21  form of document requests or objections, were supposed to be

22  delivered to our offices.  As of this morning, we have not

23  received anything.  We also have not received a deponent for

24  our 30(b)(6) deposition.

25        At the status conference on July 18th, Mr. Greenwald

1  sat here and specifically noted to the Court that he would

2  comply with the scheduling order.  Again, on August 15th, Mr.

3  Greenwald again informed the Court that he would designate a

4  deponent and would comply.  Needless to say, I don't want to

5  sound too repetitive, but we have nothing.

6  THE COURT:  Mr. Greenwald?

7  MR. GREENWALD:  Yes, Your Honor.  Number one, there

8  has been some compliance with the scheduling order.  I have

9  provided some documents to the plaintiff.

10  THE COURT:  What have you -- how many, and what are

11  they?

12  MR. GREENWALD:  Have -- was only able to provide one

13  document, which is a billing and payment --

14  THE COURT:  So "some" is one.

15  MR. GREENWALD:  Yes.

16  (Laughter via telephone.)

17  MR. GREENWALD:  Thank you.

18  It was a billing and payment history between the

19  debtor and the defendant.

20  I had been asking for documents, and I was told that,

21  as a result of Sandy, most -- a lot of documents have been

22  destroyed, but I've still been pressing for the documents.

23  THE COURT:  Motion to compel, Mr. Smith.

24  MR. SMITH:  Yeah, I --

25  THE COURT:  Let's get them in here.

Case 1:13-cv-06902-PKC  Document 16-24  Filed 05/16/14  Page 11 of 32
10-11963-cgm  Doc 3720  Filed 09/23/13  Entered 09/23/13 15:38:09  Main Document
Pg 10 of 132

10

1    MR. SMITH:  We will file a motion to compel shortly.

2    MR. GREENWALD:  Actually, Your Honor, if I can save

3  time?

4    THE COURT:  Sure.

5    MR. GREENWALD:  Regardless, I will have a -- today is

6  Thursday.  I'll have a response in by Monday, regardless --

7    THE COURT:  We've heard.

8    MR. GREENWALD:  No, I'm -- if it's not in by Monday,

9  fine.  I was just -- I'm looking to --

10    THE COURT:  If it's not in by Monday, noon.  I will

11  give you a break on not working on this until Monday, noon.

12    MR. GREENWALD:  Fine.  Thank you, Your Honor.

13    THE COURT:  If it's not in by Monday, noon, file your

14  motion to compel.

15    MR. SMITH:  Thank you.

16    THE COURT:  We're here, back here again, on October

17  14th?

18    MR. SMITH:  Yes, Your Honor.

19    THE COURT:  All right.

20    MR. GREENWALD:  Thank you.  Your Honor, as I said --

21    THE COURT:  Mr. Greenwald, you need to alert your

22  clients, if I have to rule on a motion to compel, they will

23  start paying for it.

24    MR. GREENWALD:  I understand that, Your Honor.  And I

25  will go as far as saying I had a very useful conversation with

1   Mr. Oswald this morning, who had suggested maybe even having

2   the client -- if we're not able to settle it, to have the

3   client in court.

4           THE COURT:  Good idea.  I will order the client in

5   court.  The person that you're going to designate as the

6   7030(b)(6).

7           MR. GREENWALD:  Right.  And I have already designated

8   him.  We're -- at this point, we were discussing a deposition

9   date.  My client would be available whatever date the trustee -

10  -

11          THE COURT:  Before October 14th, because I want --

12          MR. GREENWALD:  Fine.

13          THE COURT:  When I appear on October the 14th in this

14  courtroom, I want to know that all of the documents have been

15  turned over and that deposition has been held.

16          MR. GREENWALD:  Fine.  Your Honor, two other points,

17  just so --

18          THE COURT:  Okay.

19          MR. GREENWALD:  I had been also focusing on trying to

20  get this thing settled.

21          THE COURT:  Okay.

22          MR. GREENWALD:  And I should be had -- and I've been

23  promised a settlement offer by tomorrow.

24          THE COURT:  By the -- your clients?

25          MR. GREENWALD:  By my client, yes, by tomorrow.

Case 1:13-cv-06902-PKC   Document 16-24   Filed 05/16/14   Page 13 of 32
10-11963-cgm   Doc 3720   Filed 09/23/13   Entered 09/23/13 15:38:09   Main Document
Pg 12 of 132

12

1        THE COURT:  Tell them they're going to start paying

2   anyway --

3        MR. GREENWALD:  Understood.

4        THE COURT:  -- if they're not careful.

5        MR. GREENWALD:  Understood.

6        Also, I had received objections to our document

7   request, and there was not a single document provided, even --

8   what I'm told, the documents are supposedly available.  I will

9   continue to try and resolve this one --

10        THE COURT:  Mr. Smith?

11        MR. SMITH:  Your Honor, yes.  There were four document

12   requests we received.  We submitted our objections because we

13   viewed them as overly broad.  There was no specific time frame

14   set forth.  And we specific -- I specifically informed Mr.

15   Greenwald that, if he explains to me a reasonable time frame

16   and a reasonable explanation of the documents, to the extent

17   that they are in our immediate possession, we will produce

18   them.  And that's --

19        THE COURT:  What kind of time frame do you want?

20        MR. GREENWALD:  I had originally suggested, during the

21   relations -- the relationship between the debtor and the

22   defendant, because we're looking to establish what was the

23   ordinary course of business, if we would agree to the ordinary

24   course of business as three years, or the means of determining

25   what the ordinary course of business is, is three years, I'm

1    fine with three years.

2              THE COURT:  Mr. Smith, any --

3              MR. SMITH:  No, that's acceptable.

4              THE COURT:  Do it.  Three years.

5              MR. GREENWALD:  Thank you.

6              THE COURT:  Get it to them -- get it to them --

7              MR. GREENWALD:  Actually -- uh-huh.

8              MR. SMITH:  What we will produce is anything we have

9    in that time frame.

10              THE COURT:  Okay.

11              MR. SMITH:  Obviously, to the extent that the

12   documents should be in the defendant's control, that would be

13   our response.  If they're simply unavailable, we would need to

14   know why, and we'd need to -- we need to actually know what it

15   is specifically --

16              THE COURT:  With good heads.  If you got them, give

17   them to him --

18              MR. GREENWALD:  Right.

19              THE COURT:  -- if you don't --

20              MR. SMITH:  Exactly, Your Honor.

21              THE COURT:  -- put an affidavit in that you don't have

22   them.

23              MR. GREENWALD:  Thank you.  And if they're in --

24              MR. SMITH:  Thank you, Your Honor.

25              THE COURT:  That's what I want.

1            MR. GREENWALD:  If they're in our control, we're still

2    entitled to know what you have.

3            THE COURT:  Exactly.  They're still entitled to know.

4            MR. SMITH:  Absolutely.

5            THE COURT:  You find them, you give them.

6            MR. SMITH:  Absolutely, Your Honor.

7            THE COURT:  Okay.

8            MR. GREENWALD:  Thank you very much, Your Honor.

9            THE COURT:  And I'd like you to do that by next

10   Wednesday.

11           MR. SMITH:  Yes, Your Honor.

12           THE COURT:  And --

13           MR. GREENWALD:  Your Honor, as far as I'm concerned,

14   he can do it by Friday.  But I would -- I would not be making a

15   motion to compel.

16           THE COURT:  Get it done.

17           MR. GREENWALD:  Absolutely.

18           MR. SMITH:  Thank you, Your Honor.

19           MR. GREENWALD:  That's the goal.

20           THE COURT:  All right.  Thank you.  And check with --

21           MR. GREENWALD:  And if -- and if we're not settled on

22   the 14th, my client will be here.

23           THE COURT:  Absolutely.

24           MR. GREENWALD:  Thank you.

25           THE COURT:  By order of this Court.

15

1          MR. GREENWALD:  Yep.

2          THE COURT:  Thank you.

3          MR. GREENWALD:  Thank you again.

4          THE COURT:  Ms. Schultz, on the contested matters.

5          MS. SCHULTZ:  Yes, Your Honor.  The next matter on the

6  agenda is for three contested matters that I think would group

7  together.  They include Ms. Menkes' motion for reconsideration

8  of Your Honor's order from our last hearing, her request for an

9  order to stay the order that you issued, and there's also --

10         THE COURT:  Okay.  These are all on Ms. Menkes.

11         MS. SCHULTZ:  Yes.

12         THE COURT:  Ms. Menkes, come forward.

13         MS. MENKES:  Yes, Your Honor.

14         THE COURT:  State your name and affiliation.

15         MS. MENKES:  Yes, Your Honor.  Sheryl R. Menkes, M-e-

16  n-k-e-s.

17         THE COURT:  Menkes.  I'm sorry.  I'm mispronouncing.

18         MS. MENKES:  That's all right.  Attorney for --

19  everyone does.  Attorney for creditor Elaine Garvey, as

20  Administratrix of the Estate of Ronald Brophy, Deceased.

21         THE COURT:  Okay.

22         MS. MENKES:  And do you have a preference of which

23  motion I start with?

24         THE COURT:  Let me -- I'll tell you what preference --

25  the way I have them.  I have a reconsideration letter, I have

Case 1:13-cv-06902-PKC   Document 16-24   Filed 05/16/14   Page 17 of 32
10-11963-cgm   Doc 3720   Filed 09/23/13   Entered 09/23/13 15:38:09   Main Document
Pg 16 of 132

16

1    the billing statement, and then I have a stay.  That's the

2    order I have them in.

3              MS. MENKES:  I have submitted --

4              THE COURT:  It's called -- I think you did a letter.

5              MS. MENKES:  I also submitted formal papers, which the

6    trustee responded to.

7              THE COURT:  Okay.

8              MS. MENKES:  At any rate, the point of my --

9              THE COURT:  Do we have them?

10             MS. MENKES:  They were downloaded -- uploaded.

11   Whichever.

12             MS. SCHULTZ:  Your Honor, I think the papers that

13   she's referring to are here on the agenda as her reply.

14             THE COURT:  Well, tell me what tab I'm in.

15             MS. SCHULTZ:  Yeah.  It should --

16             MS. MENKES:  Document 3685, I have as --

17             THE COURT:  On the docket?

18             MS. SCHULTZ:  Uh-huh.

19             THE COURT:  3685?

20             MS. MENKES:  I believe so.

21             THE COURT:  What tab is it?

22             MS. SCHULTZ:  I believe it's Tab 12 in your binder,

23   Your Honor.

24             THE COURT:  Thank you.  Let me get there.

25             MS. SCHULTZ:  I know.  It's a big binder, that's why

1   we double-sided it.

2          THE COURT:  That's fine.  Okay.  That's the -- that's

3   your affidavit, Ms. Menkes.

4          MS. MENKES:  Yes, and that was the motion that the

5   trustee opposed my reply to, so -- and then I --

6          THE COURT:  Okay.  Let me just be clear.  Let me find

7   out where I am --

8          MS. MENKES:  Sure.

9          THE COURT:  -- so I know.  What I have -- would you

10  put it over there on that ELMO, so I -- Ms. Menkes?  Ms.

11  Menkes, what you have, put it on the ELMO, so I know we're

12  looking at the same thing.

13         MS. MENKES:  Okay.  I have that motion --

14         THE COURT:  What I have is an affidavit from you.

15         MS. MENKES:  Yeah, I -- I labeled it affidavit and --

16         THE COURT:  Okay.  So that's not a motion; that's an

17  affidavit.

18         MS. MENKES:  Okay.  Well, the trustee responded,

19  really, opposing --

20         THE COURT:  I understand the trustee responded to you.

21  But you filed a letter and then an affidavit.

22         MS. MENKES:  Okay.

23         THE COURT:  You did not file a motion.  Am I correct?

24         MS. MENKES:  It wasn't labeled as a motion, Your

25  Honor, that's correct.

18

```
 1            THE COURT:  Okay.  All right.

 2            MS. MENKES:  So the point of the affidavit -- and then

 3    I did an addendum to that, as well.

 4            THE COURT:  Is that Number C, Ms. Schultz?  What do we

 5    have?

 6            MS. MENKES:  That's Docket 3688, Document -- that's

 7    the addendum, 3688.

 8            THE COURT:  3688 came before 3707?

 9            MS. MENKES:  No.  The first one is 3685, and then

10    3688, which is the, quote/unquote, "reconsideration."

11            THE COURT:  Okay.  I'm trying hard, but I have your

12    affidavit as Document No. 3707.

13            MS. SCHULTZ:  Yes, that's -- that is correct.

14            THE COURT:  That's exactly what it says on it.

15            MS. MENKES:  I have the number wrong?

16        (Participants confer.)

17            MS. MENKES:  Then I'm sorry.  Then I was given a wrong

18    number.

19            THE COURT:  This is what came back to you.  Okay.

20            MS. MENKES:  Yeah, my assistant --

21            THE COURT:  All right.

22            MS. MENKES:  -- labeled it incorrectly.

23            THE COURT:  Okay.

24            MS. MENKES:  The point of the affidavit is that, when

25    we were here last time, as you know, the trustee was awarded
```

1    motion costs as sanctions for me filing in state court.

2             THE COURT:  Right.

3             MS. MENKES:  And I did want to bring to the Court's

4    attention that, when I filed this action in state court, it was

5    in no way to disrespect this court or the bankruptcy

6    proceedings.  I had researched before I filed in state court,

7    and I have the cases that I researched laid out in my papers.

8             And Chevron Oil Company v. Dobie, it's a New York

9    Court of Appeals Case, 1976.  And it says that the state court

10   has concurrent jurisdiction with the Bankruptcy Court in

11   determining the effect of a bankruptcy discharge, with the

12   exception of fraud.

13            Another case I had researched is Minafri v. United

14   Artists Theaters, Inc.  The citations are in the paper.

15            THE COURT:  Yes, I have those, right.

16            MS. MENKES:  Okay.  The plaintiff's tort claim against

17   the corporate defendant was not precluded by plaintiff's

18   failure to file the notice of claim in defendant's bankruptcy

19   proceedings.

20            Adriani v. Seamus (phonetic).  Plaintiff may continue

21   med-mal against defendant after defendant's discharge in

22   bankruptcy, as long is recovery is limited to insurance.

23            1440 Richmond Realty Corp. v. Four Bridges --

24            THE COURT:  Okay.  Let's stop there for just a second.

25            MS. MENKES:  Okay.  I -- yes.

20

1        THE COURT:  I want to ask you some questions.

2        MS. MENKES:  Okay, Your Honor.

3        THE COURT:  You -- it seems to me you're trying to

4   reargue this motion --

5        MS. MENKES:  Well, I didn't --

6        THE COURT:  -- in a way that you haven't met the

7   standards under, I guess basically -- are we looking at a 60(b)

8   to reargue the motion?  And that standard is not what you're

9   doing.

10       MS. MENKES:  Well, I wasn't given the opportunity to

11  argue jurisdiction last time.  But I did want to explain why I

12  filed in state court; that it was not a wilful disregard of

13  this Court.

14       THE COURT:  You said that last time.  You said that

15  last time.  I heard you, and I heard you clearly.

16       MS. MENKES:  I also wanted to state that, in the

17  trustee's opposition to this, that they said that -- I mean, I

18  -- first of all, I misapprehended that there was no insurance.

19  But that's not the real issue here.  I mean, if I had not

20  apprehended that there was no insurance, I would not have made

21  this order to show cause, the crux of which was to go after the

22  insurance.  And as a solo practitioner, I have to be very

23  careful of how I spend my time.  So, apparently, I

24  misapprehended that.  That was a mistake on my part, but it was

25  not a wilful disregard.

Case 1:13-cv-06902-PKC   Document 16-24   Filed 05/16/14   Page 22 of 32
10-11963-cgm   Doc 3720   Filed 09/23/13   Entered 09/23/13 15:38:09   Main Document
Pg 21 of 132

21

1           THE COURT:  Okay.  Again, I'm listening to you.

2           MS. MENKES:  And then I also want to go on to add that

3   I was in a position, where I had to maintain my client's

4   statute of limitations, which brings up an ethical obligation I

5   have to my client.  If -- I did have discussions with her about

6   discontinuing her case, they went back and forth, back and

7   forth.  But I have an ethical obligation to represent her, and

8   it would be malpractice for me to withdraw her state court

9   action unless -- well, that goes on to my motion for a stay

10  pending the appeal.

11          I also want to add, in terms of this motion, that the

12  costs that -- if we get down to that, that the trustee is

13  looking for, for the motion -- for one motion in state court

14  and one appearance, $83,000, in my opinion, is vastly

15  excessive, and it's an amount that neither my client, nor I are

16  able to pay.  And I did put in my papers, if you'd like to

17  review my tax returns in camera, I'll be very happy to provide

18  that to you.

19          But I really believe that, since I did not go into

20  state court in defiance, that I had a good-faith basis to do

21  that, and the case law I researched indicated that that was an

22  appropriate forum; that I really shouldn't be sanctioned for

23  adhering to case law that I had researched prior to initiating

24  the action.

25          THE COURT:  Okay.  I have heard you.

Case 1:13-cv-06902-PKC   Document 16-24   Filed 05/16/14   Page 23 of 32
10-11963-cgm   Doc 3720   Filed 09/23/13   Entered 09/23/13 15:38:09   Main Document
Pg 22 of 132

22

1        MS. MENKES:  Okay, Your Honor.

2        MS. SCHULTZ:  Thank you, Your Honor.  For the record,

3   Sarah Schultz, Akin, Gump, Strauss, Hauer & Feld, on behalf of

4   the liquidating trustee.  Your Honor, I'll be brief.

5        THE COURT:  Okay.

6        MS. SCHULTZ:  I know you've read the various pleadings

7   that are before you, you've heard everything that was said last

8   month, and I know you've reflected on the facts, so I'm not

9   going to go into any detail there.  But there are a few points

10  with respect to the motion for reconsideration, my affidavit

11  that was submitted in connection with the fees, as well as the

12  request for the stay pending appeal, pending the resolution of

13  the applicable appeal, that I think need to be addressed.

14       First, although we're not really sure from the papers

15  if she's moving under 59(e) or 60(b) --

16       THE COURT:  Right.

17       MS. SCHULTZ:  -- I don't think she's met her burden.

18  We haven't heard anything today that would establish that the

19  movant has met this heavy burden.

20       Courts in this jurisdiction and others have made clear

21  that the standard for reconsideration is narrowly construed,

22  strictly applied to discourage litigants from making repetitive

23  arguments on issues that have been thoroughly considered by the

24  Court.

25       It's also difficult for us to discern exactly what the

Case 1:13-cv-06902-PKC   Document 16-24   Filed 05/16/14   Page 24 of 32
10-11963-cgm   Doc 3720   Filed 09/23/13   Entered 09/23/13 15:38:09   Main Document
Pg 23 of 132

23

1  movant is seeking reconsideration of.  But we think, based on

2  her papers, that it's the award of sanctions, not Your Honor's

3  actual order.  To the extent --

4          THE COURT:  Right.

5          MS. SCHULTZ:  -- that it's the actual order with

6  respect to notice, we would note that that issue is already on

7  appeal.

8          THE COURT:  Right.

9          MS. SCHULTZ:  And therefore, I'm not going to reargue

10  that.  I would just state that we stand on the oral arguments

11  that we presented last month, as well as our papers presented

12  last month.  With --

13          THE COURT:  I can tell you that what I see, it seems

14  to be the reconsideration is solely with the issue of fees.

15          MS. SCHULTZ:  I think so, and I'd like to address

16  that.

17          THE COURT:  Okay.

18          MS. SCHULTZ:  With respect to sanctions, in support of

19  a reconsideration motion, she seems to rely on two points:

20          One, she says that she doesn't know -- did not know at

21  the time she filed the show cause order that there was no

22  insurance available; and therefore, her pursuit of the show

23  cause order in state court was not -- was appropriate.

24          And two, she seems to say that the Court failed to

25  consider the question of concurrent jurisdiction between the

Case 1:13-cv-06902-PKC   Document 16-24   Filed 05/16/14   Page 25 of 32
10-11963-cgm   Doc 3720   Filed 09/23/13   Entered 09/23/13 15:38:09   Main Document
Pg 24 of 132

24

1   Bankruptcy Court and the state court.  And this is found in

2   Paragraph 4 of her reply affidavit at Docket 3707.

3           First, with her respect -- with respect to her

4   assertion that she didn't know there wasn't any insurance

5   available, Your Honor, the record before the Court just doesn't

6   support that.  To the contrary, the evidence that we submitted

7   at the original hearing establishes that we went to great

8   lengths to ensure that she knew and was aware that there was no

9   insurance available.

10          In informed her personally on the phone, in a

11  conversation that, frankly, as I reread the transcript last

12  night, she admitted that she received that information via

13  phone.  She said, I was given no supporting document, I was

14  just given a -- somebody told me something on the phone.  This

15  is as you're questioning her as to why she proceeded when she

16  knew there was no insurance.  That's the transcript at Page 46,

17  Line 18.

18          But we also informed her via email on no less than

19  three occasions.  These are emails that she replied to.  So

20  Your Honor, we're hard-pressed to believe that she didn't read

21  them.  I assume that she read them, and she responded to them.

22  In each of these emails, we told her there's no insurance

23  available.

24          If she or her client, as Ms. Menkes seemed to assert

25  at the last hearing, required additional information from the

1    trustee, or documents to confirm that there was, indeed, no

2    insurance, she needed only ask.  We were working with her in

3    cooperation to provide her all the information that we had.

4    She didn't ask.  Instead, she went to state court and sought a

5    show cause order as to why we -- the liquidating trustee should

6    be compelled to lift the stay.

7          She seems to admit in her reply that she actually

8    failed to read the advance courtesy copy of the motion that was

9    before Your Honor last week, to enforce -- or last month, to

10   enforce the plan injunction, alleging that:

11          "The liquidating trustee flooded creditor's attorney

12          with paperwork, and attorney" -- "and creditor's

13          attorney failed to comprehend that there was

14          documentary evidence to support the liquidating

15          trustee's allegations that there was no insurance

16          available."

17          Your Honor, assuming it's correct and she failed to

18   either read the motion or the exhibits or both, frankly, I

19   can't do anything about that.  There's nothing I can do,

20   there's nothing the liquidating trustee can do, other than

21   provide her the information to try to prevent her from doing

22   something that we know is incorrect.

23          The party that should -- the parties that should not

24   be damaged by this, however, are the creditors of this estate.

25   They shouldn't be forced to bear the financial burden of

Case 1:13-cv-06902-PKC   Document 16-24   Filed 05/16/14   Page 27 of 32
10-11963-cgm   Doc 3720   Filed 09/23/13   Entered 09/23/13 15:38:09   Main Document
Pg 26 of 132

26

1   defending a show cause order in state court, and what we

2   believe, frankly, was an unnecessary motion to enforce the stay

3   before Your Honor because Ms. Menkes failed to read the

4   documents provided to her via email and via mail.

5        Second, with respect to the movant's assertion that

6   she was not given an opportunity to raise her argument

7   regarding concurrent jurisdiction, again, we don't believe the

8   record supports this.  She clearly had the opportunity to raise

9   this issue in her response to the liquidating trustee's motion.

10  She's asserted to us at various times that she thoroughly

11  researched this issue before she went into state court.  So

12  even if she felt crunched for time in responding to our motion,

13  it seems like this is research that should have been readily

14  available, and she could have put in her written response.

15       Similarly, she clearly had the opportunity to raise

16  this at the hearing.  At what point Your Honor said to her:

17       "Why did you do a show cause order in state court

18  instead of coming to this Court?  What was your purpose in

19  doing this?"

20       That's the transcript at Page 46, Line 11.  She

21  clearly had the opportunity at that point to raise the issue

22  that she believed that concurrent jurisdiction existed.

23       Further, in Your Honor's ruling, you acknowledged that

24  there was the possibility of concurrent jurisdiction in certain

25  cases, but then you stated that such concurrent jurisdiction in

Case 1:13-cv-06902-PKC  Document 16-24  Filed 05/16/14  Page 28 of 32
10-11963-cgm  Doc 3720  Filed 09/23/13  Entered 09/23/13 15:38:09  Main Document
Pg 27 of 132

27

1   this case doesn't apply.  So it's clear that Your Honor did

2   consider that issue -- that question, and determined that it

3   didn't apply.

4          Finally, Ms. Menkes asserts in her reply that the

5   liquidating trustee erred by failing to address concurrent

6   jurisdiction, cases that she cited this Court to, and instead

7   focusing on her knowledge that there was no insurance

8   available.

9          First, we don't believe her cases are on point.  Each

10  of these cases refers to a situation where the state court was

11  asked to determine the impact or the applicability of a plan

12  injunction and/or a discharge, and did it apply.  That's not

13  our case.  In this case, Ms. Menkes sought and received a show

14  cause order from a state court as to why -- and I quote:

15          "-- an order should be entered compelling the

16              liquidating trustee to lift the stay on the

17              plaintiff's personal jurisdiction" -- "personal injury

18              claim on a state court action."

19          Your Honor, the only court I'm aware of who has the

20  power to lift a stay with respect to this debtor is you.

21          Second, the question as to whether insurance is

22  available to cover the alleged claim is clearly relevant, and

23  in fact, central to any analysis regarding concurrent

24  jurisdiction.  If there's no insurance, there are no non-estate

25  resources for Ms. Menkes claim to recover against; and

1    accordingly, no possibility of concurrent jurisdiction.  If

2    insurance had existed, I think we'd be having a different

3    discussion, but that's not our case, Your Honor.

4              Your Honor, unless you have any questions of the

5    liquidating trustee with respect the reconsideration motion --

6              THE COURT:  I don't --

7              MS. SCHULTZ:  -- I'll move on.

8              THE COURT:  I do not.

9              Ms. Menkes, do you want to rebut?

10             MS. MENKES:  Yes, I do, Your Honor.  If you read the

11   cases that I supplied, they clearly indicate that the state

12   court has the power to make a determination on the bankruptcy

13   stay, from the Court of Appeals on down.

14             THE COURT:  Miss -- you do not have to address that.

15             MS. MENKES:  Okay.  I do not -- I reread the

16   transcript myself.

17             THE COURT:  Had the stay been lifted in those cases?

18             MS. MENKES:  Yeah, in some of them.

19             THE COURT:  The stay had been lifted.

20             MS. MENKES:  In some of them, it was felt, even after

21   the confirmation plan, that -- that the creditor could proceed.

22   So that's essentially lifting the stay.  In terms of my

23   preparation --

24             THE COURT:  I'm not sure you understand my question.

25   Had the Bankruptcy Court lifted the stay for those cases to

Case 1:13-cv-06902-PKC   Document 16-24   Filed 05/16/14   Page 30 of 32
10-11963-cgm   Doc 3720   Filed 09/23/13   Entered 09/23/13 15:38:09   Main Document
Pg 29 of 132

29

1    proceed?

2            MS. MENKES:  No, I don't believe so.  In my reading of

3    the cases, that was not in any of the cases.  They were all

4    state court cases --

5            THE COURT:  I think you're --

6            MS. MENKES:  -- which is what --

7            THE COURT:  I think you may be wrong on your cases.

8            MS. MENKES:  I -- that's why I brought this in state

9    court.

10           THE COURT:  Okay.

11           MS. MENKES:  In terms of misapprehension of the

12   insurance, no insurance, I did not receive the declarations

13   until right before the prior motion was heard.  In terms of

14   being prepared for that motion, I had asked the trustee to give

15   me a brief adjournment.  It was a very fast return date;

16   thirteen days.  I had asked the Court for an adjournment, it

17   was all denied.  I did the best I could in the four days I had

18   to address the motion, not being a regular practitioner in

19   Bankruptcy Court.

20           In terms of not taking the trustee's word for the fact

21   that there was no insurance, it's adversarial -- it's

22   adversarial --

23           THE COURT:  You were served earlier than four days, I

24   believe.

25           MS. MENKES:  Not with the declarations.  I don't think

Case 1:13-cv-06902-PKC   Document 16-24   Filed 05/16/14   Page 31 of 32
10-11963-cgm   Doc 3720   Filed 09/23/13   Entered 09/23/13 15:38:09   Main Document
Pg 30 of 132

30

1    I was served with the declarations until right before I had to

2    come -- come in here.

3              THE COURT:  Okay.  One of the things you're not doing

4    -- I think we addressed most all of this before.  But one of

5    the things you're not doing is addressing the standard for

6    reconsideration.  And it is a very --

7              MS. MENKES:  Okay.

8              THE COURT:  -- heavy burden.

9              MS. MENKES:  Well --

10             THE COURT:  You already argued why you went to state

11   court in the prior hearing.  You already argued to me about

12   your time frame in the prior hearing.

13             MS. MENKES:  I think --

14             THE COURT:  There is a very heavy burden on

15   reconsideration, and I am not hearing that, and there is a

16   standard for that.

17             MS. MENKES:  Well, I did not argue concurrent

18   jurisdiction; and when I tried to, I was cut off.  So

19   concurrent -- I did not get -- even get to argue concurrent

20   jurisdiction last time.  I looked through the transcript, I

21   tried to bring it up, and I was told you -- I already had a

22   chance to argue.  So --

23             THE COURT:  Was it in your memo?

24             MS. MENKES:  I believe it was.  I don't recall --

25             THE COURT:  I believe --

1           MS. MENKES:  I don't recall it -- I don't recall it a

2    hundred percent.

3           THE COURT:  Okay.

4           MS. MENKES:  But I certainly believe --

5           THE COURT:  But you already argued why you went to

6    state court --

7           MS. MENKES:  Yeah, and it was --

8           THE COURT:  -- so I did hear that.

9           MS. MENKES:  -- not wilful disregard.  And the fact

10   that I -- that there was no insurance was a mistake on my part;

11   I admit that was a mistake, but that's not a wilful disregard.

12   And it's an unfortunate mistake, but if I had realized that

13   there was no insurance, I -- I certainly -- I may have gone to

14   state court, but I might have made a different motion.  It just

15   -- I wouldn't make a motion to let me proceed against the

16   insurance policy if there's no insurance policy to proceed

17   against.  That just is -- to knowingly do that is ludicrous and

18   a waste of time and resources that -- I don't have the luxury

19   of a lot of time and resources.  And that's -- that's basically

20   what I have to say.

21          The state court cases, many of them, I felt, were

22   analogous to this situation.  And if they weren't, I would not

23   have gone to state court.  I don't disrespect the Court.  I

24   don't willingly disobey the Court.  We're extremely

25   conscientious.