1           THE COURT:  Very good.  I'm ready to rule.

2           It's very sad for me, Ms. Menkes, because I don't

3   think you even understood after my last ruling, so I will try

4   to be very clear today.

5           At the hearing on August the 15th, 2013, this Court

6   heard arguments from both the liquidating trustee and Attorney

7   Sheryl Menkes.  Ms. Menkes was appearing on behalf of the

8   plaintiff Elaine Garvey, as Administratrix of the Estate of

9   Ronald Brophy -- that's the state court plaintiff -- with

10  respect to the liquidating trustee's motion to enforce the plan

11  injunction.

12          After hearing all of the arguments and considering all

13  relevant documents filed in conjunction with the hearing, the

14  Court granted the liquidating trustee's motion to enforce the

15  plan injunction.

16          On August the 19th, 2013, the Court entered an order

17  enjoining the state court plaintiff from prosecuting the state

18  court action against the debtor, declaring the state court

19  action void *ab initio*, and requiring that the state court

20  action be dismissed not later than September the 30th, with

21  evidence of such dismissal provided to the liquidating trustee.

22          The order also required that an affidavit of fees and

23  expenses incurred in connection with all matters related to the

24  plan injunction motion and the state court proceeding be filed

25  on the docket.  This affidavit was required, in order for the

Case 1:13-cv-06902-PKC   Document 16-25   Filed 05/16/14   Page 2 of 33
10-11963-cgm   Doc 3720   Filed 09/23/13   Entered 09/23/13 15:38:09   Main Document
Pg 33 of 132

33

1 │ Court to enter a further order awarding the liquidating trustee

2 │ certain fees and expenses in connection with the state court

3 │ action, while the order also noted that the Court reserves the

4 │ right to enter a further order awarding the liquidating trustee

5 │ certain fees and expenses in connection with the plan

6 │ injunction motion.

7 │         On August the 27th -- 22nd, 2013, a letter, as far as

8 │ I'm able to determine, not a motion, which was dated August the

9 │ 16th, 2013, was docketed in this case.  That letter, from

10 │ Attorney Sheryl Menkes, asked for a reconsideration of the

11 │ above-mentioned ruling.  The letter does not cite any section

12 │ of the Bankruptcy Code or bankruptcy rules to support the

13 │ request for reconsideration.  Instead, the letter from Attorney

14 │ Menkes states that the award of legal fees to the liquidating

15 │ trustee in connection with the state court appearance would

16 │ present a financial hardship for me as -- and I quote -- "I do

17 │ not have the funds with which to pay."

18 │         That letter goes on to state -- again, I quote:

19 │         "I did not proceed in state court in wilful disregard

20 │         of the Bankruptcy Court.  I apparently misapprehended

21 │         that there was no insurance available."

22 │         The letter from Attorney Menkes also cites two cases

23 │ and points the Court to additional case law that apparently

24 │ supports the notion that the state court has concurrent

25 │ jurisdiction to adjudicate issues related to the automatic stay

1   and whether or not any liability insurance was property of the

2   estate.

3         On August the 27th, 2013, Attorney Menkes filed a

4   notice of appeal and a request to have the appeal heard by the

5   District Court, pursuant to 28 U.S.C. 158(a).

6         Attorney Menkes also filed a motion to stay

7   proceedings pending appeal on September the 6th, 2013.  The

8   stay motion will be resolved after the Court deals with the

9   request for reconsideration.

10        On September the 12th, the liquidating trustee filed

11  opposition to the request for reconsideration, and I read from

12  that request.

13        And just to be clear, the September 6th affidavit

14  filed by Attorney Menkes at Docket No. 3685 does not cite any

15  of the applicable code sections or bankruptcy rules applicable

16  to a request for reconsideration.  And Ms. Menkes, for your

17  information, there are some local rules that also have to be

18  abided.  And it does -- also, does not state the standard for

19  reconsideration, and there are local rules to that also.

20              "The Court's award of fees and expenses should stand

21              because Ms. Menkes was made aware by counsel to the

22              liquidating trust that no less" -- "on no less than

23              three occasions that insurance was not available to

24              cover her client's claim, but nevertheless proceeded

25              as if insurance was available; and, thus, there was no

 1                    excusable mistake or neglect.  Given Ms. Menkes'

 2                    conduct in connection with the order to show cause,

 3                    the August 19th enforcement award of fees and expenses

 4                    is not manifestly unjust, and the fees set forth in

 5                    the Schultz affidavit are reasonable and appropriate

 6                    to the services performed."

 7          Summary of the law:

 8                    Although the request for reconsideration does not cite

 9     to the applicable bankruptcy rules or Federal Rule of Civil

10     Procedure, the Court, nevertheless, finds it necessary to

11     review each possibly basis for reconsideration.

12                    Bankruptcy Rule 9023 makes Federal Rule of Civil

13     Procedure 59 applicable in bankruptcy proceedings.  Under

14     Federal Rule of Civil Procedure 59(e) an aggrieved party can

15     file a motion to alter or amend a judgment.

16                    "In this circuit, a Rule 59(e) motion may be based

17                    upon an intervening change in the controlling law, the

18                    availability of new evidence, to correct manifest

19                    errors of law or fact upon which the judgment is

20                    based, or to prevent manifest injustice."

21                    And I am -- and I quote from there the Enron Creditors

22     Recovery Corp., 378 B.R. 54 (Bankr. S.D.N.Y. 2007).

23                    "A Rule 59(e) motion cannot be used to re-litigate

24                    factual matters already decided, or to present new

25                    legal theories based on evidence previously available

1           to the parties.  Instead, Rule 59(e) is properly

2           invoked when the ruling court overlooked matters or

3           controlling decisions, which it considered such

4           matters might reasonably impact its decision."

5       The second possible grounds for reconsideration is

6  Bankruptcy Rule 9024, which makes Federal Rule of Civil

7  Procedure 60 applicable in bankruptcy proceedings.  Under Rule

8  60(b), a Court may relieve a party from a final judgment order

9  or proceed for the following reasons:  Mistake, inadvertence,

10  surprise, or excusable neglect; newly discovered evidence that,

11  with reasonable diligence, could not have been discovered in

12  time to move for a new trial under 59(b); fraud, whether

13  previously called intrinsic or extrinsic misrepresentation, or

14  misconduct by an opposing party; or the judgment is void, or

15  the judgment has been satisfied, released, or discharged; it is

16  based on an earlier judgment that has been reversed or vacated,

17  or applying it prospectively is no longer equitable; or for any

18  other reason that justifies relief.

19           "Rule 60(b) motions affords relieved litigants from

20           extraordinary judicial relief.  That requires a

21           showing of exceptional circumstances for its

22           application."

23       That is from In Re Old Carco, LLC, 423 B.R. 40 (Bankr.

24  S.D.N.Y. 2010), citing Nemaizer v. Baker, 793 F.2d 58 (2d Cir.

25  1986).

Case 1:13-cv-06902-PKC   Document 16-25   Filed 05/16/14   Page 6 of 33
10-11963-cgm   Doc 3720   Filed 09/23/13   Entered 09/23/13 15:38:09   Main Document
Pg 37 of 132

37

1    Additional factors in support of relief under 60(b)

2  including supporting evidence for relief be highly convincing,

3  there is good cause for the movant's failure to act sooner, and

4  application of the rule does not impose undue hardship on other

5  parties.

6    Whether to grant either a Rule 59(e) or a 60(b) motion

7  is within the discretion of this Court.  Citing Enron and In Re

8  Carco.

9    At the August 17th hearing, this Court determined that

10  notice was sufficient as to the state court plaintiff; and

11  therefore, the confirmed plan and the provisions therein,

12  namely the plan injunction and extensions of the automatic

13  stay, bar the plaintiff from continuing the state court

14  lawsuit.  This ruling was predicated on the fact that notice

15  was given and sufficient under the circumstances when the

16  decedent was served with the notice of the plan and various bar

17  dates, pursuant to the debtors' books and records, at the last

18  known address, and by publication in the New York Times and the

19  New York Post.

20    Given the Court's understanding of the procedures in

21  that -- as outlined, the Court believes -- believed that the

22  liquidating trustee employed reasonable, diligent efforts in

23  noticing the decedent.

24    Furthermore, the Court relied on a factual analogous

25  case, Curatola v. Saint Vincents Catholic Medical Centers of

Case 1:13-cv-06902-PKC   Document 16-25   Filed 05/16/14   Page 7 of 33
10-11963-cgm   Doc 3720   Filed 09/23/13   Entered 09/23/13 15:38:09   Main Document
Pg 38 of 132

38

1   New York, which stated that a creditor in that action could not

2   have been a known creditor because she had not yet filed a

3   negligence claim against Saint Vincents.  That's 2008 WL

4   1721471, Southern District of New York.

5           The Court has been asked to reconsider these rulings.

6   It now declines to do so.  With respect to Rule 59(e), there

7   has been no evidence presented which the Court overlooked or

8   other controlling decisions, which, had it considered such

9   matters, might reasonably impact its decision.  Again, the

10  standard is in Enron.

11          Also, there has been no showing of mistake,

12  inadvertence, excusable neglect, newly discovered evidence,

13  fraud, mispresentation, or any other reason that justifies

14  relief triggering reconsideration under 60(b).  Simply put,

15  there is no highly convincing supporting evidence to

16  substantiate a 60(b) relief in these circumstances.

17          In addition to holding that the notice was sufficient,

18  the Court also held that the institution and further

19  prosecution of the state court lawsuit was in violation of the

20  plan injunction and automatic stay.  The Court finds it

21  necessary to provide further details providing the basis of

22  this holding.

23          Pursuant to the Court's order dated August the 19th,

24  2013, the liquidating trustee was granted certain costs

25  incurred in conjunction with defending the state court action;

1    namely, the order to show cause that was signed by the

2    Honorable Bert A. Bunyan, Justice of the New York Supreme

3    Court, on June the 19th, 2013.

4           This order to show cause required the liquidating

5    trustee to appear and show cause why an order should not be

6    entered, compelling the liquidating trustee to lift the stay on

7    the plaintiff's personal injury claim, as plaintiff's personal

8    injury claim is an exception to the automatic stay up to the

9    limits of insurance coverage existing at the time of decedent's

10   injuries.

11          As discussed in the liquidating trustee's original

12   motion to enforce the plan injunction, Attorney Menkes was

13   notified informally by email, and then twice formally by a

14   letter, that no insurance coverage was available.  These

15   communications were sent on June 5th, June 6th, and June 7th,

16   2013, respectively.  That's at the Docket Entry 3626, Paragraph

17   2.

18          In spite of the liquidating trustee's communications

19   indicating a lack of available insurance, Attorney Menkes

20   forged ahead in state court to request that the automatic stay

21   be lifted.  In her letter of reconsideration, Attorney Menkes

22   concedes that she apparently misapprehended that there was no

23   insurance available, and that she relied on a number of cases

24   that apparently stand for the proposition that any liability

25   insurance is outside the property of the estate, and New York

1   State Courts have concurrent jurisdiction over the matter,

2   which permitted her to proceed in state court.

3           "Apart from the question of whether any insurance is

4           available, only a Bankruptcy Court has jurisdiction to

5           terminate, annul, or modify the automatic stay."

6           In Re Dominquez, 312 B.R. 499 (Bankr. S.D.N.Y. 2004);

7   Ostano Commerzanstalt v. Telewide Systems, 790 F.2d 206.  And I

8   quote from that case:

9           "Relief from the effect of the automatic stay

10          provisions of 362(a)(1) must be sought from the

11          Bankruptcy Court pursuant to 362(d)."

12          The Ostano Commerzanstalt case is a Second Circuit

13  opinion.

14          Maritime Electric, Inc. v. United Jersey Bank, 959

15  F.2d 1194 is a Third Circuit opinion, and I quote from that

16  case:

17          "Only the Bankruptcy Court with jurisdiction over a

18          debtor's case has the authority to grant relief from

19          the stay of judicial proceedings against the debtor."

20          Thus, the order to show cause requesting stay relief

21  in the New York State Court was improper.

22          "Relief from the automatic stay may only be achieved

23          in accordance with the statutory mechanisms

24          established by Congress."

25          Cathey v. Johns-Manville Sales Corp., 711 F.2d 60(6th

1   Cir. 1983).

2          "Simply put, only a Bankruptcy Court has the exclusive

3           authority to lift the automatic stay, if a party

4           wishes to enforce its rights against a debtor

5           protected by the United States Code, the federal

6           bankruptcy laws, and it cannot bypass this Court's

7           jurisdiction merely because, in their opinion, cause

8           exists to lift the stay."

9          Dominiquez, 312 B.R. 507.  Also see Carr v. McGriff

10  (phonetic), 8 A.D.3d. 4020 (N.Y. App. Div. 2d 2004).  And I

11  quote from that decision:

12          "It is undisputed that only a Bankruptcy Court has

13           jurisdiction to terminate, annul, or modify the

14           automatic stay."

15          None of the cases put forth by Attorney Menkes

16  overrides this proposition.  The two cases cited in the letter

17  of reconsideration do not even deal with the question of stay

18  relief, but rather focus on the extent of the bankruptcy

19  discharge.

20          The letter first cites Chevron Oil Co. v. Dobie, 40

21  N.Y.2d 712.  That's a 1976 case, where New York Court of

22  Appeals held that a debt scheduled in the debtor's petition was

23  eliminated upon a bankruptcy discharge.

24          The letter also cites State v. Wilkes, 41 N.Y.2nd 655.

25  In Wilkes -- that's a 1977 case -- the New York Court of

1    Appeals again discussed the reach of a bankruptcy discharge,

2    and ultimately held that the debtor-defendant's student loans

3    were not dischargeable, relying specifically on power vested in

4    a state court to determine the discharge of an individual's

5    debt grant under the pre-1978 Bankruptcy Code.

6          Although these cases are not applicable, Attorney

7    Menkes does cite certain cases which stand for the proposition

8    that a bankruptcy discharge does not bar a suit against third-

9    party insurance.  Unfortunately, her remaining cases are

10   distinguishable from the debtors' case because the liquidating

11   trustee has made a showing that no insurance policy is

12   available.

13         For example, Attorney Menkes cites Minafri v. United

14   Artist Theaters, 782 N.Y.S.2d 177, a New York Supreme Court

15   2004.  And this is distinguishable because the insurance policy

16   in that case provided ample coverage for the underlying claim,

17   and the insurance company neither -- either declined or

18   threatened to decline coverage for the accident.

19         Again, in Lumbermen's Mutual Co. v. Morse Shoe Co.,

20   218 A.D.2d 624, a New York Appellate Division, 1st Department

21   1995, the facts indicate that there was insurance proceeds

22   available to cover the alleged loss, as the debtor-defendant

23   asserted that the subject policy had a deductible of 100,000.

24         The same is true in Adriani v. Seamus, 153 Misc. 2d

25   83, New York Supreme Court 1992.  In that case, the debtor and

1   the potential claimant had actually contemplated a stipulation

2   order to lift the automatic stay in Bankruptcy Court so the

3   claimant could proceed against the insurer.

4           Finally, in Roman v. Hudson Telegraph Association, 11

5   A.D.3d 346, New York Appellate Division First Department 2004,

6   the Court again mentions that the parties stipulated to an

7   order to lift the automatic stay, so as to allow the plaintiff

8   to proceed against the third-party insurance.  A clear

9   indication that insurance was available to satisfy a potential

10  claim.

11          The Court also finds it difficult to believe that

12  Attorney Menkes misapprehended the facts that no insurance was

13  available.  The liquidating trustee indicates that she sent

14  emails, letters, and had multiple phone calls with Attorney

15  Menkes regarding the state court lawsuit and the lack of

16  available insurance.  If Ms. Menkes believed that insurance was

17  required to be kept, and that an insurance policy was actually

18  available, I repeat -- I have said it before -- the proper

19  action was to come to this Court to seek stay relief.

20          This should have been clear, as Ms. Menkes affirmation

21  in support of the order to show cause cites numerous cases

22  which indicated that an order from relief from the automatic

23  stay was either stipulated to or otherwise was necessarily --

24  necessary prior to proceeding with the litigation.

25          The relevant provisions of the debtors' confirmed plan

1  clearly indicate that the automatic stay is in place until the

2  close of the bankruptcy case.  Together with the plain language

3  of 362(d) of the Bankruptcy Code and case law construing it,

4  the dictate is clear:  Only the Bankruptcy Court overseeing a

5  debtor's bankruptcy case has the authority to lift the

6  automatic stay.

7         As multiple debtors, Saint Vincents Catholic Medical

8  Centers and Holy Family Home, were named defendants in the

9  state court plaintiff lawsuit.  The institution and further

10 prosecution of the state court lawsuit against these debtors

11 without leave from this Court was a clear and blatant violation

12 of the stay.

13        For the foregoing reasons, the motion to reconsider

14 the Court's prior ruling of August 19th, 2013 is denied.

15        In its order enforcing the plan injunction, the Court

16 directed counsel to the liquidating trustee to file an

17 affidavit, setting forth the liquidating trustee's fees and

18 expenses in connection with defending against the state court

19 action, the motion to enforce the plan injunction and other

20 such communications with the plaintiff and/or her counsel.

21        Counsel filed such an affidavit on August the 22nd,

22 2013, setting forth a one-page summary of 83,515 incurred by

23 Akin, Gump, Strauss, Hauer & Feld, and another $7,369.50

24 incurred by Grant Thornton.

25        In the motion for reconsideration, Attorney Menkes

1    states that:

2            "-- saying the liquidating trustee's fees would

3            present a financial hardship for me, as I do not have

4            the funds with which to pay."

5        As discussed earlier, the Court denies the request to

6    reconsider its prior ruling.  However, the Court is unprepared

7    to award the amount of fees without fully developing the

8    evidentiary record.  Therefore, the Court directs counsel for

9    the liquidating trustee to submit copies of itemized billing

10   records for all attorneys' fees for which the liquidating

11   trustee seeks reimbursement.

12           Seven days too soon?  Fourteen?  You have them?

13           MS. SCHULTZ:  I have them right here, Your Honor.

14           THE COURT:  Very good.

15           MS. SCHULTZ:  Including a chart that extracts the

16   specific time entries that relate to the time dealt with for

17   this matter.

18           THE COURT:  If you will please file it on the docket.

19           MS. SCHULTZ:  Yes, Your Honor.

20           THE COURT:  And then I will hold a subsequent hearing

21   to determine that exact amount of the fees.

22           Attorney Menkes did not actually protest your fees.

23   What was said was she could not afford to pay them.  So in a

24   separate matter ...

25           "Given that the underlying purpose of sanctions to

```
 1              punish deviations from proper standards of conduct

 2              with a view toward encouraging future compliance and

 3              deterring future violation, it lies well within the

 4              District Court's discretion to temper the amount to be

 5              awarded by a balancing consideration of the sanctioned

 6              party's ability to pay."

 7         That Oliveri v. Thompson, 803 F.2d 1265 (2d. Cir

 8  1986).  It's quoted in In Re Khan, 488 B.R. 515 (Bankr.

 9  E.D.N.Y. 2013)

10              "A court may also consider the sanctioned party's

11              ability to pay, as that ability will necessarily have

12              an impact on the extent to which an award of sanctions

13              will serve the objective of deterrence."

14         In Re Omega Trust, 110 B.R. 665 (Bankr. S.D.N.Y.

15  1990), stating that:

16              "Factors courts consider in determining the amount in

17              sanctions include the impact of the sanctions on the

18              offender, including the offender's ability to pay a

19              monetary sanction."

20         Attorney Menkes, you have said that you cannot afford

21  it, and you're willing to give me, in camera, your tax returns.

22              MS. MENKES:  Yes, Your Honor.

23              THE COURT:  Tax returns are not enough.

24              MS. MENKES:  What else would you like?

25              THE COURT:  Tax returns are something that you,
```

```
 1   yourself, have done, and you, yourself, have done expenses.  I
 2   need a profit-and-loss statement from your firm.  They will be
 3   reviewed in camera.  But it's not just -- I want your tax
 4   returns.  I want them given to the Court in camera.  But I want
 5   a profit-and-loss statement that's sworn to by you.
 6           MS. MENKES:  Okay.  How many years back would you like
 7   to go?
 8           THE COURT:  At least three -- five?  Three.
 9           MS. MENKES:  Okay, Your Honor.
10           THE COURT:  At least three.
11           MS. MENKES:  All right.
12           THE COURT:  At least three.  So that's -- that's -- I
13   want a profit-and-loss up to this date, in 2013.  I want '12,
14   '11, and '10.  So it's really more than three, but I want a
15   profit-and-loss, not just that.  And you can find a profit-and-
16   loss form somewhere.  We use them all the time in Bankruptcy
17   Court.
18           MS. MENKES:  I'll have my accountant prepare one.
19           THE COURT:  Okay.  But it's not just your tax returns.
20           MS. MENKES:  Well, my accountant --
21           THE COURT:  My tax returns --
22           MS. MENKES:  -- has all my records.  He has everything
23   that I've earned --
24           THE COURT:  Okay.
25           MS. MENKES:  -- and what I've spent, so ...
```

1          THE COURT:  That's fine.  But I -- that is separate

2     from what's going to be awarded in attorneys' fees.  This is

3     going to be what you -- and if you want to provide more than

4     that, you may do so.  But this is going to be what you may have

5     to pay.  I may award more than can be paid.  I'm just letting

6     y'all both know that.

7          MS. MENKES:  Okay.  I did -- I haven't done my '12

8     taxes, they're due October 15th, so I haven't done them yet.

9     But I can definitely give you --

10         THE COURT:  Get them done.  I mean, October 12th is

11    next -- I mean, you got to get that --

12         MS. MENKES:  Yeah, I know.

13         THE COURT:  Right.

14         MS. MENKES:  I know.  I know that.

15         THE COURT:  Get it -- get it done.

16         MS. MENKES:  I know that.

17         THE COURT:  And it's going to be in camera.  You'll

18    need to deliver them to chambers at 528 in Bowling -- 628, I'm

19    sorry.  628 at Bowling Green here.

20         MS. MENKES:  Room 628.  Okay.

21         THE COURT:  Right.

22         MS. MENKES:  I'll get that -- the years I've done, the

23    tax return is not going to be a problem, because that, my

24    accountant can pull together fast.  '12, I'm working on, you

25    know, 2012, I'm working on.

```
 1              THE COURT:  I would --

 2              MS. MENKES:  How fast would you like them?

 3              THE COURT:  I would tell you to speed up your

 4    accountant.

 5              MS. MENKES:  I'll try very hard.  When would you like

 6    them, Your Honor?

 7              THE COURT:  When do I want them?  As soon as possible.

 8              MS. MENKES:  Okay.

 9              THE COURT:  All right.

10              MS. MENKES:  All right.

11              THE COURT:  Again, those are -- those are separate.

12    You did not protest the amount.  You only said you couldn't

13    afford it.

14              MS. MENKES:  I did say in these affidavits that I

15    found the amount obscenely excessive.

16              THE COURT:  Okay.

17              MS. MENKES:  I -- so I did protest them.

18              THE COURT:  You did -- you did say it was excessive.

19    All right.  I will let you -- I -- serve her with -- it's going

20    to be on the docket.  She's going to hand you that right now.

21    So you can give me written about what you think is excessive.

22    So I will hear from you on that, and I will set that for the

23    next -- well, not the next omnibus; the November omnibus.

24              MS. SCHULTZ:  Okay.  Your Honor, the only thing I

25    would point out, just so that there's no factual confusion
```

50

1   here, Ms. Menkes appeared in her papers to think that the

2   $83,000 related to a single state court appearance --

3              THE COURT:  I -- exactly.  Thank you.

4              MS. SCHULTZ:  -- and that does not.  We set out pretty

5   clearly in here what were our communications with her --

6              THE COURT:  All right.

7              MS. SCHULTZ:  -- what related to our bankruptcy court

8   hearing.

9              THE COURT:  And this is the second hearing here, so

10  this is not just -- I know that.  You need to know that.  It's

11  not just the state court.  I had asked for everything related

12  to this issue.

13             MS. MENKES:  Your Honor, I believe you said last time

14  that you were limiting this to the state court matter.  You had

15  said, if it was brought properly in the Bankruptcy Court, you

16  weren't going to consider those fees.

17             THE COURT:  I think you might have misunderstood me.

18             MS. MENKES:  I --

19             THE COURT:  Did I say that?

20             MS. MENKES:  I believe you did.

21             THE COURT:  I don't think I did.

22             MS. MENKES:  I can look through the transcript.  That

23  was my recollection.

24             THE COURT:  I think the order allowed us to grant fees

25  for everything.

1           MS. SCHULTZ:  Your Honor, I believe what you said is

2  that you were reserving with respect to those fees that were

3  incurred in connection with the bankruptcy court action.  And

4  with that in mind, one of the things that we did -- and we

5  noted this on our affidavit -- was to not, for example, seek

6  for my travel time because we would have been here for a

7  hearing before Your Honor --

8           THE COURT:  Right.

9           MS. SCHULTZ:  -- regardless.

10          THE COURT:  Exactly.  And I understood that.

11          I think -- I hate to speculate what I said.  I think I

12  said -- and I -- and again, I hate to speculate.  But I think

13  what I said was, had you filed a proper motion to lift the

14  stay, they would not have been entitled to those fees.  But

15  it's on the docket, and the order is what I'm going with.  And

16  you can file a transcript if you see there's something

17  different.

18          Okay.  Now we're down to -- yes, ma'am.  Did you want

19  to say something?  We're now down to stay pending appeal.

20          MS. MENKES:  No.  I -- I'm ready.

21          My motion for the stay pending appeal is based on the

22  fact that since I was here last time, I've done more research

23  on this issue, and I found cases -- bankruptcy cases directly

24  on point that hold that the executor of an estate is a known

25  creditor, not an unknown creditor; and that the debtor doesn't

```
 1   have to -- has to do due diligence, but -- and they're

 2   required, in doing that, to review their records.  And their

 3   records indicate that the -- Brophy had died.

 4           And then Thompson v. Erie is substantive law about

 5   service of process, and New York State law states that service

 6   of any document on a deceased party is a nullity, and that

 7   everything is stayed when a party is deceased --

 8           THE COURT:  So what you're telling me is you think

 9   this is a -- you're arguing the merits.

10           MS. MENKES:  Yes.  What I'm -- all I'm asking --

11           THE COURT:  What I would like to have, the standard.

12   I want you to argue my standard --

13           MS. MENKES:  Well, all I --

14           THE COURT:  -- under rule eight oh --

15           MS. MENKES:  Okay.

16           THE COURT:  -- 8005.  Was that --

17           MS. MENKES:  Well, I -- it was Rule 8006, I believe.

18   But at any rate --

19           THE COURT:  Okay.

20           MS. MENKES:  The -- there is -- the creditor would be

21   irreparably harmed if her action were dismissed with prejudice

22   because knowing or believing that there are cases directly on

23   point that will permit her to file a notice -- late proof of

24   claim, notice of claim, she -- her case would be dismissed

25   since she couldn't bring it again.  And as her attorney, that
```

1   puts me in a position of ethical violations and committing

2   legal malpractice.

3             And in the trustee's opposition to my --

4             THE COURT:  I have to stop you for just a second

5   because you said something, and I think you were probably

6   referring to another case, about a proof of claim.  Because

7   there is no proof of claim in this case.

8             MS. MENKES:  She hasn't filed one.  A late -- a late

9   proof, right.  A late notice of claim.

10            THE COURT:  Okay.  I'm sorry.  I'm missing a point

11  here for just a minute.

12            MS. MENKES:  Okay.

13            THE COURT:  So --

14            MS. MENKES:  My --

15            THE COURT:  No.  Just tell me what you're thinking

16  because I'd like to hear from you.

17            MS. MENKES:  Yes.  Well, I believe that the -- the

18  notice was inadequate and improper; and, based on that, she's

19  entitled to file a late notice of claim.  And I have cases that

20  support that position.

21            And based on that, on -- I filed the appeal.  And if -

22  - if the stay -- if the requirement that her state court action

23  is dismissed with prejudice is not stayed pending the

24  resolution of the appeal, she will be irreparably prejudiced

25  and --

```
1              THE COURT:  Okay.  Let me ask you something.  I'm so

2    sorry, but I think I'm hearing this for the first time.  I

3    don't remember you ever arguing to me about a proof of claim.

4              MS. MENKES:  I -- I would have to check the

5    transcript, Your Honor.  I don't recall without looking.  I

6    really don't recall.

7              THE COURT:  I don't either, but I don't remember it.

8    Okay.

9              MS. MENKES:  I -- okay.  I -- I would have to look at

10   the transcript.

11             At any rate, the trustee, in her opposition papers,

12   raised the possibility, if Your Honor agrees, to stay all state

13   court litigation pending the appeal.  And there were one or two

14   other parameters, which I would have absolutely no objection to

15   doing.

16             Right now, there's been no litigation in state court,

17   and the order to show cause, there's been no decision on it.

18   And she has said, I withdraw that --

19             THE COURT:  Did you agree to that?

20             MS. SCHULTZ:  No, Your Honor, I didn't.  I think she's

21   misunderstanding what we said in our papers.  What we've said

22   in our papers is that we believe that she has not met the

23   standards under Rule 8005 with respect to a motion for a stay

24   pending resolution of the appeal.

25             But to the extent that Your Honor believes that she
```

1   has met them, we believe that, either a supersedeas bond would

2   be appropriate; and/or, in the alternative, we would request

3   that she be required to withdraw the state court order for a

4   stay pending appeal.

5          As Your Honor may recall, we have to go back to state

6   court in October if she doesn't withdraw that, consistent with

7   Your Honor's previous order.  And we're trying to mitigate the

8   harm to the other creditors of this estate.  We don't want them

9   to have to --

10          THE COURT:  Okay.  I just wanted --

11          MS. SCHULTZ:  -- incur those --

12          THE COURT:  -- to be clear on that --

13          MS. SCHULTZ:  -- additional expenses.

14          THE COURT:  -- because I had heard that -- yes, Ms.

15   Menkes.

16          MS. MENKES:  I would have no problem with staying all

17   state court litigation.

18          THE COURT:  That's not what the order is at this

19   moment.  Okay.

20          MS. MENKES:  Well, that's why I'm asking for --

21          THE COURT:  The order --

22          MS. MENKES:  -- a stay --

23          THE COURT:  The order at this moment --

24          MS. MENKES:  -- pending the appeal --

25          THE COURT:  -- is to withdraw.

1           MS. MENKES:  -- because I --

2           THE COURT:  Okay.

3           MS. MENKES:  It can't --

4           THE COURT:  Well, then go back -- I want to hear more

5    from you then on the harm; the harm that it would cause.

6           MS. MENKES:  She would --

7           THE COURT:  Because you got off a little bit on that -

8    -

9           MS. MENKES:  Okay.

10          THE COURT:  -- and I wanted to know what you were

11   thinking about that.

12          MS. MENKES:  She would have no right to bring her case

13   in state court or in Bankruptcy Court -- well, if the appeal is

14   granted, she would be able to continue in state court, to have

15   -- because the Bankruptcy Court can't determine the amount of

16   the damages.  It would have to either be District Court or

17   state court.  So she would lose her ability to bring that

18   action again, should the appeal be granted.  And even if it's

19   without prejudice, the statute of limitations --

20          THE COURT:  Okay.  Let me ask you something.  If there

21   are no insurance proceeds, what does it matter --

22          MS. MENKES:  Because insurance --

23          THE COURT:  -- in state court?

24          MS. MENKES:  Because if there is money in the estate

25   to pay for this, then she's entitled to put in her claim.  Just

1  if there's no insurance left, that is not her responsibility.

2  I mean, people get insurance, so they don't have to pay out of

3  pocket.  If the insurance is exhausted or if it doesn't exist,

4  then the actual person or corporation is responsible.

5          Liability is not absolved because there's no

6  insurance.  Insurance gives the tort feasor the ability to have

7  a source of funds to pay for their liability, but it's no

8  absolution of liability if there is none.  So she's entitled to

9  -- she's entitled to money from the bankruptcy estate, the way

10  any other creditor to the estate is entitled, should the appeal

11  be granted.  And if the appeal is not granted, then the state

12  court action is dismissed.  But I -- I'm fairly certain, on the

13  case law that I found, that the notice was inadequate.

14          THE COURT:  Ms. Schultz, would you like to address

15  that for me, please?

16          MS. SCHULTZ:  Let me just respond very briefly, Your

17  Honor.

18          THE COURT:  Okay.  Ms. Menkes, let -- stand there.

19  Let me ask you a question.  So what you're arguing to me right

20  now is that you would be -- that your client would be entitled

21  to dollars from the estate.

22          MS. SCHULTZ:  Yes.

23          THE COURT:  So what would that have to do with the

24  state court action?

25          MS. SCHULTZ:  Well, the state court action is her

Case 1:13-cv-06902-PKC   Document 16-25   Filed 05/16/14   Page 27 of 33
10-11963-cgm   Doc 3720   Filed 09/23/13   Entered 09/23/13 15:38:09   Main Document
Pg 58 of 132

58

1    cause of action, it's her claim, as to the negligence of the

2    debtor and why she's entitled.  And that would have to be

3    determined, the amount, the damages have to be determined,

4    which cannot be done in a Bankruptcy Court; it has to either be

5    state or District Court.

6              THE COURT:  Okay.  I've heard you.

7              Yes, ma'am.

8              MS. SCHULTZ:  Your Honor, I'll be very brief.

9              THE COURT:  Okay.

10             MS. SCHULTZ:  I know you're very familiar with the

11   requirements of Rule 8005, and I'm not going to reiterate them

12   here on the record.

13             I will say that, as we set forth in our papers, when

14   we weigh these factors, we think it clearly favors not granting

15   a stay.

16             First, and most importantly, it's the likelihood of

17   success on appeal.  We believe it's slim.  I'm not going to go

18   into all the reasons why we believe it's slim, other than we've

19   had an extensive hearing on this particular matter, on the

20   notice that was provided.  Your Honor is intimately provided

21   with these cases and the efforts that occurred in connection

22   with noticing all known and unknown creditors.  We've laid it

23   out in detail on the record, and that's not going to change.

24             There's no unavailable evidence that's been presented

25   here today or in any of the papers; nor has the movant, in our

Case 1:13-cv-06902-PKC   Document 16-25   Filed 05/16/14   Page 28 of 33
10-11963-cgm   Doc 3720   Filed 09/23/13   Entered 09/23/13 15:38:09   Main Document
Pg 59 of 132

59

1  mind, provided any reason to believe that the District Court

2  will determine that Your Honor incorrectly applied the

3  requirement of actual constructive notice.

4          Similarly, when you balance the equities with respect

5  to harm and the harm of the public interest, we think it weighs

6  in favor of denying the stay motion.  Thousands of creditors in

7  these cases have been waiting for years to receive

8  distributions from these estates.  The liquidating trustee is

9  on the cusp of being able to make such distributions.

10          But if your order is stayed and there's a state court

11  action continuing to sit out there, it's been -- that might

12  result in a ten-million-dollar judgment against the debtors'

13  estates, because that's what the prayer is for -- it's likely

14  that that's going to delay distribution.

15          Finally, I would point out -- and I know Your Honor is

16  aware of this, but just so Ms. Menkes is aware of this, as well

17  -- it would be our position that, to the extent that she wanted

18  to file a proof of claim before Your Honor, she would be

19  subject to the Pioneer standard.  She would need to bring the

20  appropriate order.  And if Your Honor so determined that she

21  met the Pioneer standard, she would then be subject to this

22  Court's order with respect to the resolution of unliquidated

23  claims against the debtor, which include a mediation process

24  and then referral, if necessary, if that mediation process is

25  not successful.

1    So I don't think it's as simple as just saying, oh,

2  she wins at the appeal, in the unlikely event that she does,

3  and we go to state court, and we resolve it there.  That's not,

4  I don't think, the process that's been established in this

5  case.

6    Your Honor, for these reasons, we would request that

7  you not stay the order pending the resolution of the appeal.

8  And as I stated earlier, to the extent that you determine to

9  stay the order, which we're not consenting to or proposing to,

10 we would request that an appropriate bond be set, or that

11 appropriate orders be put in place, so that we are not required

12 to appear in state court, particularly with respect to the show

13 cause order, and incur unnecessary expenses pending the

14 resolution of the appeal.

15    THE COURT:  Say that again.  I -- yeah.  I want to

16 hear you say that one more time.  You --

17    MS. SCHULTZ:  So we would request either that an

18 appropriate bond be posted by the movant --

19    THE COURT:  Okay.

20    MS. SCHULTZ:  -- or that the movant -- that

21 appropriate orders be put in place, so that the liquidating

22 trustee is not required to appear in state court pending the

23 resolution of the appeal, particularly as it relates to the

24 show cause order.

25    THE COURT:  Okay.

```
 1              MS. SCHULTZ:  It's not cheap.

 2              THE COURT:  I understand.

 3              MS. MENKES:  May I say something?  Your Honor, I would

 4    have absolutely no problem or objection to withdrawing the

 5    order to show cause in state court.  And the other --

 6              THE COURT:  You're already ordered to do that by

 7    September the 30th; you're under an order right now.

 8              MS. MENKES:  Well, I would -- yes, I was under an

 9    order to have the -- to dismiss with prejudice.

10              THE COURT:  Right.

11              MS. MENKES:  But if I can get the stay pending appeal,

12    I would have no problem with not requiring the trustee to go --

13              THE COURT:  I hear you.  Okay.

14              MS. MENKES:  -- to do anything in state court.

15              THE COURT:  We still have to meet Rule 8005.  Okay.

16    Anything else you wish to add?

17         (No verbal response.)

18              THE COURT:  On September the 6th, 2013, Attorney

19    Menkes, on behalf of Elaine Garvey, Administratrix for the

20    Estate of Ronald Brophy, filed a motion for stay pending appeal

21    of this Court's August the 19th order.

22              Just so you know, a late proof of claim or a proof of

23    claim has never been argued, it has not been decided, it has

24    not been ordered.  It's not on the table.  We have three things

25    on the table today:  Reconsideration, attorneys' fees, and a
```

1    stay pending appeal.

2         Motions for stay pending appeal are governed by

3    Bankruptcy Rule 8005, which states:

4         "The bankruptcy judge may suspend or order to

5         continuation of other proceedings in the case under

6         the Code, or make any other appropriate order during

7         the pendency of an appeal on such terms as will

8         protect the rights of all parties-in-interest.  The

9         decision as to whether or not to grant a stay of order

10        pending appeal is within the sound discretion of the

11        Court."

12        General Motors, 409 B.R. 24 (S.D.N.Y. 2009).

13        "A movant seeking a stay pending appeal under 8005

14        must demonstrate that he would suffer irreparable harm

15        if the stay was denied, that the other parties would

16        suffer no substantial injury if the stay were granted,

17        and that the public interest favors a stay, and that

18        there is substantially possibility of success on the

19        merits of the movant's appeal."

20        Hirschfeld v. Board of Education (phonetic), 984 F.2d

21   35 (2d Cir. 1992).

22        "The Second Circuit has consistently treated the

23        inquiry of whether to grant a stay pending appeal as a

24        balance of factors that must be weighed."

25        In Re Adelphia Communications, 361 B.R. 337 (Bankr.

1    S.D.N.Y. 2007).

2              "However, the moving party must show some satisfactory

3              evidence on all four criteria."

4              In Re Turner, 207 B.R. 373 (2d Cir. B.A.P. 1997), and

5    MF Global, 2012 WL 538610.

6              The movant's burden is a heavy one.  Moreover, if the

7    movant seeks to -- seeks the imposition of a stay without a

8    bond, the applicant has the burden of demonstrating why the

9    Court should deviate from the ordinary full security

10   requirement.

11             In Mohammed v. Reno, 309 F.3d 95 (2d Cir. 2002), the

12   Second Circuit followed the D.C. Circuit and the Sixth Circuit

13   in holding that the necessary level or degree of possibility on

14   success will vary according to the Court's assessment of the

15   other stay factors.

16             For example, a stay might be granted where the

17   likelihood of success is not hight, but the balance of hardship

18   favors the applicant, or where the probability of success is

19   high and some injury has been shown.  And as the Sixth Circuit

20   explained:

21             "The probability of success must be demonstrated as

22             inversely proportional to the amount of irreparable

23             injury plaintiff will suffer absent the stay.  Simply

24             stated, more of one excuse, less of one the other."

25             That's quoting Michigan Coalition of Radioactive

Case 1:13-cv-06902-PKC   Document 16-25   Filed 05/16/14   Page 33 of 33
10-11963-cgm   Doc 3720   Filed 09/23/13   Entered 09/23/13 15:38:09   Main Document
Pg 64 of 132

64

1  Materials Users, Inc. v. Griepentrog, 945 F.2d 150 (6th Cir.

2  1991).

3          For the reasons discussed above and at the hearing on

4  April 17th [sic], the state court plaintiff is not likely to

5  succeed on the merits of the appeal.  The Court finds that this

6  favor weighs against the imposition of a stay.

7          "Irreparable harm must be either remote" -- "must be

8          neither remote or speculative, but actual and

9          imminent."

10         Again, Adelphia Commercial Corp. [sic], citing Tucker

11  v. Schlesinger, 888 F.2d 969 (2d Cir. 1989).

12         In the motion for stay pending appeal, the state court

13  plaintiff does not identify any alleged injury, much less

14  irreparable injury, that will occur if this Court's order

15  enforcing the plan injunction is not stayed.  The state court

16  appellant has, therefore, failed to satisfy her burden of

17  showing at least some evidence of irreparable harm.

18         I have heard what you've just said, but it -- it's

19  nothing that's in front of me, as far as what you determined

20  the harm.  You determined the harm about a proof of claim.

21  That's not here.  The Court finds that this factor does not

22  weigh in favor of granting a stay.

23         Injury to the opposing party -- to the party opposing

24  the stay:

25         "In addition to showing irreparable harm, a party